IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| GREAT AMERICAN ALLIANCE INSURANCE COMPANY, GREAT AMERICAN ASSURANCE COMPANY, GREAT AMERICAN INSURANCE COMPANY AND GREAT AMERICAN INSURANCE COMPANY OF NEW YORK,<br><br>Plaintiffs,<br><br>v.<br><br>RISO, INC.,<br><br>Defendant. | Case No. 04 12260 GAO<br><br>**JURY TRIAL DEMANDED** |

## AMENDED COMPLAINT

Plaintiffs, Great American Alliance Insurance Company f/k/a American Alliance Insurance Company ("Great American Alliance"), Great American Assurance Company f/k/a Agricultural Insurance Company ("Great American Assurance"), Great American Insurance Company ("Great American"), Great American Insurance Company of New York f/k/a American National Fire Insurance Company ("Great American NY") (collectively the "Plaintiff-Insurers"), and for their complaint against Defendant RISO, INC., ("RISO") state as follows:

### INTRODUCTION

1. This is an action for declaratory judgment arising out of an actual and existing controversy between the Plaintiff-Insurers and RISO concerning the parties' rights, duties, and obligations, if any, under commercial general liability and commercial umbrella policies issued by the Plaintiff-Insurers to RISO with respect to a law suit captioned *Modesto City Schools, et al. v. RISO, Inc., et al.*, Case No. CIV S-99-2214 filed in the U.S. District Court, Eastern District of

California (the "Underlying Action"). The Plaintiff-Insurers seek a declaration that they have no duty to defend or indemnify RISO with respect to the Underlying Action.

## THE PARTIES

2. Great American Alliance is an Ohio corporation with its principal place of business in Cincinnati, Ohio.

3. Great American Assurance is an Ohio corporation with its principal place of business in Cincinnati, Ohio.

4. Great American is an Ohio corporation with its principal place of business in Cincinnati, Ohio.

5. Great American NY is a New York corporation with its principal place of business in Cincinnati, Ohio.

6. RISO is a Massachusetts corporation with its principal place of business in Danvers, Massachusetts.

## JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. Section 1332(a) in that the citizenship of the plaintiffs is completely diverse from the citizenship of the defendant. The amount in controversy between the parties exceeds $75,000, exclusive of interest and costs.

8. An actual controversy exists between the parties concerning the respective rights, duties and obligations, if any, of each party with respect to certain insurance contracts the plaintiffs issued to RISO, for which the plaintiffs seek a declaration from this Court pursuant to 28 U.S.C. Section 2201(a).

9.   Venue is proper in this Court pursuant to 28 U.S.C. Section 1391 because the defendant resides in this district and a substantial part of the events or omissions giving rise to this coverage action took place in this district.

## THE UNDERLYING ACTION

10.   On November 5, 1999, Modesto City Schools and Stockton Unified School District, on their own behalf and in their capacity as representatives of all public schools and school districts in the United States that own, lease or operate Risographs (collectively referred to herein as "the School Districts"), filed suit against RISO and others in the United States District Court for the Eastern District of California. A copy of the School Districts' amended complaint is attached hereto as Exhibit "A."

11.   The School Districts allege that RISO was the first manufacturer of digital duplicators and has approximately a 55% to 75% overall market share of the retail market for sales of new digital duplicating machines, with a higher market share of sales to public schools.

12.   The School Districts further allege that RISO and its dealers have an approximately 100% share of the market for Risograph parts and approximately 90% share of the retail market for repair, maintenance and service of Risographs.

13.   The School Districts charge RISO with the unlawful restraints of trade, more specifically: (1) restraining competition in the retail market for Risograph service by both the dealers' and RISO's concerted refusal to sell parts to independent service organizations who cannot compete in the retail market for service of Risographs without a reliable source of Risograph parts (*joint boycott*); (2) restraining competition in the retail service market by imposing ties on the School Districts between the purchase of service and parts (*tying arrangement*); (3) restraining competition and maintaining prices in their retail supply market by tying the purchase of RISO supplies to the provision of service under the School Districts'

warranty and maintenance agreements (*tying arrangement*); (4) restraining competition and maintaining prices in the retail supply market by refusing to allow the School Districts the use of generic supplies in their Risographs without voiding their warranty and maintenance agreements (*negative tying arrangement*); and (5) restraining competition in the retail markets for Risograph service and supplies by agreeing to allocate customers and territories for the sale of supplies and services, as expressed in the standard Riso dealer agreement (*territorial and customer division*).

14. The School Districts' Complaint asserts four causes of action against RISO: Violation of the Sherman Act Section One for Restraint of Trade in the Risograph Service Market; Violation of the Sherman Act Section One for Restraint of Trade in the Risograph Supply Market; Violation of the Wilson Tariff Act for Restraint of Items in Foreign Trade and Commerce; Violation of the Massachusetts Protection Act for Unfair Methods of Competition and Unfair and Deceptive Acts or Practices.

15. The School Districts seek compensatory and punitive damages from RISO and additional and incidental damages, attorney fees and costs, as well as injunctive relief and class certification.

