1  placed upon a Risograph stating that: "CAUTION: For continued protection against possible risk

2  of fire use only RISOGRAPH RA INK. " The ink sold by Plaintiff WESTERN DUPLICATING,

3  INC. is no more of a fire hazard than RISO ink.  Plaintiff knows of no aftermarket ink marketed

4  for use in Risographs which create a fire hazard and even if there were, to state that Risograph

5  owners must "use only RISOGRAPH RA INK" in order to be protected against "possible risk of

6  fire" is both deceptive and coercive.   Plaintiff is informed and believes that another tactic used

7  by RISO and its dealers to suppress competition from "supply pirates" is to print warnings on

8  invoices and statements sent to Risograph owners, telling them that use of any supplies not

9  manufactured by RISO will damage their Risographs, void their warranty and void their

10  maintenance agreements.

11                                                  XCIII.

12          The latest coercive tactic or strategy of RISO in combating "supply pirates" is to

13  place three new and improved warning stickers on all Risographs telling customers to use only

14  RISO manufactured supplies.    This strategy is designed to bolster the coercive effect of the

15  warranty and maintenance agreement bans on the use of "unauthorized supplies. "  Attached hereto

16  as Exhibit "J" is a true and correct copy of the new and improved warning stickers sent by RISO

17  to all RISO dealers to be placed in all new and installed Risographs, which is incorporated herein

18  by reference.  RISO's local dealers are placing these stickers in all new Risographs being sold and

19  in the installed equipment base as those machines are being serviced or repaired.

20                                                  XCIV.

21          Attached as Exhibit "K" is a "RISO News Flash" sent to all RISO dealers

22  instructing that the new larger warnings be placed in all Risographs in three locations where

23  anyone installing supplies into the machines will necessarily notice the warning. RISO has

24  dropped the "unauthorized supplies" masquerade in favor of the more direct approach of telling

25  customers that unless their "masters and ink cartridges carry the original RISO logo" -- if they use

26  "non-RISO manufactured inks or masters" -- then such may "cause serious damage to the ink

27  cylinder and the Risograph" and "cause repair or service problems not covered by your warranty

28  or service agreement".   Any purported business justification for the warnings is pretextual.  A

Complaint                                          -32-

1   business justification is valid if it relates to the enhancement of consumer welfare.   The "RISO

2   News Flash" clearly sets forth the purpose and intent behind the warning stickers:

3       *The use of these warning **labels** on your installed base and new*
4       *machines is a step toward fighting the supply pirates and protecting*
        *both of our **revenue** streams.* **(emphasis & italics in original)**

5   In short, rather than being for the purpose of enhancing consumer welfare, the warning is for the

6   purpose of protecting the profits or "revenue stream" of RISO and its local dealers so that they

7   face no effective competition from "supply pirates" who sell non-RISO manufactured inks or

8   masters. The warning stickers have had their intended coercive effect. Plaintiff is informed and

9   believes that all RISO branch offices and dealers, including RISO PRODUCTS OF

10  SACRAMENTO, IKON, PACIFIC DUPLICATOR SYSTEMS, INC. and the RISO branch

11  offices, are participating in this program to combat "supply pirates".

12                                    x c v .

13          These actions have resulted in Plaintiff WESTERN DUPLICATING, INC. having

14  been unreasonably restrained from competing to sell aftermarket supplies consisting of ink and

15  masters to Risograph owners.

16                                  **XCVI.**

17          Because of the actions of defendants **RISO** PRODUCTS OF SACRAMENTO in the

18  Sacramento, Stockton and Modesto areas, IKON in the greater Bay Area and Des Moines,

19  PACIFIC DUPLICATOR SYSTEMS, INC. in the Los Angeles area and the RISO branch offices

20  in San Diego and Houston, Plaintiff stopped receiving or failed to receive orders for aftermarket

21  masters and ink from customers and potential customers and some customers cancelled orders for

22  aftermarket ink and masters from Plaintiff WESTERN DUPLICATING INC.  An example. is the

23  Stockton Unified School District.   The Stockton Unified School District orders ink and masters

24  for their Risographs approximately three times a year.   The Stockton Unified School District

25  sampled Plaintiff's ink and masters and contacted Plaintiffs references. Stockton **Unified** School

26  District, after approximately a year of contacts, testing samples, and checking references, decided

27  to order ink and masters from Plaintiff WESTERN DUPLICATING INC. at a cost of **$65,000.00,**

28  before sales tax. The price for the same supplies from RISO PRODUCTS OF SACRAMENTO

*Complaint*

PLO0037

1  was **$105,000.00**, before sales tax -- a **$40,000.00** difference per order.   This price difference is

2  typical of the difference between Plaintiffs pricing and defendants' supracompetitive pricing.

3  After the Stockton Unified School District placed its order with Plaintiff, defendant RISO

4  PRODUCTS OF SACRAMENTO falsely represented to the Stockton Unified School District that

5  using Plaintiffs ink and masters would damage its Risographs and informed the District that using

6  such "unauthorized supplies" would void the seven year, ten million dollar warranty and the yearly

7  maintenance contracts. Stockton Unified School District does not self-maintain its Risographs.

8  As a result, the Stockton Unified School District cancelled its order for ink and masters from

9  Plaintiff and resumed purchases from RISO PRODUCTS OF SACRAMENTO. Attached hereto

10 as Exhibit "H" is a true and correct copy of the letter from Stockton Unified School District to

11 Plaintiff setting forth the reasons why the Stockton Unified School District was cancelling its order

12 and would be making no further purchases from Plaintiff.

### XCVII.

14      As a proximate result of the acts of defendants, **the** property, business, and good

15 will of Plaintiff WESTERN DUPLICATING INC. has been damaged.  Plaintiff has lost sales of

16 both ink and masters.   Plaintiff is entitled to its actual damages, to be trebled by the court, along

17 with its attorneys' fees and costs.

### XCVIII.

19      Plaintiff is informed and believes that other sellers of aftermarket supplies have been

20 similarly restrained and that as a result,' prices for supplies are substantially higher --

21 approximately 25% to 40% higher -- than they would be in a competitive market, free of the

22 restraints here in issue.

### XCIX.

24      Unless enjoined, defendants will continue with their agreement, combination and

25 conspiracy to restrain trade in the, marketing, distribution and sale of aftermarket ink and masters

26 for use in Risographs, thereby precluding Plaintiffs continuation as a competitor for such

27 business.   Plaintiff is entitled under Title 15 of the United States Code section 26 to injunctive

28 relief against the threatened loss of Plaintiffs business through defendant's continuation of the

PL00038

1  agreement, combination and conspiracy to restrain trade.

