1  WILLIAM A. KERSHAW, State Bar No. 57486
   MICHAEL A. GROB, State Bar No. 59439
2  LYLE W. COOK, State Bar No. 148914
   MARK J. TAMBLYN, State Bar No. 179272
3  **KRONICK, MOSKOVITZ, TIEDEMANN & GIRARD**
   A Professional Corporation
4  400 Capitol Mall, 27th Floor
   Sacramento, CA 95814-4417
5  Telephone: (916) 321-4500
   Facsimile: (916) 321-4555
6
   JAMES P. ULWICK, pro hac vice
7  JOHN BOURGEOIS, pro hac vice
   **KRAMON & GRAHAM**
8  One South Street, Suite 2600
   Baltimore, MD 21202
9  Telephone: (410) 752-6030
   Facsimile: (410) 539-1269
10
   HARVEY G. SANDERS, JR., pro hac vice
11 JAMES T. HEWITT, pro hac vice
   **LEATHERWOOD, WALKER, TODD & MANN**
12 100 East Coffee Street
   Greenville, SC 29602
13 Telephone: (864) 242-6440
   Facsimile: (864) 240-2478
14
   Attorneys for Plaintiffs MODESTO CITY SCHOOLS,
15 STOCKTON UNIFIED SCHOOL DISTRICT, on their own
   behalf and on behalf of the class consisting of all public
16 schools and public school districts in the United States

17
                    UNITED STATES DISTRICT COURT
18
                    EASTERN DISTRICT OF CALIFORNIA
19

| | |
|---|---|
| 20 MODESTO CITY SCHOOLS, STOCKTON UNIFIED SCHOOL DISTRICT, on their own behalf and on behalf of the class consisting of all Schools and School Districts in the United States, | Case No. CIV. S-99-2214 DFL/GGH |
| 21 | **FIRST AMENDED CLASS ACTION COMPLAINT** |
| 22 | |
| 23 Plaintiffs, v. | For Damages and Injunctive Relief for Violations of Section 1 of the Sherman Act; Violation of the Wilson Tariff Act; Violation of Massachusetts Protection Act (Mass. Gen. Law Chapter 93A, section 2). |
| 24 RISO KAGAKU CORPORATION, a Japanese corporation, RISO, INC., a | |
| 25 Massachusetts corporation, and RPSI ENTERPRISES, INC., a California | |
| 26 corporation, dba RISO PRODUCTS OF SACRAMENTO, | **JURY TRIAL DEMANDED** |
| 27 | |
| 28 Defendants. | |

                                              **PMOD 09855**

712401.1                          -1-

FIRST AMENDED CLASS ACTION COMPLAINT

1   Plaintiffs MODESTO CITY SCHOOLS and STOCKTON UNIFIED SCHOOL

2   DISTRICT on their own behalf and in their capacity as representatives of the class of public

3   school districts and public schools within the United States and California, complaining of the

4   above-named defendants and demanding a trial by jury, allege the following counts against all

5   Defendants: (1) multiple restraints of trade in the retail market for Risograph service in violation

6   of Section 1 of the Sherman Act, including a joint boycott, tying arrangements, and customer and

7   territorial divisions; (2) for multiple restraints of trade in the retail market for Risograph supplies

8   in violation of Section 1 of the Sherman Act, including a joint boycott, tying arrangements, and

9   customer and territorial divisions; and (3) multiple restraints of trade in the retail market for

10  articles imported into the United States, in violation of the Wilson Tariff Act; and (4) unfair

11  methods of competition in violation of the Massachusetts Protection Act.

**JURISDICTION AND VENUE**

13      1.      The federal antitrust counts of this Complaint are filed under the provisions of

14  Title 15 of the United States Code sections 15, 15c, 15d, 15e, 15g and 26, commonly known as

15  the Clayton Act, to secure damages and injunctive relief from defendants for violations of Title

16  15 of the United States Code section 1, commonly known as section 1 of the Sherman Act.  Since

17  the defendants are engaged in the importation of the goods in issue from Japan into the United

18  States, the same conduct that is a violation of section 1 of the Sherman Act, also violates Title 15

19  of the United States Code section 8, commonly known as the Wilson Tariff Act.  The activities of

20  Defendants and their co-conspirators that are the subject of this Complaint are within the flow of

21  and substantially affect interstate commerce.  A not insubstantial volume of trade and commerce

22  is involved and affected by the violations alleged in this complaint.

23      2.      This Court has pendant jurisdiction over the state law counts in that the subject

24  matter is directly related to the subject matter of the federal antitrust claims.  28 U.S.C. Section

25  1367.

26      3.      Venue is proper in this District under section 12 of the Clayton Act, Title 15 of the

27  United States Code section 22 and Title 28 of the United States Code section 1391 because

28  defendant co-conspirator RISO PRODUCTS OF SACRAMENTO transacts business, resides and

712401.1

-2-

FIRST AMENDED CLASS ACTION COMPLAINT                    **PMOD 09856**

1  is found within this District, defendant co-conspirators RISO KAGAKU CORPORATION, and

2  RISO, INC. transact business within this District, and because RISO KAGAKU

3  CORPORATION is an alien corporation. Acts in violation of the federal antitrust laws have

4  taken place within the Eastern District of California.

## THE PARTIES

6      4.      Plaintiff MODESTO CITY SCHOOLS is a public school district formed and

7  operating under the laws of the State of California, located in Stanislaus County, California.

8  Plaintiff MODESTO CITY SCHOOLS is located within the Eastern District.

9      5.      Plaintiff STOCKTON UNIFIED SCHOOL DISTRICT is a public school district

10  formed and operating under the laws of the State of California located in San Joaquin County,

11  California. Plaintiff STOCKTON UNIFIED SCHOOL DISTRICT is located within the Eastern

12  District.

13      6.      Plaintiffs bring this action on their own behalf and on behalf of the class of all

14  public schools and school districts in the United States owning or leasing or operating

15  Risographs.

16      7.      Plaintiffs are informed and believe that Defendant and co-conspirator RISO

17  KAGAKU CORPORATION ("RISO KAGAKU") is a Japanese corporation with its headquarters

18  located in Tokyo. RISO KAGAKU manufactures digital duplicators as well as parts and supplies

19  for those duplicators and has, at all times relevant to this Complaint, engaged in the exportation

20  from Japan and importation into the United States of such materials, where they are distributed

21  and sold domestically.

22      8.      Defendant and co-conspirator RISO, INC., a Massachusetts corporation, was

23  founded in 1986 and has its corporate headquarters in Danvers, Massachusetts. RISO, INC., is a

24  wholly owned subsidiary of RISO KAGAKU. RISO, INC. has, at all times relevant to this

25  complaint, engaged in the importation of digital duplicators, parts and supplies for distribution

26  and sale domestically.

27      9.      This Court has determined that it has jurisdiction over RISO KAGAKU. Plaintiffs

28  further allege that: RISO KAGAKU is the developer and world leader in high-speed digital

712401.1                                -3-

PMOD 09857

1   duplicators, which RISO KAGAKU markets worldwide under the name of Risographs, which are

2   sold in this country through RISO KAGAKU's wholly owned subsidiary and sales arm, RISO,

3   INC. RISO KAGAKU and RISO, INC. together operate a unified worldwide website with a

4   seamless marketing image. On this website RISO KAGAKU and RISO, INC. distribute

5   information through an interactive format in which individuals can subscribe to a Riso customer

6   newsletter; actively solicit sales; reference existing government contract numbers from at least 15

7   states and the federal government in order to ensure ease of purchasing by government entities,

8   including, in particular, the contract numbers for the State of California and the Los Angeles

9   Unified School District; and otherwise vigorously direct their business development efforts to all

10  states in the Union. RISO KAGAKU holds 177 United States patents for Risographs and

11  accessories and supplies for use with Risographs. In its marketing materials used in the United

12  States, RISO, INC. makes reference to the "patented technology" used in its products without

13  differentiating between the companies. RISO KAGAKU is the United States copyright owner of

14  various written materials shipped into the United States for distribution through RISO, INC.