## THE RELEVANT POLICIES

### The Primary Policies

16. Great American NY, f/k/a American National Fire Insurance Company ("American National"), issued to RISO, Commercial General Liability Policies Nos. MAC 800-69-20-01 (policy period August 1, 1994 to August 1, 1995); PAC 124-18-64-00 (policy period August 1, 1996 to August 1, 1997); PAC 124-18-64-01 (policy period August 1, 1997 to August 1, 1998); PAC 377-22-25-00 (policy period August 1, 1998 to August 1, 1999); PAC 377-22-25-01 (policy period August 1, 1999 to September 1, 1999); and PAC 377-22-25-02 (policy period September 1, 1999 to September 1, 2000).

17.     Great American issued to RISO Commercial General Liability Policy MAC 800-69-20-02 (policy period August 1, 1995 to August 1, 1996). (The American National Primary Policies and the Great American Policies are collectively referred to herein as "the Primary Policies.")

18.     Coverage provided under the Primary Policies issued for the period August 1, 1994 through August 1, 1996 is based on ISO Commercial General Liability Coverage Form CG0001 (10/93). A copy of commercial general liability coverage form CG0001 (10/93) is attached hereto as Exhibit "B."

19.     Coverage provided under the Primary Policies issued for the period August 1, 1996 through August 1, 1999 is based on ISO Commercial General Liability Coverage Form CG0001 (01/96). A copy of commercial general liability coverage form CG0001 (01/96) is attached hereto as Exhibit "C."

20.     Coverage provided under the Primary Policies issued for the period August 1, 1999 through September 1, 2000 is based on ISO Commercial General Liability Coverage Form CG0001 (07/98). A copy of commercial general liability coverage form CG0001 (07/98) is attached hereto as Exhibit "D."

21.     The Primary Policies provide coverage for, among other things, "personal injury" subject to the specific terms and conditions set forth within the Primary Policies.

22.     The Primary Policies effective prior to August 1, 1999 define "personal injury" to mean:

> "Personal injury" means injury, other than "bodily injury", arising out of one or more of the following offenses:
>
>     a.    False arrest, detention or imprisonment;
>     b.    Malicious prosecution;

  c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies by or on behalf of its owner, landlord or lessor;

  d. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services; or

  e. Oral or written publication of material that violates a person's right of privacy.

23. The Primary Policies effective after August 1, 1999 define "personal and advertising injury" to mean:

> "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:
>
>  a. False arrest, detention or imprisonment;
>
>  b. Malicious prosecution;
>
>  c. The wrongful eviction from, wrongful entry into or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;
>
>  d. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;
>
>  e. Oral or written publication of material that violates a person's right of privacy;
>
>  f. The use of another's advertising idea in your "advertisement"; or
>
>  g. Infringing upon another's copyright, trade dress or slogan in your "advertisement."

## The Umbrella Policies

24. Great American NY, f/k/a American National, issued to RISO Commercial Umbrella Liability Policy No. UMB 800-69-23-00 (policy period August 1, 1994 to August 1, 1995).

25. Great American Assurance, f/k/a Agricultural Insurance Company ("Agricultural Insurance"), issued to RISO Commercial Umbrella Liability Policy Nos. UMB 8006923-01 (policy period August 1, 1995 to August 1, 1996); UMB 1-24-18-67-00 (policy period August 1, 1996 to August 1, 1997); and UMB 1-24-18-67-01 (policy period August 1, 1997 to August 1, 1998).

26. Great American Alliance, f/k/a American Alliance Insurance Company ("American Alliance"), issued to RISO Commercial Umbrella Liability Policy Nos. UMB 3-77-22-28-02 (policy period August 1, 1998 to August 1, 1999) and UMB 3-77-22-28-04 (policy period August 1, 1999 to August 1, 2000). (The umbrella policies American National, Agricultural Insurance and American Alliance issued are referred to collectively herein as "the Umbrella Policies.")

27. Coverage provided under the Umbrella Policies for the period August 1, 1994 through August 1, 1998 is based on Commercial Umbrella Form GAI6002 (02/89). A copy of Commercial Umbrella Form GAI6002 (02/89) is attached hereto as Exhibit "E."

28. Coverage provided under the Umbrella Policies issued for the period August 1, 1998 through August 1, 2000 is based on Commercial Umbrella Coverage Form GAI6002 (06/97). A copy of Commercial Umbrella Coverage Form GAI6002 (06/97) is attached hereto as Exhibit "F."

29. The Umbrella Policies provide coverage for, among other things, "personal injury" subject to the specific terms and conditions set forth within the Umbrella Policies.

30. The Umbrella Policies effective prior to August 1, 1998 define "personal injury" to mean:

> "Personal Injury" means injury, other than "bodily injury," arising out of one or more of the following offenses:
>
> 1. False arrest, detention or imprisonment;
> 2. Malicious prosecution;
> 3. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies by or on behalf of its owner, landlord or lessor;
> 4. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;
> 5. Oral or written publication of material that violates a person's right of privacy.