2

3  <u>COUNT 2 -- VIOLATION OF SHERMAN ACT § 1</u>
   (PER SE ILLEGAL TYING ARRANGEMENT)
4

5  C.

6  Plaintiff WESTERN DUPLICATING INC. hereby realleges by reference,

7  paragraphs I and V to LVII of the introductory allegations and paragraphs LIX, LX, LXI, LXII,

8  LXIV, LXV, LXVII, LXIX, LXX, LXXI, LXXIII, LXXIV, LXXVIII, LXXXI, LXXXII,

9  LXXXIII, LXXXIV, LXXXVI, LXXXVII, LXXXVIII, XCII, XCIII, XCIV, XCV and XCVI of

10  Count 1 of this complaint.

11  CI.

12  A negative tying arrangement results when a manufacturer or supplier conditions

13  the sale of one product, termed the tying product, on the agreement not to purchase a second

14  product from competing suppliers.   An affirmative tying arrangement takes place when a seller

15  conditions the sale or lease of one item upon the purchaser purchasing a separate second or tied

16  product.   Where the manufacturer or supplier has market power over the tying product and a not

17  insubstantial volume of commerce is foreclosed by the tying arrangement, the arrangement is *per*

18  *se* illegal under Section 1 of the Sherman Act.   This count or claim for relief is based upon three

19  *per* se illegal tying arrangements, to wit:

20  (1) that RISO conditions its sale of Risographs, spare parts for Risographs and
    RISO brand aftermarket supplies to its dealers agreeing not to handle non-RISO
21  aftermarket supplies (negative tying **arrangement** with the tying products being
    Risographs, RISO manufactured spare parts and RISO manufactured ink and
22  supplies being conditioned upon dealers not purchasing non-RISO ink and
    masters from "supply pirates" such as Plaintiff);
23
    (2) that RISO's seven year and ten million copy warranty is voided if non-RISO
24  aftermarket supplies are used thus forcing Risograph owners to purchase RISO
    manufactured aftermarket ink and masters (negative and affirmative tying
25  arrangement with the tying product being Risograph highspeed digital duplications
    and their warranty and the tied product being RISO manufactured aftermarket ink
26  and masters because non-RISO manufactured supplies are "unauthorized"); and

27  (3) that RISO and its dealers' maintenance agreements are voided if non-RISO
    aftermarket supplies are used thus forcing Risograph owners to purchase RISO
28  manufactured aftermarket ink and masters (negative and **affirmative** tying

**arrangement** with **the tying product being** aftermarket service and repair of Risographs through maintenance agreements and **the tied product** being **RISO** manufactured aftermarket ink and masters because non-RISO manufactured supplies are "unauthorized").

## CII.

Risographs with warranties are separate products'from aftermarket ink and masters for use in Risographs. It is economically efficient to manufacture and sell ink and masters for use in Risographs separate and apart from manufacturing the Risograph high speed digital duplicators. There is no inherent reason why only RISO manufactured ink and masters must be used in Risographs. **Risograph** maintenance agreements are separate products from aftermarket ink and masters for use in Risographs. There is no inherent reason why .**RISO** dealers cannot maintain Risographs which use non-RISO manufactured ink and masters. Spare parts for Risographs are separate products from aftermarket ink and masters for use in Risographs.

## CIII.

Because of the restraints here in issue, RISO controls **more** than **90%** of the aftermarket for sales of ink and masters for use in Risographs.

## CIV.

As discussed in paragraphs LXVII, LXX, **LXXI, LXXII, LXXIII, LXXIV** and LXXV in Count 1 of this complaint, RISO and its local dealers have an agreement in order to protect their "mutual investments" under which "Riso will immediately and permanently stop shipment of **parts** and supplies to any dealer who sells competing **supplies for use** in a **Risograph"** and will cancel dealers who sell competing supplies for use in Risographs. It does not matter whether or not the dealer is selling "competing supplies" in that dealer's assigned/allocated territory. So long as the dealer is selling '"competing supplies" for use in Risographs located anywhere in the United States, all sales of **RISO** products to that dealer will immediately cease and that dealer will be terminated.

## c v.

As a result of this negative tying arrangement, **RISO** will cancel any dealer which purchases aftermarket ink and masters from Plaintiff **WESTERN** DUPLICATING INC. for use

PLO0040

1  in Risographs.  Plaintiff WESTERN DUPLICATING INC. has thus been foreclosed from selling

2  supplies to or through RISO dealers.

3                                    **CVI.**

4            As discussed in paragraphs LXXVIII, LXXXI, LXXXII, LXXXIII, LXXXIV,

5  LXXXVI, LXXXVII, LXXXVIII, XCII, XCIII, XCIV, XCV and XCVI of Count 1 of this

6  complaint, Risographs come with a standardized seven year or ten million copy warranty, the cost

7  of which is included in the price of the Risograph, which is invalidated if "unauthorized supplies"

8  are used. RISO and its dealers also regularly enter into maintenance agreements which are

9  invalidated if "unauthorized supplies" ate used.  Only ink and masters manufactured by RISO are

10 authorized. RISO and its dealers enforce or at a minimum, threaten to enforce, the prohibition

11 on the use of unauthorized supplies which is contained in the warranty and maintenance

12 agreements.

13                                   **CVII.**

14           The provisions in the standard RISO warranty and maintenance agreements whereby

15 they are voided if "unauthorized supplies" are used, constitutes *per se* unlawful negative and

16 affirmative tying arrangements. RISO and its dealers have used the warranty and maintenance

17 agreements to shield their supracompetitive overpriced ink and masters from competition. These

18 tying arrangements imposed by RISO and its dealers have substantially restrained, restricted, and

19 limited competition in the aftermarket for ink and masters for use in **Risographs,** have foreclosed

20 and limited customers from access to competitive aftermarket suppliers and have substantially

21 restricted and foreclosed commerce in the aftermarket for Sales of supplies for use in high speed

22 digital duplicators.

23                                  **CVIII.**

24           These *per* se illegal tying arrangements have resulted in Plaintiffs having been

25 substantially restrained from competing to sell supplies consisting of ink and masters to Risograph

26 owners.

27 ///

28 ///

PL00041

CIX.

Plaintiff is informed and believes that other sellers of aftermarket supplies have been similarly restrained and that as a result, prices for supplies of ink and masters for use in Risographs are approximately 25% to 45% higher than they would be in a competitive market, free of the restraints here in issue.

CX.

As a proximate result of the acts of defendants, the property, business, and good will of Plaintiff WESTERN DUPLICATING INC. has been damaged.   Plaintiff has lost sales of both ink and masters.   **Plaintiff** is entitled to its actual damages, to be trebled by the court, along with its attorneys' fees and costs.

CXI.

Unless restrained, defendants will continue with their illegal tying arrangements and will substantially restrain trade in the marketing, distribution and sale of aftermarket ink and masters for use in Risographs, thereby precluding Plaintiffs continuation as a competitor for such business.   Plaintiff is entitled under Title 15 of the United States Code section 26 to injunctive relief against the threatened loss of Plaintiffs business through defendant's continuation of the defendants' illegal tying arrangements.

COUNT 3 -- VIOLATION OF SHERMAN ACT § 2
(MONOPOLIZATION, ATTEMPT TO MONOPOLIZE AND CONSPIRACY
TO MONOPOLIZE AFTERMARKET FOR SUPPLIES FOR RISOGRAPHS)

CXII.

Plaintiff WESTERN DUPLICATING INC. hereby realleges by reference, paragraphs II and V to LVII of the introductory allegations and paragraphs LXVI to LXXXIII of Count 1 of the complaint.

CXIII.

Defendant RISO and its dealers have market power or near monopoly power, in the original equipment market for high speed digital duplicators and are dangerously close to attaining monopoly power in the original equipment market.   Except for Ricoh, RISO has the' power to

PL00042

1   effectively exclude competitors in the original equipment market. Risographs have always been

2   the technological leader in high speed digital duplicators.   RISO has approximately a 65 % to 75 %

3   market share in the original equipment market for sales of new high speed digital duplicators

4   within the United States. RISO and its dealers consider RISO to be the "dominant" brand of high

5   speed digital duplicators available in the market and are jointly dedicated to maintaining that

6   dominance.