15  RISO KAGAKU is the United States trademark owner of various products shipped into the

16  United States for distribution through RISO, INC. RISO KAGAKU and RISO, INC. have jointly

17  undertaken actions to enforce and protect RISO KAGAKU's trademarks. RISO KAGAKU

18  appoints the Board of Directors of RISO, INC. Members of the RISO KAGAKU Board of

19  Directors are on the Board of Directors of RISO INC., and comprise a majority of RISO INC.'s

20  Board. RISO KAGAKU has brought litigation and threatened to bring litigation in the courts of

21  the United States. RISO KAGAKU has hired persons in Japan and placed those employees in

22  important policy making positions with RISO, INC., in the United States. RISO KAGAKU has

23  hired and fired chief executives and other officers of RISO, INC. RISO KAGAKU has arranged

24  for and controlled the financing of RISO INC. Officers and employees of RISO KAGAKU visit

25  the United States to participate in trade shows in an attempt to increase company sales and to

26  participate in RISO dealer meetings. Officers and employees of RISO KAGAKU routinely travel

27  to the premises of RISO, INC. to assist in the management and operations of RISO, INC.

28  / / /

712401.1

-4-

PMOD 09858

10.    Because RISO, INC. is a wholly owned subsidiary of RISO KAGAKU, the two corporations are for purposes of this action, considered a single entity incapable of conspiring amongst themselves and hereafter will collectively be referred to as RISO.

11.    Defendant and co-conspirator RPSI ENTERPRISES, INC., dba RISO PRODUCTS OF SACRAMENTO is a California corporation located in Rancho Cordova, California, and is the only RISO dealer for the counties of Amador, Butte, El Dorado, Merced, Placer, Sacramento, San Joaquin, Stanislaus, Sutter, Yuba, and Yolo, as well as portions of the County of Solano in California. RPSI ENTERPRISES, INC., dba RISO PRODUCTS OF SACRAMENTO sells Risographs, parts, and supplies, items which reach them through foreign trade and commerce, to local purchasers, including plaintiffs MODESTO CITY SCHOOLS and STOCKTON UNIFIED SCHOOL DISTRICT.

12.    The named Defendants will hereinafter be referred to collectively as "Defendants." When collective reference is made to Defendants, each Defendant is being referred to as a person, under the Sherman Act, that has contracted, combined, or conspired as to the matter or matters alleged. The contract, combination or conspiracy alleged herein also includes RISO dealers that have not been named as Defendants. When reference is generally made to "RISO and its dealers," the reference includes RISO KAGAKU, RISO, INC. and each of its United States dealers operating under RISO's domestic dealer agreements. The reference to "RISO and its dealers" specifically includes the defendant RISO dealer named herein.

13.    Plaintiffs are ignorant of the names of some RISO dealers and may seek leave to amend this complaint to allege the names of other RISO dealers.

## GENERAL ALLEGATIONS

14.    RISO has an extensive dealer network that services customers throughout the United States. Plaintiffs are informed and believe that RISO has approximately 240 dealers and 21 branch offices that perform retail sales in the United States, and believe that RISO has plans to expand its branch offices.

15.    RISO's relationship with its dealers is both vertical, as the manufacturer and supplier, and horizontal, as a participant in the retail market for service and supplies.

712401.1                                -5-

1      16.    RISO and the RISO dealers have by contract, combination and conspiracy

2  implemented multiple restraints of trade to create, preserve and enhance RISO's monopoly power

3  in the retail market for Risograph service and supplies.

4      17.    The multiple restraints of trade established by Defendants by means of their

5  contract, combination and conspiracy include:  (1) restraining competition in the retail market for

6  Risograph service by both the dealers' and RISO'S concerted refusal to sell parts to independent

7  service organizations ("ISOs") who cannot compete in the retail market for service of Risographs

8  without a reliable source of Risograph parts (*joint boycott*); (2) restraining competition in the

9  retail service market by imposing ties on plaintiffs between the purchase of service and parts

10  (*tying arrangement*); (3) restraining competition and maintaining prices in the retail supply

11  market by tying the purchase of RISO supplies to the provision of service under the plaintiffs'

12  warranty and maintenance agreements (*tying arrangement*); (4) restraining competition and

13  maintaining prices in the retail supply market by refusing to allow plaintiffs the use of generic

14  supplies in their Risographs without voiding their warranty and maintenance agreements

15  (*negative tying arrangement*); and (5) restraining competition in the retail markets for Risograph

16  service and supplies by agreeing to allocate customers and territories for the sale of supplies and

17  services, as expressed in the standard Riso dealer agreement (*territorial and customer division*).

18      18.    Defendants and the RISO dealers contracted, combined or conspired to restrict

19  competition in the retail market for Risograph service and supplies with the intention of excluding

20  or eliminating external (interbrand) while regulating internal (intrabrand) competition such that

21  all members of the conspiracy could benefit from the increase in retail market share and the

22  charging of supracompetitive prices.

## THE RELEVANT MARKETS

24      19.    There are six separate retail markets implicated by this action.  They are (1) the

25  market for sales of new high speed digital duplicating machines ("original equipment market"),

26  (2) the separate market for the replacement parts needed to service and maintain Risographs

27  ("Risograph parts market"), (3) the separate market for warranty and maintenance services for

28

1　Risographs ("Risograph service market"), and (4) the separate market for supplies consisting of

2　inks and masters for Risographs ("Risograph supplies market").

3　　　　20.　　The relevant geographical market for the sale of digital duplicators is the United

4　States.  The relevant geographical market for Risograph parts is the United States.  The relevant

5　maintenance, service and repair market for digital duplicators, including Risographs is local or

6　regional.  The relevant geographical market for inks and masters for use in digital duplicators is

7　the United States.  The relevant geographical market for inks and masters for use in Risographs is

8　the United States, although, because of the allocation of sales territories, the market for RISO

9　brand supplies is local or regional.  With respect to the supply market for non-Risograph digital

10　duplicators, customers look to distributors and sellers throughout the United States.  Risographs,

11　Risograph parts and Risograph supplies are regularly shipped in interstate and foreign commerce

12　and substantially affect interstate or foreign commerce.

**DEFENDANTS' MONOPOLY POWER OR NEAR
MONOPOLY POWER IN THE ORIGINAL
EQUIPMENT RETAIL MARKET FOR SALES OF
HIGH SPEED DIGITAL DUPLICATORS**

16　　　　21.　　The retail market for original equipment product consists of digital duplicators.

17　RISO markets its digital duplicators under the trade name of Risographs.

18　　　　22.　　Public schools and other potential customers considering the purchase of a

19　Risograph generally consider other digital duplicators as the only reasonable and practical

20　options.  There are no other products that serve as viable substitutes for digital duplicators.

21　Increases in the sales of laser printers and photocopiers have little or no potential to substantially

22　affect sales of digital duplicators, and vice versa.  Increases in sales of offset printers have little or

23　no potential to substantially effect sales of digital duplicators, and vice versa.  Because of the lack

24　of any significant cross-elasticity of demand, the pricing for Risographs is relatively insensitive to

25　changes in prices for laser printers, photocopiers or offset printers.