31. The Umbrella Policies effective after August 1, 1998 define "personal injury" to mean:

> "Personal injury" means injury other than "bodily injury" or "advertising injury" arising out of one or more of the following offenses during the policy period:
>
> 1. false arrest, detention or imprisonment;
> 2. malicious prosecution;
> 3. the wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies by or on behalf of its owner, landlord or lessor;
> 4. oral, written, televised, videotaped, or electronic publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;
> 5. oral, written, televised, videotaped, or electronic publication of material that violates a person's right of privacy; or

  6. mental injury, mental anguish, humiliation, or shock, if directly resulting from Items K.1. through 5.

## THE RISO COVERAGE CLAIM

32. RISO requested that the Plaintiff-Insurers provide it with a defense in the Underlying Action and indemnify it for any settlement or judgment in connection with the Underlying Action.

33. The Plaintiff-Insurers advised RISO that they do not have a duty to defend or indemnify RISO in connection with the Underlying Action based upon the terms of the Plaintiff-Insurers' respective policies.

34. Thereafter, the parties entered into a Non-Waiver/Standstill Agreement, preserving all of their respective rights, claims and defenses, to allow the parties an opportunity to discuss and perhaps resolve their coverage dispute.

35. The parties have been unable to resolve their differences with respect to RISO's coverage claim regarding the Underlying Action and the Non-Waiver/Standstill Agreement was terminated on October 6, 2004.

## COUNT I

### No Coverage Under The Primary Policies

36. The Plaintiff-Insurers repeat and incorporate by reference paragraphs 1 through 35 as though fully set forth herein.

37. The School Districts do not allege nor can they be construed to allege in the Underlying Action damages because of "personal injury" or "personal and advertising injury" as the School Districts do not allege injury caused by one of the specifically enumerated offenses set forth in the relevant definitions of "personal injury" or "personal and advertising injury."

38. Accordingly, Plaintiffs Great American NY and Great American owe no duty to defend or indemnify RISO with respect to the Underlying Action.

39. RISO in the past has sought, and on information and belief will continue to seek, defense and/or indemnity costs arising from the Underlying Action under the Primary Policies issued by the Great American NY and Great American. This dispute therefore constitutes an actual and justiciable controversy between the parties.

## COUNT II

### No Coverage Under The Umbrella Policies

40. The Plaintiff-Insurers repeat and incorporate by reference paragraphs 1 through 39 as though fully set forth herein.

41. The School Districts do not allege nor can they be construed to allege in the Underlying Action damages because of "personal injury," as the School Districts do not allege injury caused by one of the specifically enumerated offenses set forth within the definition of "personal injury," as set forth within the Umbrella Policies.

42. Accordingly, Plaintiffs Great American NY, Great American Assurance and Great American Alliance owe no duty to defend or indemnify Defendant RISO with respect to the Underlying Action.

43. Defendant in the past has sought, and on information and belief will continue to seek, defense and/or indemnity costs arising from the Underlying Action under the Umbrella Policies issued by Great American NY, Great American Assurance and Great American Alliance. This dispute therefore constitutes an actual and justiciable controversy between the parties.

WHEREFORE, Plaintiff-Insurers request that this Court enter judgment in their favor and against RISO declaring and adjudicating that:

(a) the Plaintiff-Insurers have no duty or obligation to defend, reimburse defense costs or pay any sums whatsoever to or on behalf of RISO relating to the defense of the Underlying Action;

(b) the Plaintiff-Insurers have no duty or obligation to indemnify RISO for any judgment, settlement, sum or other amount whatsoever, past, present or future, relating to the Underlying Action; and

(c) the Plaintiff-Insurers are entitled to such other and further relief as this Court deems just and proper.

**PLAINTIFFS DEMAND A TRIAL BY JURY**

Respectfully submitted,

GREAT AMERICAN ALLIANCE INSURANCE COMPANY, GREAT AMERICAN ASSURANCE COMPANY, GREAT AMERICAN INSURANCE COMPANY AND GREAT AMERICAN INSURANCE COMPANY OF NEW YORK

By their attorneys,

_____
A. Hugh Scott (BBO#449160)
Robert A. Kole (BBO#633269)
CHOATE HALL & STEWART
Exchange Place, 53 State Place
Boston, MA 02109-2804
Tel:  (617) 248-5000
Fax:  (617) 248-4000

Richard H. Nicolaides, Jr.
Mary F. Licari
Sarah E. Eversman
BATES & CAREY LLP
191 N. Wacker Drive, Suite 2400
Chicago, IL 60606
Tel:  (312) 762-3210
Fax:  (312) 762-3200

Date:  December 6, 2004

#160897v1

I HEREBY CERTIFY THAT A TRUE COPY OF THE ABOVE DOCUMENT WAS SERVED UPON THE ATTORNEY OF RECORD FOR EACH OTHER PARTY BY MAIL/HAND ON: 12/6/04

3776076v1

11