7                                                                      CXIV.

8                 RISO has willfully acquired or maintained its market power in the original

9   equipment market.   For the most part, RISO's dominance in the high speed digital duplicator

10  market has been the result of growth or development as a consequence of a superior product,

11  lawfully attained patents, business acumen and historic accident. Plaintiff WESTERN

12  DUPLICATING INC. does not contend that it has suffered antitrust injury from RISO's market

13  power and near monopoly power in the original equipment market for sales of new equipment.

14  Rather, -Plaintiff has suffered antitrust injury as a result of defendant RISO's leveraging its market

15  and near monopoly power in the original equipment market to exclude competition in the supplies

16  aftermarket for sales of ink and masters for use in Risographs.

17                                                                     cxv.

18                 Defendant RISO and its dealers have monopoly power in the aftermarket for repair,

19  service and maintenance of Risographs or are dangerously close to attaining monopoly power.

.20  As discussed above, because of the absence of ISOs capable of servicing Risographs and because

21  most customers do not have the capability of servicing Risographs, most customers purchase

22  yearly maintenance agreements and are dependant of RISO's territorially allocated dealers for

23  service.   The dominance of RISO and its dealers in the aftermarket for service, repair and

24  maintenance of Risographs has been the result of exclusionary practices.

25                                                                     CXVI.

26                 Defendant RISO and its dealers have monopoly power in the aftermarket for

27  marketing, distribution and sales of aftermarket supplies consisting of ink and masters for use in

28  Risographs or are dangerously close to attaining monopoly power.  Because of the anticompetitive

Complaint                                                              -39-

1    and exclusionary practices here in issue, RISO and its dealers control more than 90% of the

2    aftermarket for sales of ink and masters for use in Risographs. Because of the monopoly power

3    of RISO and its dealers, Risograph owners generally pay substantially more for aftermarket

4.    supplies consisting of ink and masters. Because of the monopoly power of RISO and its dealers,

5    aftermarket suppliers are precluded from selling aftermarket supplies to Risograph owners. The

6    dominance of RISO and its dealers in the aftermarket for sale of supplies consisting of ink and

7    masters for use in Risographs has been the result of exclusionary and predatory practices.

8                           CXVII.

9        The actions of defendants were undertaken to monopolize, or in an attempt to

10    monopolize, or pursuant to a conspiracy to monopolize the aftermarket for marketing, distribution

11    and sale of ink and master for use in Risographs in violation of section 2 of the Sherman Act.

12    RISO and its dealers have combined and conspired with the specific intent to exclude competition

13    and control prices for aftermarket supplies of ink and masters for use in Risographs and have

14    combined and conspired with the specific intent to destroy competition from "supply pirates."

15    RISO and its dealers have used their monopoly or near monopoly power in the equipment market

16    for high speed digital duplicators and their monopoly power or near monopoly power in the

17    aftermarket for the repair, service and maintenance of Risographs to gain a competitive advantage

18    in the aftermarket for sales of ink and masters for use in Risographs. RISO and its dealers have

19    used their monopoly or near monopoly power in the equipment market for high speed digital

20    duplicators and their monopoly power or near monopoly power in the aftermarket for the repair,

21    service and maintenance of Risographs to destroy competition from "supply pirates".

22                           CXVIII.

23        RISO and its dealers have engaged in predatory and anticompetitive conduct directed

24    at controlling prices for aftermarket supplies of ink and masters for use in Risographs and to

25    destroy competition from "supply pirates." By their predatory, anticompetitive and exclusionary

26    conduct, defendants have inhibited competitor's access to Risograph owners and have deprived

27    Risograph owners of an effective choice among competing aftermarket ink and masters. These

28    actions constitute illegal monopolization, attempt to monopolize and conspiracy to monopolize.

Complaint

-40-

### CXIX.

The exclusionary practices of RISO and its dealers have had the effect of excluding competitors on a basis other than competition on the merits and have thereby allowed RISO and its dealers to illegally perpetuate **RISO's** monopoly, or near monopoly, in the aftermarket for sales of ink and masters for use in Risographs.

### CXX.

Through its anticompetitive and exclusionary conduct, RISO and its dealers have harmed consumers, principally schools, in that the prices which schools must pay for ink and masters for use in Risographs is substantially greater than it would be in a competitive environment.

### CXXI.

RISO and its dealers have no legitimate business justification for their exclusionary conduct. Rather, the reason for the actions of RISO and its dealers is to suppress competition from "supply pirates" and for the purpose of "protecting both" **RISO's** and its dealers' "revenue streams".

### CXXII.

As a result of defendants' monopoly, attempted monopoly, or conspiracy to monopolize the aftermarket for sale of ink and master for use in Risographs, Plaintiff WESTERN DUPLICATING INC. has been prevented from effectively competing in the aftermarket for sale of ink and master for use in Risographs and has been damaged in its business, property and good will.

### CXXIII.

Unless restrained, defendants will continue with their monopoly, attempted monopoly, or conspiracy to monopolize the marketing, distribution and sale of aftermarket ink and masters for use in Risographs, thereby precluding Plaintiff's continuation as a competitor for such business. Plaintiff is entitled under Title 15 of the United States Code section 26 to injunctive relief against the threatened loss of Plaintiffs business through defendant's continuation of the monopoly, attempted monopoly, or conspiracy to monopolize.

PLO0045

## COUNT 4 -- VIOLATION OF BUSINESS & PROFESSIONS CODE § 16700
### (TRUST VIOLATING RULE OF REASON UNDER CARTWRIGHT ACT)

#### CXXIV.

Plaintiff WESTERN DUPLICATING INC. hereby realleges by reference, paragraphs III to LVII of the introductory allegations and paragraphs LVIV through XCVIII of Count 1 of this complaint.

#### CXXV.

California's Cartwright Act (Business & Professions Code section 16700 et seq.) prohibits trusts or combinations of capital, skill, or acts by two or more persons (1) which restrict trade or commerce, (2) which limit or reduce the production or increase the price of merchandise or of any commodity, (3) which prevents competition in the sale or purchase of merchandise or any commodity, (4) make or enter into or carry out any contract or agreement of any kind or description by which the parties directly or indirectly preclude a free and unrestricted competition among themselves, or any purchasers or consumers in the sale. of any article or commodity and (5) make or enter into or carry out any contract or agreement of any kind or description by which the parties directly or indirectly unite interests among themselves with respect to the sale of any article or commodity such that its price might in any manner be affected.

#### CXXVI.

Ink and masters are merchandise and a commodity as those terms are used in the Cartwright Act.

#### CXXVII.

The actions of defendants have restricted trade or commerce, in violation of the Cartwright Act.

#### CXXVIII.

The actions of defendants have limited and reduced the production of ink and masters for use in Risographs and have increased the price of ink and masters for use in Risographs, in violation of the Cartwright Act.

///

Complaint                                    -42-

PL00046

**CXXIX.**

The actions of defendants have prevented competition in the sale or purchase of ink and masters for use in Risographs; in violation of the Cartwright Act.

**CXXX.**

Defendants have made and entered into and carried out contract or agreements by which the defendants are directly or indirectly precluded from engaging in free and unrestricted competition among themselves, in violation of the Cartwright Act. Defendants have made and entered into and carried out contracts and agreements by which indirectly preclude free and unrestricted competition in the sale of ink and masters for use in Risographs, in violation of the Cartwright Act.