26　　　　23.　　Defendant RISO and its local dealers have market power in the retail market FOR

27　original equipment sales of new digital duplicators and plaintiffs are informed and believe that

28　RISO and its local dealers either have or are dangerously close to acquiring monopoly power.

712401.1

-7-

**PMOD 09861**

1    24.    RISO was the first manufacturer of digital duplicators and had a substantial

2    technological and marketing head start in the market.  Plaintiffs are informed and believe that

3    RISO has approximately a 55 percent to 75 percent overall market share in the retail market for

4    original equipment sales of new digital duplicating machines, with a higher market share with

5    respect to sales to public schools.  RISO and its local dealers are believed to have a market share

6    with respect to installed machines in excess of 75 percent.

7    25.    There are a number of digital duplicators on the market which are made by Ricoh,

8    called "copy printers," but marketed under names believed to include Standard Duplicating,

9    Nashuatec, Gestetner (which is owned by Ricoh), and Savin (which is owned by Ricoh).

10    Plaintiffs are informed and believe that together, RISO and Ricoh have in excess of 95 percent of

11    the original equipment market for sales of new digital duplicators and that the only other

12    manufacturer and real competitor, Duplo, has less than a 4 percent market share in the original

13    retail market for equipment for sales of new digital duplicators in the United States.

14    26.    Plaintiffs are informed and believe that since 1990 there have been no new entrants

15    into the digital duplicating original equipment market and two manufacturers, Gakken and Seiki,

16    have left the market.

17    27.    There are a number of substantial barriers to entry into the market for high speed

18    digital duplicators, including: (1) the existence of patented technology, (2) the need for a huge

19    capital investment with doubtful prospects for successfully penetrating the market, (3) the need to

20    develop a dealer network to deliver the products to the retail customer, (4) the entrenched buyer

21    preference for Risographs, (5) the economies of scale available to RISO, and (6) the superior

22    resources available to RISO and its dealers in the form of monopolistic retail profits, resulting

23    from deliberate exploitation of the captive supply and service markets for Risographs.

## DEFENDANTS' MONOPOLY POWER
## OVER RISOGRAPH PARTS

24
25
26    28.,    Plaintiffs are informed and believe that many of the parts designed to meet

Risograph equipment specifications are manufactured and distributed solely by RISO or

27    otherwise controlled by RISO and its dealers.

28

712401.1                                  -8-

PMOD 09862

29.    Parts designed to meet Risograph equipment specifications are unique. It is not possible to substitute for many Risograph parts by using parts manufactured for use in other digital duplicators.

30.    Plaintiffs are informed and believe that RISO and its dealers possess 100 percent or close to 100 percent of the retail market for unique Risograph parts, and have monopoly power over these Risograph parts.

## DEFENDANTS' MONOPOLY POWER
## IN THE RETAIL MARKET FOR RISOGRAPH SERVICE

31.    Risographs and other digital duplicators need periodic maintenance, service and repair. The maintenance, service and repair of digital duplicators are separate markets from the original equipment market.

32.    All digital duplicators operate in a similar fashion. To be able to compete in the aftermarket for maintenance, service and repair of digital duplicators requires training, access to technical manuals and spare parts.

33.    Obtaining spare parts is essential to being able to maintain, service and repair digital duplicators. RISO is the sole source for most parts for use in the repair and maintenance of Risographs. Without ready access to spare parts, one cannot compete in the retail aftermarket for maintaining, servicing and repairing digital duplicators. Many replacement parts for each manufacturer's brand of digital duplicators are unique. RISO parts are not interchangeable with parts for other digital duplicators.

34.    RISO and its dealers have monopoly power in the retail market for Risograph parts. RISO and its dealers have leveraged their market power in the original equipment market retail and monopoly power in the retail market for Risograph parts to monopolize the separate retail market for the repair, maintenance and service of Risographs.

35.    Plaintiffs are informed and believe that RISO and its dealers possess approximately 90 percent of the retail market for repair, maintenance and service of Risographs.

36.    Because the retail-level anticompetitive actions of the Defendants and RISO

**PMOD 09863**

1   dealers have resulted in there being virtually no ISOs capable of servicing Risographs, and

2   because RISO and its dealers agree only to service those customers within their allocated

3   territories, Risograph owners are either forced to use the local dealer or branch office, or to self-

4   service their machines. Self service is not a viable option for most customers, including school

5   districts, due to the prohibitive cost of having trained technicians on staff and maintaining a

6   requisite stock of Risograph parts.

7       37.     Because of the absence of ISOs capable of servicing Risographs and because most

8   customers do not have the capability of servicing Risographs, most customers purchase yearly

9   maintenance agreements from RISO or its dealers. Some customers are also offered price-per-

10  copy contracts under which the cost of the Risograph, the cost of maintenance, service and repair

11  and the cost of inks and masters are included in a single charge based upon how many copies and

12  masters are run.

13      38.     Plaintiffs are informed and believe that Defendants, through branch offices and

14  RISO's dealers, obtain substantial retail profits from the maintenance, service, and repair of

15  Risographs.

16      39.     The intentional exclusion of ISOs from the retail market for Risograph service

17  allows RISO and its dealers to control retail prices for Risograph service and to charge

18  supracompetitive prices.

19      40.     RISO and its dealers are not substantially constrained from exercising their

20  monopoly power in the maintenance, service, and repair retail aftermarket by competition in the

21  original equipment retail market for a number of reasons, including the fact that RISO's

22  domination of the original equipment retail market limits the disciplining effect of competition in

23  the original equipment market, the fact that purchasing decisions for school districts and other

24  governmental units are based upon yearly budgetary periods and are not generally based upon life

25  cycle cost studies or projections for durable equipment, and the fact that the cost for current

26  Risograph owners to switch to a different digital duplication is high, locking them in and forcing

27  them to tolerate some level of service price increase rather than switch to another brand and lose

28  their investment in their Risograph.

712401.1                          -10-

PMOD 09864

FIRST AMENDED CLASS ACTION COMPLAINT

## DEFENDANTS' MONOPOLY POWER
## IN THE RETAIL MARKET FOR RISOGRAPH SUPPLIES

41.     Digital duplicators use three items of aftermarket supplies: (1) paper; (2) masters; and (3) inks. These supplies are often termed consumables. Risographs and other digital duplicators need specially formulated inks and masters to print. Supplies for use in digital duplicators are a separate market from the original equipment market and the maintenance, service, and repair market.

42.     Inks and masters are not interchangeable amongst digital duplicators. Ink cartridges for Ricoh and Duplo, the only other manufacturers of digital duplicators do not fit into Risographs and, conversely, ink cartridges for Risographs do not fit into RISO's competitor's duplicators. Inks that work well in digital duplicators manufactured by Ricoh and Duplo, because of viscosity and other differences, do not work well in Risographs. Masters for Risographs are different than those used in digital duplicators manufactured by Ricoh and Duplo. Inks and masters for digital duplicators manufactured by Ricoh and Duplo are effectively different products from those used in Risographs.

43.     Plaintiffs are informed and believe that alternative manufacturers or suppliers of ink and cartridges for use in Risographs include: Repeat-O-Type Mfg. Corp. of New Jersey (inks); Starkey Chemical of Illinois (inks); Tomoegawa Paper Co., Ltd. of Japan (inks and masters); Daito Chemical Company of Japan (inks and masters); and Weber Digital Masters (masters). Standard Duplicating recently began marketing inks and masters for Risographs, the manufacturer of which is unknown. Daito distributes its products in the United States through American Coated Products. American Coated Products sells through a dealer network and has several dealers in California. Tomoegawa Paper Co., Ltd. of Japan does business in the United States through its wholly owned subsidiary, Tomoegawa (U.S.A.) Inc., headquartered in Wheeling, Illinois (hereafter, collectively referred to as Tomoegawa). Tomoegawa sells through several distributors, most of which concentrate their marketing in the East and Midwest. Tomoegawa inks and masters are sold in California by Western Duplicating, Inc., a Colorado Corporation.