**CXXXI.**

Defendants have made, entered into or carry out contracts or agreements by which defendants have united in interest amongst themselves with respect to the sale of ink and masters for use in Risographs such that the price is affected, in violation of the Cartwright Act.

**CXXXII.**

As a proximate result of the acts of defendants, the property, business, and good will of Plaintiff WESTERN DUPLICATING INC. has been damaged. Plaintiff has lost sales of both ink and masters. Plaintiff is entitled to its actual damages, to be trebled by the court, along with its attorneys' fees and costs pursuant to Business and Professions Code section 16750.

**CXXXIII.**

Because of the actions of defendants RISO PRODUCTS OF SACRAMENTO in the Sacramento, Stockton and Modesto areas, IKON Office Solutions in the greater Bay Area, the RISO branch office in San Diego and PACIFIC DUPLICATOR SYSTEMS, INC. in the Los Angeles area, Plaintiff stopped receiving or failed to receive orders for aftermarket masters and ink from customers and potential customers.

**CXXXIV.**

Because of the actions of defendants **RISO** PRODUCTS OF SACRAMENTO in the Sacramento, Stockton and Modesto areas, IKON Office Solutions in the greater Bay 'Area, the

PL00047

1   RISO branch office in San Diego and PACIFIC DUPLICATOR SYSTEMS, INC. in the Los

2   Angeles area, customers and potential customers cancelled orders for aftermarket ink and masters

3   from Plaintiff WESTERN DUPLICATING INC.

4                                   cxxxv.

5          Plaintiff is informed and believes that other sellers of aftermarket supplies have been

6   similarly restrained and that as a result, prices for supplies are approximately 30% to 40% higher

7   than they would be in a competitive market, free of the restraints here in issue.

8                                  CXXXVI.

9          Unless enjoined, defendants will continue with their agreement, combination and

10  conspiracy to restrain trade in the marketing, distribution and sale of aftermarket ink and masters

11  for use in Risographs, thereby precluding Plaintiffs continuation as a competitor for such

12  business. Plaintiff is entitled pursuant to Business and Professions Code section 16754.5 to

13  injunctive relief against the threatened loss of Plaintiffs business through defendant's continuation

14  of the agreement, combination and conspiracy to restrain trade.

15

16        COUNT 5 -- VIOLATION OF BUSINESS & PROFESSIONS CODE § 16727
            (ILLEGAL TYING ARRANGEMENT UNDER CARTWRIGHT ACT)
17

18                                 CXXXVII.

19         Plaintiff WESTERN DUPLICATING INC. hereby realleges by reference,

20  paragraphs III to LVII of the introductory allegations and paragraphs LVIV through XCVIII of

21  Count 1 of this complaint.

22                                CXXXVIII.

23         The 1961 amendments to the Cartwright Act (Business & Professions Code section

24  16727) prohibit any condition of a lease, sale, or contract of sale of goods, merchandise, supplies

25  or commodities on the agreement that the lessee or purchaser not use or deal in the goods,

26  merchandise, machinery, supplies,  oommodities, or services of the seller's or lessor's

27  competitor(s) if the effect may substantially lessen competition or tend to create a monopoly in

28  any line of trade or commerce in any section of California.  Business & Professions Code section

Complaint                              -44-                        11.

1  16727 is similar to the specific prohibition on tying found in Section 3 of the Sherman Act except

2  that unlike Section 3 of the Sherman Act, Business & Professions Code section 16727 applies to

3  services. Business & Professions Code section 16727 applies to prohibit both negative tying

4  arrangements and positive tying arrangements.

5                                    **CXXXIX.**

6         A negative tying arrangement results when a manufacturer or supplier conditions

7  the sale of one product, termed the tying product, on the agreement not to purchase a second

8  product from competing suppliers.   An affirmative tying arrangement takes place when a seller

9  conditions the sale or lease of one item upon the purchaser purchasing a separate second or tied

10 product.  Where the manufacturer or supplier has market power over the tying product and a not

11 insubstantial volume of commerce is foreclosed by the tying arrangement, the arrangement is per

12 se illegal under Business & Professions Code section 16727.   This count or claim for relief is

13 based upon three per se illegal tying arrangements, to wit:

14        (1) that **RISO** conditions its sale of Risographs, spare parts for Risographs and
          RISO brand aftermarket supplies to its dealers agreeing not to handle non-RISO
15        aftermarket supplies **(negative tying arrangement** with the **tying** products being
          Risographs, RISO manufactured spare parts and RISO manufactured ink and
16        supplies being **conditioned upon dealers not purchasing** non-RISO ink and
          masters from "supply pirates" such as Plaintiff);
17
18        (2) that **RISO's** seven year and ten million copy warranty is voided if **non-RISO**
          aftermarket supplies are used thus forcing Risograph owners to purchase RISO
19        manufactured aftermarket ink and masters **(negative and affirmative tying
          arrangement** with the **tying** product being Risograph highspeed digital duplications
20        and their warranty and **the tied product** being RISO manufactured aftermarket ink
          and masters because non-RISO manufactured supplies are "unauthorized"); and

21        (3) that RISO and its dealers' maintenance agreements are voided if **non-RISO**
          aftermarket supplies are used thus forcing Risograph owners to purchase RISO
22        manufactured aftermarket ink and masters **(negative and affirmative tying
          arrangement** with the **tying product** being aftermarket service and repair of
23        Risographs through maintenance agreements and **the tied product** being RISO
          manufactured aftermarket ink and masters because non-RISO manufactured supplies
24        are "unauthorized").

25                                    **CXL.**

26        Risographs with warranties are separate products from aftermarket ink and masters

27 for use in Risographs.  It is economically efficient to manufacture and sell ink and masters for use

28 in Risographs separate and apart from manufacturing the Risograph high speed digital duplicators.

Complaint                              -45-

PL00049

1  There is no inherent reason why only RISO manufactured ink and masters must be used in

2  Risographs. Risograph maintenance agreements are separate products from aftermarket ink and

3  masters for use in Risographs. There is no inherent reason why RISO dealers cannot maintain

4  Risographs which use non-RISO manufactured ink and masters. Spare parts for Risographs are

5  separate products from aftermarket ink and masters for use in Risographs.

6                                    CXLI.

7          Because of the restraints here in issue, RISO controls more than 90% of the

8  aftermarket for sales of ink and masters for use in Risographs.

9                                    CXLII.

10         As discussed in paragraphs LXVII, LXX, LXXI, LXXII, LXXIII, LXXIV and

11  LXXV in Count 1 of this complaint, RISO and its local dealers have an agreement in order to

12  protect their "mutual investments" under which "Riso will immediately and permanently stop

13  shipment of parts and supplies to any dealer who sells competing supplies for use in a Risograph"

14  and will cancel dealers who sell competing supplies for use in Risographs.   It does not matter

15  whether or not the dealer is selling "competing supplies" in that dealer's assigned/allocated

16  territory.   So long as the dealer is selling "competing supplies" for use in Risographs located

17  anywhere in the United States, all sales of RISO products to that dealer will immediately cease

18  and that dealer will be terminated.

19                                    CXLIII.

20         As a result of this negative tying arrangement, RISO will cancel any dealer which

21  purchases aftermarket ink and masters from Plaintiff WESTERN DUPLICATING INC. for use

22  in Risographs.  Plaintiff WESTERN DUPLICATING INC. has thus been foreclosed from selling

23  supplies to or through RISO dealers.