712401.1

-11-

**PMOD 09865**

44.     RISO and its dealers agree to substantial market restraints on the sale of supplies for use in Risographs. Plaintiffs believe that no such market restraints exist with respect to Ricoh or Duplo digital duplicators. RISO and its dealers agree not to sell supplies outside of their assigned territory or to anyone other than an end user. This eliminates any reliable alternative source of RISO brand supplies for both independent resellers and brokers. As a result, prices charged by RISO dealers for inks and masters for use in Risographs are substantially higher, ordinarily greater than 30 to 40 percent more than those prices charged by the various Ricoh dealers for use in Ricoh manufactured digital duplicators, and approximately 30 to 40 percent higher than alternative suppliers would charge if allowed to compete in the Risograph supply market for inks and masters.

45.     RISO and its dealers have leveraged their market power in the original equipment retail market and monopoly power in the separate retail market for Risograph parts and services to monopolize or attempt to monopolize the retail aftermarket for supplies. Because of the various restraints of trade and exclusionary practices of RISO and its dealers, and because of Defendants' willful leveraging of monopoly power in the Risograph parts and service markets, Defendants are believed to have a market share of approximately 90 percent of the retail market for supplies of inks and masters for use in Risographs.

46.     Plaintiffs are informed and believe that supply sales are very profitable to RISO and its dealers and often exceed the profits on original equipment sales.

47.     RISO and its dealers are not substantially constrained from exercising their monopoly power in the supplies aftermarket by competition in the original equipment retail market for a number of reasons, including the fact that RISO's domination of the original equipment retail market limits the disciplining effect of competition in the original equipment retail market, the fact that purchasing decisions for school districts and other governmental units are based upon yearly budgetary periods, and are not generally based upon life cycle cost studies or projections for durable equipment, and the fact that significant switching costs are incurred in changing from one brand of digital duplicator to another, effectively locking in all current Risograph owners.

712401.1

-12-

PMOD 09866

1

### DEFENDANTS' LEVERAGING OF MONOPOLY POWER
### IN ONE OR MORE MARKETS TO OBTAIN OR ATTEMPT
### TO OBTAIN MONOPOLIES IN SEPARATE MARKETS

2

3    48.    As alleged above, RISO and its dealers dominate the original equipment market

4    for digital duplicators, and possess monopoly power in the market for Risograph parts. RISO and

5    its dealers have contracted, combined and conspired to restrict the availability of Risograph parts.

6    RISO and its dealers have, by their predatory and anticompetitive business practices, used their

7    monopoly power in Risograph parts to restrict or eliminate competition in the Risograph services

8    market, creating or attempting to create a second monopoly in the separate Risograph service

9    market by leveraging monopoly power in the market for Risograph parts.

10    49.    RISO and its dealers have also, by their predatory and anticompetitive business

11    practices, used their existing monopoly power in the Risograph parts and service markets to

12    restrict or eliminate competition in the Risograph supply market for inks and masters and have

13    thereby created or attempted to create a second monopoly in the Risograph supply market by

14    leveraging monopoly power in the markets for Risograph parts and service.

15    50.    RISO and its dealers have further contracted, combined and conspired to eliminate

16    intrabrand competition in the monopolized markets with the intention of establishing and

17    maintaining supracompetitive prices in the retail markets for Risograph services and supplies,

18    which they have done.

19

### THE CONTRACT, COMBINATION AND
### CONSPIRACY BETWEEN RISO AND ITS DEALERS
### TO RESTRAIN TRADE AND EXCLUDE OR ELIMINATE
### COMPETITION AND TO WILLFULLY ACQUIRE AND
### MAINTAIN EXISTING MONOPLIES IN THE
### RISOGRAPH SUPPLY AND SERVICE MARKETS

20

21

22

23    51.    On or about October 1994, a "Riso Dealer Advisory Council" meeting was held.

24    The President of RISO, Inc., along with several other representatives and employees of RISO,

25    Inc. and RISO KAGAKU were present at the meeting along with a select, representative group of

26    leaders from RISO's dealer network.

27    52.    At the October 1994 Riso Dealer Advisory Council meeting, it was recommended

28    by the Dealer Advisory Council and RISO agreed, that RISO would "Develop a strategy for

712401.1                                      -13-

PMOD 09867

1   dealing with Pirates" which RISO, in combination with the dealers, would thereafter follow.

2      53.   At the October 1994 Riso Dealer Advisory Council meeting, it was further

3   recommended by the Dealer Advisory Council and RISO agreed, that RISO would "Develop a

4   strategy for dealing with Bootlegging by Riso dealers." "Bootlegging" refers to the practice of

5   selling RISO manufactured supplies to any entity other than and end user or another RISO dealer

6   or selling RISO manufactured supplies outside of a designated geographical area or to anyone

7   other than an end-user.

8      54.   RISO refers to any non-RISO source of inks or masters for use in Risographs as

9   being a "pirate", "supply pirate" or "generic pirate." A "supply pirate," according to RISO, is a

10   seller of supplies consisting of masters and ink cartridges, which were not manufactured by RISO

11   for use in Risographs. A "supply pirate" is, in fact, a lawful business competitor who seeks to

12   compete against RISO and its dealers in the supply market for Risographs. Historically, a RISO

13   dealer was also deemed a "supply pirate" if that dealer purchased non-RISO manufactured

14   supplies for resale to its customer base, or if that dealer sold outside of its assigned territory or to

15   other than end-user customers. RISO and its dealers adopted the Dealer Agreement in an effort to

16   stifle the competitive effects of "bootlegging" and "supply pirating."

17      55.   The Dealer Agreement that emerged from the 1994 meeting of the RISO Dealer

18   Advisory Council was conceived by the dealers in conjunction with RISO, Inc. in an effort to

19   eliminate both interbrand and intrabrand competition and foster instead a market environment in

20   which all parties to the agreement benefited from the restraints agreed to by each dealer, alleged

21   in greater detail below at paragraphs 68 through 86 and 88 through 113.

22      56.   A typical "Riso domestic agreement" provides for appointment of a dealer on

23   terms that provide in substance as follows:

24        (a)   RISO hereby appoints Dealer, and Dealer hereby accepts
such appointment, as a non-exclusive authorized dealer for the
25        promotion, sale, installation, and service of those RISO products,
supplies, accessories and parts listed on Schedule A to this
26        Agreement, and such additional products as RISO shall designate
by notice under this Agreement (the "Products"), **within the**
27        **geographic territory** described in Schedule B to this Agreement
(the "Territory") and **only to End-users.** Dealer will promote, sell,
28        install, and service the Products **only from its authorized locations**

712401.1

-14-

PMOD 09868

designated above. For purposes of this Agreement, an "End-user" means a third party customer who acquires Products, by purchase, lease, or rental, for its own use and not for resale.

57.    The specific and general intent of RISO and its dealers, manifest in this agreement, was to contract, combine and conspire together to protect their existing and future base of supplies from any meaningful competition, either from others or among themselves, and to maintain the existing monopoly in the retail market for Risograph service. The restraints in issue originate from and are enacted at the retail level in furtherance of Defendants' agreements and strategies to restrain trade and monopolize retail markets. As a result of these restraints, both interbrand and intrabrand competition in the retail market for Risograph service and the retail market for Risograph supplies has been restricted or eliminated.

58.    Plaintiffs are informed and believe that RISO and its dealers, including the Defendant dealer named herein, have at all times since the "Riso Dealer Advisory Council" meeting of October 1994 acted in furtherance of the agreement and understanding reached at that meeting and other agreements reached thereafter and have undertaken new and independent acts in furtherance of these agreements. At all relevant times, representative plaintiffs and Class members did not know and could not have reasonably discovered the unlawful purposes of the agreements reached by RISO and its dealers, including the Defendant dealer named herein.