24                                    CXLIV.

25         As discussed in paragraphs LXXVIII, LXXXI, LXXXII, LXXXIII, LXXXIV,

26  LXXXVI, LXXXVII, LXXXVIII, XCII, XCIII, XCIV, XCV and XCVI of Count 1 of this

27  complaint, Risographs come with a standardized seven year or ten million copy warranty on the

28  thermal imager, the cost of which is included in the price of the Risograph, which is invalidated

1   if "unauthorized supplies" are used.   RISO and its dealers also regularly enter into maintenance

2   agreements which are invalidated if "unauthorized supplies" are used. Only ink and masters

3   manufactured by RISO are authorized.   RISO and its dealers enforce or at a minimum, threaten

4   to enforce, the prohibition on the use of unauthorized supplies which is contained in the warranty

5   and maintenance agreements.

## CXLV.

7   The provisions in the standard RISO warranty and maintenance agreements whereby

8   they are voided if "unauthorized supplies" are used, constitutes *per* se unlawful affirmative tying

9   arrangements. RISO and its dealers have used the warranty and maintenance agreements to shield

10  their supracompetitive overpriced ink and masters from competition. These tying arrangements

11  imposed by RISO and its dealers have substantially restrained, restricted, and limited competition

12  in the aftermarket for ink and masters for use in Risographs, have foreclosed and limited

13  customers from access to competitive aftermarket suppliers and have substantially restricted and

14  foreclosed commerce in the aftermarket for sales of supplies for use in high speed digital

15  duplicators.

## CXLVI.

17  These *per* se illegal tying arrangements have resulted in Plaintiffs having been

18  substantially restrained from competing to sell supplies consisting of ink and masters to Risograph

19  owners.

## CXLVII.

21  Plaintiff is informed and believes that other sellers of aftermarket supplies have been

22  similarly restrained and that as a result, prices for supplies of ink and masters for use in

23  Risographs are approximately 30% to 40% higher than they would be in a competitive market,

24  free of the restraints here in issue.

## CXLVIII.

26  These actions have resulted in Plaintiffs having been substantially restrained from

27  competing to sell supplies consisting of ink and masters to Risograph owners.   As a proximate

28  result of the acts of defendants, the property, business, and good will of Plaintiff WESTERN

Complaint                                    -47-

PL00051

1  DUPLICATING INC. has been damaged.   Plaintiff has lost sales of both ink and masters.

2  Plaintiff is entitled to its actual damages, to be trebled by the court, along with its attorneys' fees

3  and costs pursuant to Business and Professions Code section 16750.

4  **CXLIX.**

5  Plaintiff is informed and believes that other sellers of aftermarket supplies have been

6  similarly restrained and that as a result, prices for supplies are approximately 30% to 40% higher

7  than they would be in a competitive market, free of the restraints here in issue.

8  **CL.**

9  Unless restrained, defendants will continue with their illegal tying arrangements and

10  will substantially restrain trade in the marketing, distribution and sale of aftermarket ink and

11  masters for use in Risographs, thereby precluding Plaintiff's continuation as a competitor for such

12  business. Plaintiff is entitled pursuant to Business and Professions Code section 16754.5 to

13  injunctive relief against the threatened loss of Plaintiffs business through defendant's continuation

14  of the agreement, combination and conspiracy to restrain trade.

15

16  COUNT 6 -- VIOLATION OF BUSINESS **& PROFESSIONS** CODE § 16600<br>(PROHIBITION ON CONTRACTS IN RESTRAINT OF TRADE)

17

18  **CLI.**

19  Plaintiff WESTERN DUPLICATING INC. hereby realleges by reference,

20  paragraphs III to LVII of the introductory allegations and paragraphs LVIV through XCVIII of

21  Count 1 of this complaint.

22  **CLII.**

23  Pursuant to California Business & Professions Code section 16600, every contract

24  that restrains anyone from engaging in a lawful profession, trade, or business of any kind is, to

25  that extent, void.

26  **CLIII.**

27  The **RISO** dealership agreement is void under California Business **&** Professions

28  Code section 16600 to the extent that it prohibits **RISO** dealers from purchasing ink arid masters

1    from aftermarket suppliers such as Plaintiff WESTERN DUPLICATING INC., under threat of

2    cancellation of the dealership agreement,

### CLIV.

4           The RISO standard warranty is void under California Business & Professions Code

5    section 16600 to the extent that it does not apply if "unauthorized supplies" are used in the

6    Risograph.

### CLV.

8           The RISO standard maintenance agreement is void under California Business &

9    Professions Code section 16600 to the extent that it does not apply if "unauthorized supplies" are

10    used in the Risograph.

### COUNT 7 -- VIOLATION OF BUSINESS & PROFESSIONS CODE § 17200
### (EQUITABLE RELIEF TO HALT UNFAIR COMPETITION)

### CLVI.

15           Plaintiff WESTERN DUPLICATING INC. hereby realleges by reference,

16    paragraphs III to LVII of the introductory allegations and paragraphs LVIV through XCVIII of

17    Count 1 of this complaint.

### CLVII.

19           Business & Professions Code section 17200 prohibits all acts of unfair competition,

20    including any unlawful, unfair or fraudulent business practice and unfair, deceptive, untrue or

21    misleading advertising.  Under Business & Professions Code section 17508, a false or misleading

22    advertising claim includes a claims that (1) purports to be based on factual, objective, or clinical

23    evidence, that (2) compares a product's effectiveness or safety to that of other brands or products,

24    or that (3) purports to be based on any fact.

### CLVIII.

26           The conduct of defendants taken to suppress competition from "supply pirates"

27    constitutes unfair competition under Business & Professions Code section 17200, in that the acts

28    are unlawful, unfair and fraudulent business practices and include unfair, deceptive, untrue and

PLO0053

1 misleading advertising.

2 ## CLIX.

3       Unless restrained, defendants will continue with their acts of unfair competition,

4 to the detriment of consumers and Plaintiff as a competitor. Plaintiff is entitled pursuant to

5 Business and Professions Code section 17203 to injunctive relief against the threatened

6 continuation of the acts of unfair competition. The court should further make such orders or

7 judgments, including the appointment of a receiver, as may be necessary to prevent the use or

8 employment by defendants of any act of unfair competition, or as may be necessary to restore to

9 any person in interest any money or property, real or personal, which may have been acquired

10 by means of such unfair competition. Specifically, this court should order disgorgement of all ill

11 gotten gains obtain through defendants' acts of unfair competition.

12

13 ### COUNT 8 -- VIOLATION OF **BUSINESS** & PROFESSIONS CODE § 17500
### (EQUITABLE **RELIEF** TO HALT DECEPTIVE ADVERTISING)

14

15 ## CLX.

16       Plaintiff **WESTERN** DUPLICATING INC. hereby realleges by reference,

15 paragraphs III to LVII of the introductory allegations and paragraphs LVIV through XCVIII of

18 Count '1 of this complaint.

19 ## CLXI.

20       Business & Professions Code section 17500 makes it unlawful for any person, firm

21 or corporation **with** intent directly or indirectly to sell any product, good or commodity to

22 disseminate or cause to be made or disseminated before the public in this state in any manner or

23 means whatever, any statement, concerning such product, good or commodity which is untrue or

24 misleading, and which is known, or which by the exercise of reasonable care should be known,

25 to be untrue or misleading. Under Business & Professions Code section 17508, a false or

26 misleading advertising claim includes a claims that (1) purports to be based on factual, objective,

27 or clinical evidence, that (2) compares a product's effectiveness or safety to that of other brands

28 or products, or that (3) purports to be based on any fact.