## CLASS ACTION ALLEGATIONS

59.    Plaintiffs MODESTO CITY SCHOOLS AND STOCKTON UNIFIED SCHOOL DISTRICT bring this action under Rule 23 of the Federal Rules of Civil Procedure, for actual, treble, and punitive damages, restitution, and relief incident and subordinate thereto, including costs and attorney's fees, on behalf of all public schools and school districts in the United States that own or lease Risographs purchased or leased from RISO or its dealers (the "Damages Class").

60.    This action has been brought and may properly be maintained pursuant to the provisions of Federal Rules of Civil Procedure 23(a)(1)-(4), 23(b)(2) and 23(b)(3), and satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements. The proposed Damages Class is defined as:

712401.1

-15-

PMOD 09869

> Public schools and/or public school districts in the United States
> that have purchased or leased Risographs on or after October 21,
> 1994 and that have purchased maintenance or repair services or
> inks and masters supplies from RISO or its dealers, and who seek
> damages.

61.    In addition, Plaintiffs bring this action under Rule 23 of the Federal Rules of Civil Procedure, for injunctive relief and relief incident and subordinate thereto, including costs and attorney's fees, on behalf of all public schools and school districts in the United States that own or lease Risographs purchased or leased from RISO or its dealers (the "Injunctive Relief Class").

62.    This action has been brought and may properly be maintained pursuant to the provisions of Federal Rules of Civil Procedure 23(a)(1)-(4), 23(b)(2) and 23(b)(3), and satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements. The proposed Injunctive Relief Class is defined as:

> Public schools and/or public school districts in the United States
> that have purchased or leased Risographs on or after October 21,
> 1994 and that have purchased maintenance or repair services or
> inks and masters supplies from RISO or its dealers.

63.    Members of both classes are so numerous that their individual joinder herein is impracticable.  Plaintiffs are informed and believe that there are approximately 15,000 school districts in the nation.  There are approximately 1,100 school districts in the State of California alone.  Many, if not most, of these public schools districts own or lease and operate Risograph digital duplicators.  The precise number of class members and their identities are unknown to Plaintiffs, but may be determined by discovery of records maintained by Defendants.

64.    Common questions of law and fact exist as to all members of each Class.  These common questions predominate over the questions affecting only individual Class members.  The common legal and factual questions include:

(a)    Whether the retail market for Risograph parts is a separate market for purposes of the alleged antitrust violations.

(b)    Whether the retail market for Risograph maintenance repair and service is a separate market for purposes of the alleged antitrust violations.

1      (c)     Whether the retail market for Risograph inks and masters is a separate

2  market for purposes of the alleged antitrust violations.

3      (d)     Whether Defendants possess market power, near monopoly power, or

4  actual monopoly power in the United States retail market for high speed digital duplicators.

5      (e)     Whether Defendants possess market power, near monopoly power, or

6  actual monopoly power, in the retail market for Risograph parts.

7      (f)     Whether Defendants possess market power, near monopoly power, or

8  actual monopoly power in the retail market for maintenance, service and repair of Risographs.

9      (g)     Whether Defendants possess market power, near monopoly power, or

10 actual monopoly power in the retail supply market for inks and masters Risographs.

11     (h)     Whether Defendants possess market power, near monopoly power, or

12 actual monopoly power in the retail market for maintenance, service and repair of all high-speed

13 digital duplicators.

14     (i)     Whether Defendants possess market power, near monopoly power, or

15 actual monopoly power in the inks and masters retail supply market for all high-speed digital

16 duplicators.

17     (j)     Whether Defendants contracted, combined, or conspired to restrain trade in

18 the market for repair, maintenance and service of Risographs in violation of § 1 of the Sherman

19 Act.

20     (k)     Whether Defendants contracted, combined, or conspired to restrain trade in

21 the inks and masters supply market for Risographs in violation of § 1of the Sherman Act.

22     (l)     Whether Defendants engaged in acts that violate §1 of the Sherman Act

23 with regard to items imported into the United States, thereby violating the Wilson Tariff Act.

24     (m)     Whether Defendants' conduct resulted in an injury to competition and

25 caused an antitrust injury to Plaintiffs and Class members.

26     (n)     Whether there are legitimate business justifications excusing Defendants'

27 conduct.

28     (o)     Whether RISO, INC.'s conduct constitutes unfair methods of competition

712401.1                                    -17-

PMOD 09871

1    and/or unfair or deceptive acts or practices in violation of the Massachusetts Protection Act,

2    Mass. Gen. Law Chapter 93A section 2.

3            (p)    Whether, as a result of Defendants' antitrust violations or unfair business

4    practices, the charges for Risograph service exceeded the charges that would have resulted from

5    competition, and if so by what measure.

6            (q)    Whether, as a result of Defendants' antitrust violations or unfair business

7    practices, the charges for Risograph inks and masters supplies exceeded the charges that would

8    have resulted from competition, and if so by what measure.

9            (r)    Whether each Defendant is jointly liable to Plaintiffs because each

10   Defendant actively participated in, substantially assisted, and/or aided and abetted in the unlawful

11   conduct of codefendants by their concerted actions.

12   65.    The claims of Plaintiffs MODESTO CITY SCHOOLS and STOCKTON

13   UNIFIED SCHOOL DISTRICT are typical of the claims of the members of each Class.

14   Plaintiffs owned and operated Risograph digital duplicators during the Class Period. RISO and

15   its dealers have engaged in a contract, combination, and/or conspiracy to unlawfully restrain

16   competition in both the service, maintenance, and repair markets and the inks and masters supply

17   markets. The restraints of trade undertaken by RISO and its dealers have restricted or eliminated

18   competition and have affected all school districts and schools that own or lease Risographs by

19   reducing competition and raising prices in the relevant markets. As a result, the conduct of RISO

20   and its dealers has caused Plaintiffs and all members of each Class to suffer identical, or at least

21   substantially similar, antitrust injuries and injuries caused by unfair business practices.

22   66.    Plaintiffs are adequate representatives of both classes because their interests do not

23   conflict with the interests of the members of each Class they seek to represent, they have retained

24   counsel competent and experienced in prosecuting class actions involving violations of federal

25   and state statutes, conspiracy and other wrongful conduct, and they intend to prosecute this action

26   vigorously. Plaintiffs and their counsel will fairly and adequately protect the interests of

27   members of each Class.

28   67.    The common issues of fact and law enumerated above predominate over any

712401.1                                           -18-

1   individual factual and legal issues, and a class action is superior to other available means for the

2   fair and efficient adjudication of the claims of Plaintiffs and members of each Class.  Although

3   the damages suffered by each individual Class member may be substantial, these damages,

4   particularly for smaller school districts, are relatively small given the burden and expense of

5   individual prosecution of the complex and extensive litigation necessitated by Defendants'

6   wrongful conduct.  Further, individualized litigation increases the delay and expense to all parties

7   and multiplies the burden on the judicial system presented by the complex legal and factual issues

8   of this case.  Individualized litigation also presents a potential for inconsistent or contradictory

9   judgments.  In contrast, the class action device presents far fewer management difficulties and

10  provides the benefits of single adjudication, economy of scale, and comprehensive supervision by

11  a single court. Class treatment of the antitrust and other commercial practices of Defendants will

12  ensure that all claims and claimants are before this Court for consistent adjudication and equitable

13  distribution of any recovery.

14          **COUNT 1 — VIOLATION OF SHERMAN ACT § 1**
15          **(AGAINST ALL DEFENDANTS FOR RESTRAINTS**
            **OF TRADE IN THE RISOGRAPH SERVICE MARKET)**

16          68.    Plaintiffs re-allege and incorporate by reference each allegation contained in

17  paragraphs 1 through 67 above, and further allege as follows.