Complaint

-50-

PLO0054

## CLXII.

The conduct of defendants taken to suppress competition from "supply pirates" through disparaging the products of Plaintiff WESTERN DUPLICATING INC. constitutes false and misleading "advertising" under Business & Professions Code section 17500. The standard warning label included with every Risograph warning of the risk of fire if any ink other than RISO manufactured ink is used is deceptive and misleading in that Plaintiff's ink creates no greater risk of fire than RISO ink and Plaintiff is informed an believes, no other aftermarket ink possess a substantial risk of fire.

## CLXIII.

RISO recently began a program of having its dealers install "warning" stickers upon all Risographs to dissuade customers from daring to use any non-Riso manufactured inks or masters. The "RISO News Flash" sent to all Riso, Inc. dealers instructed the dealers to place the warnings in all Risographs in locations where anyone installing supplies into the machines will necessarily notice the warning. The warnings indicate that unless "masters and ink cartridges carry the original RISO logo" -- if they use "non-RISO manufactured inks or masters" -- then such may "cause serious damage to the ink cylinder and the Risograph" and "cause repair or service problems not covered by your warranty or service agreement".

## CLXIV;

The warning stickers constitute advertising under Business & Professions Code section 17500. The stickers are targeted at the audience of persons purchasing aftermarket supplies for Risographs.

## CLXV.

The warning stickers are deceptive in that RISO knows that certain aftermarket supplies, including those sold by Plaintiff WESTERN DUPLICATING INC., will not cause damage when used in Risographs. The warning stickers intentionally fail to differentiate between aftermarket supplies, intending to collectively disparage the quality and safety of all aftermarket supplies.

///

PLO0055

1
CLXVI.

2    The "RISO News Flash" which accompanied the warning stickers sets forth the

3    purpose and intent behind the warning stickers:

4    *The use of these warning labels on your installed base and new*
5    *machines is a step toward fighting the supply pirates and protecting*
      *both of our revenue streams.*

6    In short, the warning is for the purpose of protecting the profits of RISO and its dealers so that

7    they not only face no competition from each other, but that they also face no effective competition

8    from "supply pirates" who sell non-Riso manufactured inks or masters.

9
CLXVII.

10    Unless restrained, defendants will continue with their acts of false and misleading

11    "advertising", to the detriment of consumers and Plaintiff as a competitor.   Plaintiff is entitled

12    pursuant to Business and Professions Code section 17535 to injunctive relief against the threatened

13    continuation of the acts of false and misleading "advertising".   The court should further make such

14    orders or judgments, including the appointment of a receiver, as may be necessary to prevent the

15    use or employment by defendants of any act of false or misleading advertising, or as may be

16    necessary to restore to any person in interest any money or property, real or personal, which may

17    have been acquired by means of such false and misleading advertising.   Specifically, this court

18    should order disgorgement of all ill gotten gains obtain through defendants' false and misleading

19    advertising.

20

21    <u>COUNT 9 -- INTENTIONAL INTERFERENCE **WITH CONTRACTUAL** RELATION</u>

22    CLXVIII.

23    Plaintiff WESTERN DUPLICATING INC. hereby realleges by reference,

24    paragraphs III to LVII of the introductory allegations and paragraphs LVIV through XCVIII of

25    Count 1 of this complaint.

26    CLXIX.

27    Plaintiff WESTERN DUPLICATING INC. has been successful in obtaining some

28    orders for ink and masters from Risograph owners. When **RISO** or its local dealers learn that a

Complaint
-52-

PL00056

Risograph owner has ordered supplies from Plaintiff, the local RISO dealers and RISO branch offices, consistent with the recommendations of RISO, INC., engage in a campaign of threats to void the warranty and maintenance agreements and false product disparagement, resulting in Plaintiff WESTERN DUPLICATING INC. losing those customers and cancellation of the orders.

### CLXX.

RISO and its dealers are aware that there is a significant ripple effect in the market for aftermarket supplies of ink and masters for use in Risographs. A school district is much more likely to sample and purchase non-RISO manufactured ink and masters when such aftermarket supplies are being used by a neighboring school district. As a result, when RISO and its dealers learn that a Risograph owner is purchasing non-RISO aftermarket supplies, RISO and its local dealers increase their servicing threats and' false product disparagement in order to prevent the competitor from obtaining a toehold in their market.

### CLXXI.

Defendant RISO and its local dealers have willfully published and communicated to Risograph owners that the aftermarket supplies sold by Plaintiff WESTERN DUPLICATING INC. are defective and will cause damage when used for their intended use in Risographs. Defendant RISO and its local dealers recognize or should recognize that such statements are likely to result in interfering in the contractual relationships of Plaintiff WESTERN DUPLICATING INC. Indeed, such statements are intended to harm WESTERN DUPLICATING INC. in its contractual relationships and ability to compete with defendant RISO and its local dealers. Defendant RISO and its local dealers have published said false statements knowing that they have no basis for their assertions.

### CLXXII.

Defendants RISO PRODUCTS OF SACRAMENTO and IRON, in the Bay Area, have engaged in a consistent pattern of threats and product disparagement toward those school districts which have purchased ink and masters from Plaintiff WESTERN DUPLICATING INC. At the time these threats and product disparagements are made, RISO PRODUCTS OF SACRAMENTO and IRON knew the source of the non-RISO aftermarket supplies and intended

1    that their threats and false statements be understood to refer to Plaintiff WESTERN

2    DUPLICATING INC. Plaintiff is informed and believes that Defendant RISO, through its branch

3    offices in San Diego and Houston, and defendant PACIFIC DUPLICATOR SYSTEMS, INC., in

4    the Los Angeles area, have also engaged in threats and false statements directed toward Plaintiff's

5    aftermarket supplies. Risograph owners which are purchasing aftermarket supplies understand that

6    the threats and false statements refer to those products supplied by WESTERN DUPLICATING

7    INC. Plaintiff WESTERN DUPLICATING INC. has lost numerous customers to these two RISO

8    dealers because of such threats and false disparagement.

9                               **CLXXIII.**

10          Plaintiff WESTERN DUPLICATING INC. has been injured financially by these

11    cancelled and lost sales, as well as to its reputation.

12                                **CLXXIV.**

13          The statements and representations of defendants were motivated by oppression,

14    fraud, malice and a desire to suppress competition from "supply pirates" such as Plaintiff and to

15    'protect defendants' "revenue streams", justifying the awarding of exemplary and punitive

16    damages.

17

18               COUNT 10 -- INTERFERENCE **WITH PROSPECTIVE** ADVANTAGE

19                            **CLXXV.**

20          Plaintiff WESTERN DUPLICATING INC. hereby realleges by reference,

21    paragraphs III to LVII of the introductory allegations and paragraphs LVIV throug XCVIII of

22    Count 1 of this complaint.

23                              **CLXXVI.**

24          Plaintiff WESTERN DUPLICATING INC. has been successful in obtaining some

25    orders for ink and masters from Risograph owners. Absent interference from defendants, Plaintiff

26    would likely have received further orders from those Risograph owners, to the economic benefit

27    to Plaintiff. When RISO or its local dealers learn that a Risograph owner has ordered supplies

28    from Plaintiff or is testing supplies from Plaintiff, the local RISO dealers, consistent with the

**P L 0 0 0 5 8**

1    recommendations of RISO, engage in a campaign of threats and false product disparagement,

2    resulting in Plaintiff WESTERN DUPLICATING INC. losing those customers and incurring

3    additional expenses attempting to counteract the false disparagement of Plaintiff's aftermarket

4    supplies.