18          69.    Defendants have violated Section 1 of the Sherman Act, prohibiting restraints on

19  trade, by contracting, combining and conspiring to implement an integrated strategy at the retail

20  level that is intended to virtually eliminate both interbrand and intrabrand competition in the retail

21  market for Risograph service and to then exploit the captive service market by charging

22  supracompetitive prices for Risograph service.

23          70.    The multiple restraints of trade alleged herein fall within three well established

24  categories of conduct prohibited by Section 1 of the Sherman Act.  These are: (1) concerted

25  refusals to deal or joint boycotts, (2) territorial and customer division, and (3) tying arrangements.

26                      **CONCERTED REFUSALS TO DEAL**

27          71.    Defendants have used their market or monopoly power in Risograph parts to

28

FIRST AMENDED CLASS ACTION COMPLAINT                     **PMOD 09873**

1    restrict or eliminate interbrand competition from Independent Service Organizations ("ISOs") in

2    the retail market for Risograph service.

3        72.    RISO's network of dealers and branch offices service most Risographs. The only

4    significant exceptions are those customers with an in-house service force, which arrange through

5    the local RISO dealer to have their technicians trained by RISO. Self-service customers must buy

6    spare parts at retail from the local RISO dealer assigned to their territory.

7        73.    RISO and its dealers restrict access to RISO manufactured replacement parts.

8    ISOs have been intentionally restrained and excluded from the market for repair, maintenance and

9    service of Risographs.

10       74.    At all times relevant herein, RISO and its dealers have agreed not to sell spare

11   parts other than in a dealer's geographical territory and only to end users therein. (See text of

12   agreement alleged in paragraph 56, and incorporated herein.) This agreement prevents interbrand

13   competition by denying spare parts to ISOs and to third party vendors who could then sell

14   Risograph replacement parts to ISOs. RISO dealers are consequently left as the only source for

15   service of Risographs.

16       75.    The joint boycott on the sale of Risograph parts to ISOs is accomplished and

17   completed by means of both RISO's and its dealers' refusal to sell parts to ISOs, as articulated in

18   the dealer agreement established by the RISO Dealers Advisory Council. The joint effect of the

19   parts sales prohibition established by RISO and its dealers, combined with RISO's refusal to deal

20   directly with ISOs, is to make RISO parts unavailable to any Risograph service providers except

21   RISO dealers and RISO branch offices. As a result of this joint boycott and refusal to deal by

22   RISO and its dealers, there are essentially no ISOs servicing Risographs.

23       76.    RISO and its dealers' refusal to deal with ISOs is part of a conscious commitment

24   to a common scheme designed to achieve an unlawful objective of excluding all interbrand

25   competition from the retail service market for Risographs.

26       77.    RISO and its dealers' joint boycott is undertaken by a horizontal combination of

27   business entities that possess market power or exclusive access to Risograph parts and elements

28   of trade that are essential to effective competition and is, therefore, *per se* illegal under Section 1

712401.1                                    -20-

1   of the Sherman Act.

2       78.     RISO and its dealers' joint boycott on the sale of parts is not intended to enhance

3   overall efficiency or to make markets more competitive.

4       79.     Defendants' joint boycott injures competition and is, therefore, a violation of

5   Section 1 of the Sherman Act under the rule of reason.

6                              **TERRITORIAL DIVISION**

7       80.     RISO, Defendant dealers, and other RISO dealers have contracted, combined, and

8   conspired to control or eliminate intrabrand competition in the service market for Risographs by

9   agreeing among the co-conspirators, acting through RISO, that each co-conspirator will offer

10  Risograph service only within the marketing territory allocated to it.  The agreements are

11  contained in the Risograph dealer agreements, as set forth in paragraph 56, and furthered by the

12  agreements reached in the October 1994 RISO Dealer Advisory Council meeting, referred to in

13  paragraphs 51 through 58 of this Complaint.

14      81.     The territorial division alleged herein are *per se* violations of Section 1 because

15  they result from agreements reached between RISO and its dealers who are competitors at the

16  same horizontal level of distribution and/or because they are a part of an aggregation of restraints

17  on trade.

18      82.     Even if the territorial division alleged herein were purely vertical agreements, they

19  injure competition and are, therefore, prohibited under the "rule of reason."  The agreements

20  entered into by RISO and its dealers virtually eliminate intrabrand competition in the relevant

21  service market and spring from Defendants' intent to monopolize the Risograph service market

22  and to control prices, not from legitimate business reasons.

23                               **TYING ARRANGEMENTS**

24      83.     RISO and its dealers have also restrained trade in the retail service market for

25  Risographs by using their market power in parts (the "tying" product) to extend their power in the

26  entirely distinct market for service (the "tied" product).  School districts are coerced into buying

27  both parts and the service from RISO and its dealers because self-service is not a viable option

28  and because ISOs have been eliminated from the market.  As a result of RISO and its dealers'

712401.1
                                        -21-

1   exercise of market power or monopoly power over parts, school districts are coerced into buying

2   both parts and service from RISO and its dealers and are precluded from independently

3   purchasing service from other providers.

4       84.    Defendants' tying of parts and services is a *per se* violation of Section 1 of the

5   Sherman Act.

6       85.    Defendants' tying of parts and services restrains competition and is also a violation

7   of Section 1 of the Sherman Act under the rule of reason.

8       86.    Plaintiffs and Class Members have been injured and will continue to be injured by

9   reason of Defendants' unlawful conduct. Plaintiffs and Class Members are entitled to actual

10  damages, to be trebled by the Court, along with attorneys' fees and costs in amounts to be

11  determined according to proof at trial.

12      87.    Unless enjoined, Defendants will continue with their agreement, combination and

13  conspiracy to restrain trade and the injury to the Plaintiffs and Class Members will continue

14  unless the injunctive relief prayed for in this complaint is granted under Title 15 of the United

15  States Code section 26. Plaintiffs and Class Members have no adequate remedy at law.

16      **COUNT 2 – VIOLATION OF SHERMAN ACT SECTION 1**
                    (AGAINST ALL DEFENDANTS FOR
17                  RESTRAINTS OF TRADE IN THE
                    RISOGRAPH SUPPLY MARKET)
18

19      88.    Plaintiffs re-allege and incorporate by reference each allegation contained in

20  paragraphs 1 through 67 above, and further allege as follows.

21      89.    Defendants have violated Section 1 of the Sherman Act, prohibiting restraints on

22  trade, by contracting, combining and conspiring to implement an integrated strategy at the retail

23  level that is intended to virtually eliminate competition in the retail market for Risograph

24  supplies, and to exploit the captive market by charging supracompetitive prices for Risograph

25  supplies.

26      90.    The multiple restraints of trade alleged herein fall within three well-established

27  categories of conduct prohibited by Section 1 of the Sherman Act. These are: (1) tying

28  arrangements, (2) territorial division, and (3) concerted refusals to deal.

712401.1
                                        -22-

**TYING ARRANGEMENTS**

91.    RISO, in combination with its local dealers, includes a seven-year or ten-million copy warranty for all Risographs purchased in the United States. This original equipment warranty may be invalidated if "unauthorized supplies" are used.

92.    RISO and its dealers have further conspired to use warranty language in their maintenance agreements that may be voided if "unauthorized supplies" are used. The original equipment warranties and maintenance agreement warranties are designed to restrict or eliminate interbrand competition for Risograph inks and masters.

93.    Any purported business justification for the blanket prohibition, potentially invalidating the warranty and maintenance agreement if "unauthorized supplies" are used, is pretextual. Only RISO manufactured supplies are ever authorized. There is no mechanism to obtain authorization for any non-RISO manufactured inks or masters.