5    **CLXXVII.**

6    RISO and the local RISO dealers are aware that there is a significant ripple effect

7    in the market for aftermarket supplies of ink and masters for use in Risographs.  A school district

8    is much more likely to sample and purchase non-RISO manufactured ink and masters when such

9    aftermarket supplies are being used by a neighboring school district.  As a result, when RISO and

10    its 'local dealers learn that a Risograph owner is sampling or purchasing non-RISO aftermarket

11    suppiies, RISO and its local dealers increase their servicing threats and false product

12    disparagement in order to prevent the competitor from obtaining a toehold in their market.

13    **CLXXVIII.**

14    Defendant RISO and its local dealers have willfully, without justification and

15    without privilege have published and communicated to Risograph owners that the aftermarket

16    supplies sold by Plaintiff WESTERN DUPLICATING INC. are defective and will cause damage

17    when used for their intended use in Risographs.  Defendant RISO and its local dealers recognize

18    or should recognize that such statements are likely to result in harm to the interests of Plaintiff

19    WESTERN DUPLICATING INC.   Indeed, such statements are intended to harm WESTERN

20    DUPLICATING INC. in its ability to compete with defendant RISO and its local dealers.

21    Defendant RISO and its local dealers have published said false statements knowing that they have

22    no basis for their assertions.

23    **CLXXIX.**

24    RISO has tested those aftermarket supplies which it knows to be of inferior quality.

25    Defendant RISO has either intentionally chosen not to test those aftermarket supplies marketed by

26    Plaintiff WESTERN DUPLICATING INC. or has tested Plaintiffs supplies and knows that those

27    supplies are of equal or superior quality.

28    ///

Complaint

PL00059

## CLXXX.

Defendant RISO and its local dealers have a custom and practice of disparaging any and all aftermarket supplies for use in Risographs, claiming that "generic" supplies or non-RISO manufactured supplies are of inferior quality and can damage Risographs. RISO dealer regularly inform Risograph owners that use of non-RISO supplies will damage Risographs, will cause fires, will void the warranty, will void the maintenance agreement, etc. In fact, aftermarket supplies are of varying quality, but RISO and its dealers intentionally deceive Risograph owners into believing that all non-RISO manufactured supplies are of the lowest quality. When a Risograph owner uses non-RISO manufactured ink or masters, RISO and its dealers have a custom and practice of falsely attributing all problems to use of non-RISO manufactured aftermarket masters and ink.

## CLXXXI.

For example, RISO PRODUCTS OF SACRAMENTO has indicated to customers and potential customers of Plaintiff WESTERN DUPLICATING INC. that use of the Tomoegawa ink sold by Plaintiff creates a risk of fire. In fact, Tomoegawa ink is not flammable. RISO PRODUCTS OF SACRAMENTO told that same potential customer of Plaintiff that was using a sample of Plaintiffs ink, that the ink cartridge did not fit properly and jammed in "the Risograph cylinder and caused damage." In fact, the cartridge used was a recycled RISO cartridge which had not been altered except to remove the RISO service marks.

## CLXXXII.

Defendants RISO PRODUCTS OF SACRAMENTO and IKON, in the Bay Area, have engaged in a consistent pattern of threats and product disparagement toward those school districts which have sampled or purchased ink and masters from Plaintiff WESTERN DUPLICATING INC. At the time these threats and product disparagements are made, RISO PRODUCTS OF SACRAMENTO and IKON knew the source of the non-RISO aftermarket supplies and intended that their threats and false statements be understood to refer to Plaintiff WESTERN DUPLICATING INC. Plaintiff is informed and believes that Defendant RISO, through its branch office in San Diego, and defendant PACIFIC DUPLICATOR SYSTEMS,

PLO0060

1  INC., in the Los Angeles area, have also engaged in threats and false statements directed toward

2  Plaintiffs aftermarket supplies. Risograph owners which are sampling or purchasing aftermarket

3  supplies understand that the threats and false statements refer to those products supplied by

4  WESTERN DUPLICATING INC. Plaintiff WESTERN DUPLICATING INC. has lost numerous

5  customers to these two RISO dealers because of such threats and false disparagement.

6                                CLXXXIII.

7          The disparagement of Plaintiffs aftermarket supplies have caused potential

'8  customers to fail to order supplies from Plaintiff, have caused customers to discontinue ordering

9  supplies from Plaintiff. and have caused Plaintiff to incur additional expenses, all to Plaintiffs

10  business and pecuniary damage.   Some of the customers and potential customers with whom RISO

11  and its local dealers have interfered include the Antioch Unified School District, Des Moines

12  [Iowa] School District, Fresno Unified School District, Konocti School District, Liver-more School

13  District, Modesto Unified School District, Mount Diablo Unified School District, Oak Grove

14  School District, Oakland City Schools, San Diego. Unified School District, San Jose City Unified

15  School District, San Juan Unified School District, San Lorenzo Unified School District, South San

16  Francisco School District, Stockton Unified School District, Woodland Hills School District, San

17  Leandro Unified School District, Selma Unified School District and West Contra Costa School

18  District.

19                                CLXXXIV.

20          The statements and representations of defendants were motivated by oppression,

21  fraud, malice and a desire to suppress competition from "supply pirates" such as Plaintiff and to

22  protect defendants' "revenue streams",  justifying the awarding of exemplary and punitive

23  damages.

24

25           COUNT 11 -- TRADE LIBEL & PRODUCT DISPARAGEMENT

26                                CLXXXV.

27          Plaintiff WESTERN DUPLICATING INC. hereby realleges by reference,

28  paragraphs III to LVII of the introductory allegations and paragraphs LVIV through XCVIII of

PL00061

1    Count 1 of this complaint.

2    ## CLXXXVI.

3        Defendant RISO and its local dealers have willfully, without justification and

4    without privilege have published and communicated to Risograph owners that the aftermarket

5    supplies sold by Plaintiff WESTERN DUPLICATING INC. are defective and will cause damage

6    when used for their intended use in Risographs.  Defendant RISO and its local dealers recognize

7    or should recognize that such statements are likely to result in harm to the interests of Plaintiff

8    WESTERN DUPLICATING INC. Indeed, such statements are intended to harm WESTERN

9    DUPLICATING INC. in its ability to compete with defendant RISO and its local dealers.

10   Defendant RISO and its local dealers have published said false statements knowing that they have

11   no basis for their assertions.

12   ## CLXXXVII.

13       RISO has tested those aftermarket supplies which it knows to be of inferior quality.

14   Defendant RISO has either intentionally chosen not to test those aftermarket supplies marketed by

15   Plaintiff WESTERN DUPLICATING INC. or has tested Plaintiff's supplies and knows that those

16   supplies are of equal or superior quality..

17   ## CLXXXVIII.