94.    The original equipment warranty that all customers pay for as part of the price of a new Risograph machine, and the service contract warranty that most customers pay for as a part of an annual maintenance agreement, are threatened regardless of whether the "unauthorized supplies" cause any actual damage to the Risograph. The "unauthorized supplies" provision is a coercive device used to threaten customers with the loss of service if they don't purchase and use RISO manufactured inks and masters.

95.    Both MODESTO CITY SCHOOLS and STOCKTON UNIFIED SCHOOL DISTRICT purchased less expensive inks and masters from a non-RISO supplier after comparing price and performance. Both school districts were threatened with the loss of warranty service by Defendant, RPSI, if they used the non-RISO supplies. In the face of these threats, both school districts were forced to not use the non-RISO inks and masters they had purchased and suffered a loss. Both school districts were also forced to continue purchasing RISO inks and masters from the territorial RISO dealer, RPSI, at a price that was approximately 40 percent more than the price of suitable non-RISO inks and masters.

96.    In October, 1997, the purchasing agent for Plaintiff MODESTO CITY SCHOOLS, wrote a letter to Defendant, RSPI ENTERPRISES, INC. asking what products were "authorized"

712401.1

-23-

PMOD 09877

1   by RISO under the terms of the warranty.  In October, 1997, the purchasing manager for Plaintiff

2   STOCKTON UNIFIED SCHOOL DISTRICT, wrote a letter to Defendant, RPSI

3   ENTERPRISES, INC. asking what products were "authorized" by RISO under the terms of the

4   warranty.  Neither received a specific response to their inquiry.  The only response given was in

5   the form of a generic "To Whom It May Concern" letter sent from Richard Church, Director of

6   Technical Operations for Defendant RISO INC., which stated that RISO INC., does not

7   "recommend the use of non-genuine supplies in any Risograph product."

8       97.    The only way for Plaintiffs to ensure the continuing validity of their warranty and

9   maintenance agreements is to use only those supplies "authorized" by Riso.  The only supplies

10  Riso authorizes are its own.  Hence, the only way for Plaintiffs to ensure the continuing validity

11  of their warranty and maintenance agreements is to use Riso inks and masters.

12      98.    A further coercive tactic or strategy of RISO and its dealers, in support of the tie

13  between warranty service and supplies, is to place warning stickers on all Risographs telling

14  customers to use only RISO manufactured supplies.  This strategy, indiscriminately disparaging

15  all non-RISO supplies, is designed to bolster the coercive effect of the warranty and maintenance

16  agreement bans on the use of "unauthorized supplies."  With the distribution of the warning

17  stickers RISO has adopted a uniform policy to reinforce the "unauthorized supplies" warranty

18  provisions and further conditions the warranties on the requirement that RISO owners use only

19  RISO supplies.  RISO directly threatens its school customers with the warning that if they use

20  "non-RISO manufactured inks or masters" they may "cause serious damage to the ink cylinder

21  and the Risograph" and in turn cause "repair or service problems not covered by [the] warranty or

22  service agreement."

23      99.    The purpose of the warning labels is explained in a "RISO News Flash." This

24  "News Flash," which is sent to all RISO dealers, instructs that warnings be placed on all

25  Risographs where anyone installing supplies into the machines will necessarily notice the

26  warning.  The "News Flash" explains the purpose and intent behind the warning stickers:

27          The use of these warning labels on your installed base and new
            machines is a step toward fighting the supply pirates and protecting
28          both of our revenue streams.

712401.1                                    -24-

FIRST AMENDED CLASS ACTION COMPLAINT          **PMOD 09878**

1    100.    The warning labels are one part of a concerted strategy by RISO and its dealers to

2    falsely disparage non-RISO inks and masters suitable for use in Risographs and thereby reinforce

3    the tying arrangement between Risograph warranty service and use of Risograph inks and

4    masters. The routine disparagement of all "generic" or "pirate" supplies include statements

5    which are false and known to be false, or reckless as to the truth of the assertions made.

6    101.    As alleged herein, the result of uniform policies implemented by RISO and its

7    dealers is that the viability of a customer's original equipment and service warranties (the "tying"

8    product) is conditioned upon purchasing RISO brand aftermarket inks and masters (the "tied"

9    product) at substantially higher prices than those supplies would cost in a competitive market,

10   free of the tying arrangement.

11   102.    Defendants' tying of service warranties and RISO brand aftermarket inks and

12   masters is a *per se* violation of Section 1 of the Sherman Act.

13   103.    Defendants' tying of service warranties and RISO brand aftermarket inks and

14   masters is also a violation of Section 1 of the Sherman Act under the rule of reason.

15                              **TERRITORIAL DIVISION**

16   104.    After effectively eliminating interbrand, retail level supply competition for

17   Risograph inks and masters, RISO and its dealers have further combined, contracted and

18   conspired to agree among the co-conspirators, acting through RISO, that each co-conspirator will

19   sell inks and masters for use in Risographs only within the marketing territory allocated to it. The

20   effect of this is to control intrabrand competition and thereby preserve a reliable revenue stream

21   for all conspirators. This horizontal division of the retail supply market for Risographs inks and

22   masters is a *per se* violation of Section 1 of the Sherman Act.

23   105.    The territorial divisions are contained in each of the RISO dealer agreements, as

24   alleged in paragraph 56 of the Complaint and incorporated herein.

25   106.    Because of the restraints alleged herein, RISO and its dealers are believed to

26   control approximately 90 percent of the aftermarket for sales of inks and masters for use in

27   Risographs. Because of the restraints alleged herein, the prices for supplies are believed to be

28   approximately 30 percent to 40 percent higher than they would be in a competitive market, free of

712401.1                                    -25-

1  these restraints.

2  107.  The territorial divisions are unreasonable and injure competition and, therefore,

3  also violate Section 1 of the Sherman Act under the rule of reason.

4  ## CONCERTED REFUSAL TO DEAL

5  108.  Defendants also restrain trade in the retail supply market by refusing to sell to

6  anyone but the end users, such as the school district owners or lessors of Risographs.  The effect

7  of this prohibition, or joint boycott, is to eliminate potential sales by non-RISO dealers, including

8  those who also wish to compete in the retail markets for both the Risograph service and supplies,

9  because they are unable to obtain RISO supplies.

10  109.  The dealers' agreement not to sell to non-end users, in combination with RISO's

11  refusal to sell products and supplies to third party venders, ensures that the only source of RISO

12  products and supplies will be RISO dealers.

13  110.  RISO and its dealers' concerted refusal to deal is undertaken by a combination of

14  business entities that possess market power or exclusive access to an element of competition,

15  Risograph parts and supplies, that are essential to effective competition and is, therefore, *per se*

16  illegal under Section 1 of the Sherman Act.

17  111.  The concerted refusal to deal by RISO and its dealers is not intended to enhance

18  overall efficiency or to make markets more competitive.

19  112.  The concerted refusal to deal injures competition and is, therefore, also a violation

20  of Section 1 of the Sherman Act under the rule of reason.

21  113.  Plaintiffs and Class Members have been injured and will continue to be injured by

22  reason of Defendants' unlawful conduct.  Plaintiffs and Class Members are entitled to actual

23  damages, to be trebled by the Court, along with attorneys' fees and costs in amounts to be

24  determined according to proof at trial.

25  114.  Unless enjoined, Defendants will continue with their agreement, combination and

26  conspiracy to restrain trade and the injury to the Plaintiffs and Class Members will continue

27  unless the injunctive relief prayed for in this complaint is granted under Title 15 of the United

28  States Code section 26.  Plaintiffs and Class Members have no adequate remedy at law.

## COUNT 3 — VIOLATION OF THE WILSON TARIFF ACT
### (AGAINST ALL DEFENDANTS FOR RESTRAINTS
### OF ITEMS IN FOREIGN TRADE AND COMMERCE)

115.    Plaintiffs re-allege and incorporate by reference each allegation contained in paragraphs 1 through 67, 69 through 87, and 89 through 113 above, and further allege as follows.