18       Defendant RISO and its local dealers have a custom and practice of disparaging any

19   and all aftermarket supplies for use in Risographs, claiming that "generic" supplies or non-RISO

20   manufactured supplies are of inferior quality and can damage Risographs.  RISO dealer regularly

21   inform **Risograph** owners that use of non-RISO supplies will damage Risographs, will cause fires,

22   will void the warranty, will void the maintenance agreement, etc. In fact, aftermarket supplies

23   are of varying quality, but **RISO** and its dealers intentionally deceive Risograph owners into

24   believing that all non-RISO manufactured supplies are of the lowest quality.  When a Risograph

25   owner uses **non-RISO** manufactured ink or masters, RISO and its dealers have a custom and

26   practice of falsely attributing all problems to use of **non-RISO** manufactured aftermarket masters

27   and ink.

28   ///

Complaint

-58-

PL00062

## CLXXXIX.

Plaintiff WESTERN DUPLICATING INC. has, on occasion, been successful in obtaining some orders for supplies from Risograph owners which rely upon the local RISO dealer for maintenance. However, the local RISO dealers, consistent with the recommendations of RISO, then engage in an increased campaign of threats and false disparagement, resulting the Plaintiff **WESTERN** DUPLICATING INC. losing those customers and incurring additional expenses attempting to counteract the false disparagement of Plaintiffs aftermarket supplies.

## cxc.

RISO and the local RISO dealers are aware that there is a significant ripple effect in the market for aftermarket supplies of ink and masters. A scliool district is much more likely to sample and purchase non-RISO manufactured ink and masters when such aftermarket supplies are being used by a neighboring school district. As a result, when RISO and its local dealers learn that a Risograph owner is sampling or purchasing **non-RISO** aftermarket supplies, RISO and its local dealers increase their servicing threats and false product **disparagement** in order to prevent the competitor from obtaining a toehold in their market.

## CXCI.

Defendants **RISO** PRODUCTS OF SACRAMENTO and IKON, in the Bay Area, have engaged in a consistent pattern of threats and product disparagement toward those school districts which have sampled or purchased ink and masters from Plaintiff WESTERN DUPLICATING INC. At the time these threats and product disparagements are made, **RISO** PRODUCTS OF SACRAMENTO and IKON knew the **source** of the non-RISO aftermarket' supplies and intended that their threats and false statements be understood to refer to Plaintiff WESTERN DUPLICATING INC. Plaintiff is informed and believes that Defendant RISO, through its branch offices in San Diego and Houston, and defendant PACIFIC DUPLICATOR SYSTEMS, INC., in the Los Angeles area, have also engaged in threats and false statements directed toward Plaintiffs aftermarket supplies. Risograph owners which are sampling or purchasing aftermarket supplies understand that the threats and false statements refer to those products supplied by WESTERN DUPLICATING INC. Plaintiff WESTERN DUPLICATING

Complaint

-59-

1  INC. has lost numerous customers to these two RISO dealers because of such threats and false

2  disparagement.

### CXCII.

4      For example, **RISO** PRODUCTS OF SACRAMENTO has indicated to customers

5  and potential customers of Plaintiff WESTERN DUPLICATING INC. that use of the Tomoegawa

6  ink sold by Plaintiff creates a risk of fire.   In fact, Tomoegawa ink is not flammable. **RISO**

7  PRODUCTS OF SACRAMENTO told that same potential customer of Plaintiff that was using a

8  sample of Plaintiffs ink, that the ink cartridge did not fit properly and jammed in "the Risograph

9  cylinder and caused damage. "   In fact, the cartridge used was a recycled RISO cartridge which

10  had not been altered except to remove the RISO service marks.

### CXCIII .

12      **RISO** recently began a program of having its dealers install "warning" stickers upon

13  all Risographs to dissuade customers from daring to use any non-Riso manufactured inks or

14  masters. The "RISO News Flash" sent to all RISO dealers instructs that the warnings be placed

15  in all Risographs in locations where anyone installing supplies into the machines will necessarily

16  notice the warning.   The warnings state that unless the owner's "masters and ink cartridges carry

17  the original **RISO** logo" -- if they use "non-RISO manufactured inks or masters" -- then such may

18  "cause serious damage to the ink **cylinder** and the Risograph" and "cause repair or service

19  problems not covered by your warranty or service agreement".   The **"RISO** News Flash" clearly

20  sets forth the purpose and intent behind the warning stickers:

21      *The use of these warning labels. on your installed base and new*
    *machines is a step toward fighting the supply pirates and protecting*
22      *both of our revenue streams.*

23  In short, the warning is for the purpose of protecting the profits of RISO and its dealers by

24  making a blanket disparagement of all non-RISO manufactured supplies.

### CXCIV.

26      The defendants' statements were made of and concerning Plaintiffs masters and ink

27  and were so understood by those Risograph owners and operators to whom they were

28  communicated,  The above mentioned warning stickers have been placed in Risographs Where the

1     local **RISO** dealer knows that the owner is using or testing Plaintiff's ink and/or masters.

2     CXCV.

3     The defendants' statements and representations disparaged Plaintiffs masters and

4     ink, falsely indicating to Risograph owners that Plaintiffs masters and ink were of inferior quality,

5     would damage Risographs and were dangerous of person and property.

6     **CXCVI.**

7     The defendants' statements and representations were false.

8     **CXCVII.**

9     Defendants knew their statements and representations were false or acted

10     intentionally knowing that they did not know whether or not their statements and representations

11     were true or false.

12     **CXCVIII.**

13     The disparagement of Plaintiffs aftermarket supplies have caused potential

14     customers to fail to order supplies from Plaintiff, have caused customers to discontinue ordering

15     supplies from Plaintiff and have cause Plaintiff to incur additional expenses, all to Plaintiff's

16     business and pecuniary damage.

17     **CXCIX.**

18     The statements and representations of defendants were motivated by oppression,

19     fraud, malice and a desire to suppress competition from "supply pirates" such as Plaintiff and to

20     protect defendants' "revenue streams", justifying the awarding of exemplary and punitive

21     damages.

22

23     **WHEREFORE,** Plaintiff WESTERN DUPLICATING INC. prays for judgment

24     and requests against defendants that:

25     1.    Judgment for money damages be entered in favor of Plaintiff and against

26     defendants for the amount of injury to Plaintiffs property, business and good **will** cause by

27     defendants illegal conduct, in an unknown amount, but which is estimated to exceed five million

28     dollars (**$5,000,000.00**), which damages be trebled under Counts 1, 2, 3, 4 & 5;

PL00065

2.     Attorney's fees and costs under Counts 1, 2, 3, 4 & 5;

3.     That a preliminary and permanent injunction be issued, enjoining defendants from continuing the unlawful practices described above under Counts 1, 2, 3, 4, 5, 7, 8, 9, 10, & 11;

4.     A declaration that the provisions of the RISO dealer agreement which prohibit RISO dealers from purchasing. selling or otherwise handling non-RISO manufactured aftermarket ink and masters is void and unenforceable;

5.     A declaration that the provision in the RISO warranty which provides that "This warranty shall not apply if machine has been subjected to . . . unauthorized operating supplies . . ." is void and unenforceable with respect to Plaintiff's ink and masters;

6.     A declaration that the provision of the RISO maintenance agreement whereby the agreement does not cover repairs or service if unauthorized non-RISO supplies are used is void and unenforceable with respect to Plaintiffs ink and masters;

7.     For such other relief as the court deems just, appropriate and equitable.

DATED:     January 30, 1998     LAW OFFICES OF BRADLEY N. WEBB

By: _Bradley N. Webb_

BRADLEY N. WEBB, Attorney for Plaintiff
WESTERN DUPLICATING, INC.

BNW\West\Dup\COMPLNT.001

Complaint

-cc?-

PL00066