116.    Defendants have violated the Wilson Tariff Act, prohibiting restraints on the trade of items imported into the United States, by acting to restrain lawful trade, or free competition in lawful trade or commerce, and to increase the market price in the United States of articles imported into the United States.  These restraints were achieved through contracting, combining and conspiring to implement an integrated strategy a the retail level that was intended to virtually eliminate competition in the market for Risograph supplies, which are imported into the United States from Japan, and to exploit the captive market by charging supracompetitive prices for those imported Risograph supplies.

117.    Plaintiffs and Class Members have been injured and will continue to be injured by reason of Defendants' unlawful conduct.  Plaintiffs and Class Members are entitled to actual damages, to be trebled by the Court, along with attorneys' fees and costs in amounts to be determined according to proof at trial.

118.    Unless enjoined, Defendants will continue with their agreement, combination and conspiracy to restrain trade and the injury to the Plaintiffs and Class Members will continue unless the injunctive relief prayed for in this complaint is granted under Title 15 of the United States Code section 26.  Plaintiffs and Class Members have no adequate remedy at law.

### COUNT 4 — VIOLATION OF THE
### MASSACHUSETTS PROTECTION ACT
### (AGAINST RISO, INC. AND RISO KAGAKU FOR
### UNFAIR METHODS OF COMPETITION AND UNFAIR
### AND DECEPTIVE ACTS OR PRACTICES)

119.    Plaintiffs re-allege and incorporate by reference each allegation contained in paragraphs 1 through 67, 69 through 87, and 89 through 114 above and further allege as follows.

120.    The Massachusetts Protection Act (Mass. Gen. Law Chapter 93A § 2) prohibits unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce.

121. Plaintiffs, on behalf of themselves and all members of the Class, mailed a written demand for relief to Defendant RISO INC., which maintains a place of business and keeps assets within the commonwealth of Massachusetts. The notice was mailed on November 5, 1999. After the expiration of 30 days, unless a satisfactory response is received, all elements for this count will be satisfied.

122. The above described conduct of Defendants taken to suppress competition in the supply aftermarket and the service, repair and maintenance aftermarket constitutes unfair methods of competition and unfair or deceptive acts or practices under Mass. Gen. Law Chapter 93A Section 2.

123. Plaintiffs and Class members are entitled to actual damages. Plaintiffs and class members are entitled to up to three, but not less than two, times the amount of actual damages because Defendants' conduct taken to suppress competition in the relevant aftermarkets was a willful and/or knowing violation of Mass. Gen. Law Chapter 93A section 2, and their refusal to grant relief upon demand was made in bad faith with knowledge or reason to know that the act or practice complained of violated section 2. Plaintiffs and Class members are further entitled to attorneys' fees and costs, in amounts to be determined according to proof at trial.

124. Plaintiffs and Class members are entitled to injunctive relief and such other equitable relief as the court as the Court shall deem necessary and proper.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, on behalf of themselves and the Class, request the following relief:

1. An Order certifying the proposed Plaintiff Class and appointing Plaintiffs and their counsel to represent that Class;

2. Judgment against Defendants for money damages, which damages be trebled under each count alleged herein, plus additional or incidental damages according to proof;

3. Judgement against Defendants for punitive damages according to proof;

4. An Order that permanently enjoins Defendants from further engaging in the conduct described here;

712401.1                                   -28-

1    5.    Judgment for costs of suit incurred here, including attorneys' fees; and

2    6.    Such further legal and equitable relief as this Court may deem just and proper.

3    Dated:                            KRONICK, MOSKOVITZ, TIEDEMANN & GIRARD
                                       A Professional Corporation
4                                      William A. Kershaw
                                       Michael A. Grob
5                                      Lyle W. Cook
                                       Mark J. Tamblyn

6

7
                                       By _____
8                                          Michael A. Grob

9                                      KRAMON & GRAHAM
                                       James P. Ulwick, pro hac vice
10                                     John A. Bourgeois, pro hac vice

11                                     LEATHERWOOD, WALKER, TODD & MANN
                                       Harvey G. Sanders, Jr., pro hac vice
12                                     James T. Hewitt, pro hac vice

13                                     Attorneys for Plaintiffs Modesto City Schools, Stockton
                                       Unified School District, on their own behalf and on behalf
14                                     of the class consisting of all public schools and public
                                       school districts in the United States

15

16

17

18

19

20

21

22

23

24

25

26

27

28

712401.1                              -29-

PMOD 09883

## PROOF OF SERVICE

I, Jenny Manzer, declare that:  I am a resident of the State of California and over the age of eighteen years, and not a party to the within action; my business address is 400 Capitol Mall, 27th Floor, Sacramento, CA  95814-4416.  On November 15, 2002, I served the within documents:

### FIRST AMENDED CLASS ACTION COMPLAINT

☐   by transmitting via facsimile from (916) 321-4555 the above listed document(s) without error to the fax number(s) set forth below on this date before 5:00 p.m.  A copy of the transmittal/confirmation sheet is attached.

☒   by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in the United States mail at Sacramento, California addressed as set forth below.

☐   by causing personal delivery by _____ of the document(s) listed above to the person(s) at the address(es) set forth below.

☐   VIA FEDERAL EXPRESS

☐   by personally delivering the document(s) listed above to the person(s) at the address(es) set forth below.

### *PLEASE SEE ATTACHED SERVICE LIST*

I am readily familiar with the firm's practice of collection and processing correspondence for mailing.  Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business.  I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

I declare under penalty of perjury under the laws of the United States that the above is true and correct.  Executed on November 15, 2002, at Sacramento, California.

_____
Jenny Manzer

712401.1

-30-

PMOD 09884

1

## SERVICE LIST

2

3  Eugene C. Gratz, Esq.
   Law Offices of Eugene C. Gratz
   301 Forest Avenue, Suite 200
4  P.O. Box 4197
   Laguna Beach, CA 92652-4197
5  *Attorneys for Defendant RISO, INC. and*
   *RISO KAGAKU CORPORATION*
6

7  Edwin G. Harvey, Esq.
   Thompson Coburn
8  One Firstar Plaza
   St. Louis, MO 63101-1693
9  *Attorneys for Defendant RISO, INC. and*
   *RISO KAGAKU CORPORATION*
10

11  Richard M. Clinton, Esq.
    Dorsey & Whitney, LLP
12  U.S. Bank Centre
    1420 Fifth Avenue, Suite 3400
13  Seattle, WA 98101
    *Attorneys for Defendant RISO KAGAKU CORPORATION*
14

15  Jerry M. Duncan, Esq.
    Duncan, Ball, Evans & Ubaldi
    641 Fulton Avenue, Second Floor
16  Sacramento, CA 95825
    *Attorneys for Defendant RPSI ENTERPRISES, INC.,*
17  *d/b/a RISO PRODUCTS OF SACRAMENTO*

18

    James P. Ulwick, Esq.
19  Kramon and Graham
    One South Street, Suite 2600
20  Baltimore, MD 21202
    *Attorneys for Plaintiffs*
21

22  Harvey G. Sanders, Jr., Esq.
    James T. Hewitt, Esq.
23  Leatherwood, Walker, Todd & Mann
    100 East Coffee Street
24  Greenville, SC 29602-0087
    *Attorneys for Plaintiffs*
25

26

27

28

712401.1                    -31-
_____
FIRST AMENDED CLASS ACTION COMPLAINT

PMOD 09885