1

2

3  MICHAEL A. GROB
   KRONICK, MOSKOVITZ, TIEDEMANN &
   GIRARD, P.C.
4  400 Capitol Mall, 27th Floor
   Sacramento, CA  95814-4417
5
   Attorneys for Plaintiffs
6  **MODESTO CITY SCHOOLS AND**
   **STOCKTON UNIFIED SCHOOL DISTRICT**
7
   MILTON D. ANDREWS, ESQ.
8  EDWIN G. HARVEY, ESQ.
   THOMPSON COBURN LLP
9  1909 K Street, NW
   6th Floor
10 Washington, D.C.  20006-1167
   Telephone:  (202) 585-6900
11 Telefax:  (202) 585-6969

12 Attorneys for Defendants **RISO, INC. and RISO KAGAKU CORP.**
   Admitted *Pro Hac Vice*
13
   EUGENE C. GRATZ - BAR NO. 74490
14 LAW OFFICES OF EUGENE C. GRATZ
   301 Forest Avenue - Suite 200
15 Post Office Box 4197
   Laguna Beach, CA  92652-4197
16 Telephone:  (949) 497-3234

17 Local Counsel for Defendants **RISO, INC. and RISO KAGAKU CORP.**

18 DORSEY & WHITNEY, LLP
   RICHARD M. CLINTON, ESQ.
19 RISO KAGAKU CORPORATION
   U.S. Bank Centre
20 1420 Fifth Avenue, Suite 3400
   Seattle WA  98101
21
   Attorneys for Defendant **RISO KAGAKU CORP.**
22
   DUNCAN, BALL & EVANS, P.C.
23 JERRY M. DUNCAN
   Jerry M. Duncan
24 David Pollock
   641 Fulton Avenue, Second Floor
25 Sacramento, CA 95825

26 Attorney for Defendant
   **RPSI ENTERPRISES, INC.,**
27 **d/b/a RISO PRODUCTS OF SACRAMENTO, INC.**

28

   Mem. of P & A in Supp. of Joint Mot. for Approval of Dismissal Without Prejudice of Putative Class Action

   2183137

   **PMOD 10320**

1  DUNCAN, BALL & EVANS, P.C.
   JERRY M. DUNCAN
2  David Pollock
   Attorneys for Defendant
3  RPSI ENTERPRISES, INC.,
   d/b/a RISO PRODUCTS OF SACRAMENTO, INC.
4  641 Fulton Avenue, Second Floor
   Sacramento, CA 95825
5
   HARVEY G. SANDERS, JR.
6  JAMES T. HEWITT
   LEATHERWOOD, WALKER, TODD AND MANN
7  100 East Coffee Street
   Greenville, SC 29602-0087
8
   JAMES P. ULWICK
9  KRAMON AND GRAHAM
   One South Street
10 Suite 2600
   Baltimore, MD 21202
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
   Mem. of P & A in Supp. of Joint Mot. for Approval of Dismissal Without Prejudice of Putative Class Action
28
                                    2
                                                                    **PMOD 10321**
   2183137

1

2

3

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF CALIFORNIA**

4   MODESTO CITY SCHOOLS
    STOCKTON UNIFIED SCHOOL
5   DISTRICT, on their behalf of the class      No. CIV. S-99-FCD GG
    consisting of all School and School
6   Districts in the United States,             **MEMORANDUM OF POINTS &**
                          Plaintiffs,           **AUTHORITIES IN SUPPORT OF JOINT**
7                    vs.                         **MOTION FOR APPROVAL OF**
                                                **DISMISSAL WITHOUT PREJUDICE OF**
8   RISO KAGAKU CORPORATION, A                  **PUTATIVE CLASS ACTION**
    Japanese corporation, RISO, INC., a
9   Massachusetts corporation, RPSI
    ENTERPRISES, INC., a California             HEARING
10  Corporation, d/b/a RISO PRODUCTS OF         DATE:  November 21, 2003
    SACRAMENTO,                                 TIME:  10:00 a.m.
11                        Defendants.           PLACE: COURTROOM NO. 2
    _____               Honorable Frank C. Damrell, Jr.

12
                                                Trial Date:        April 19, 2004
13                                              Discovery cut-off: September 26, 2003
                                                Motion cut-off:    December 12, 2003
14

15                                                    .

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**PAGE**

TABLE OF AUTHORITIES ................................................................................................. iii

I.      PRELIMINARY STATEMENT................................................................................1

II.     PROCEDURAL & FACTUAL BACKGROUND ....................................................4

    A.      The Parties and Products.................................................................................4

    B.      The Original Complaint...................................................................................6

    C.      Initial Motion Practice ...................................................................................8

    D.      Preparation for Class Certification:  The Scheduling Order and
        Discovery .........................................................................................................9

    E.      The Illinois Brick Phase and the Resulting Amended Complaint ........................10

    F.      Impact of Illinois Brick and the resulting Amended Complaint upon
        Plaintiffs' Motion for Class Certification and their Experts'
        Opinion ..........................................................................................................11

III.    SUMMARY OF INDIVIDUAL SETTLEMENT TERMS ...............................................13

IV.     UNDER THE APPLICABLE LEGAL PRINCIPLES, DISMISSAL
       WITHOUT PREJUDICE OF THE PUTATIVE CLASS CLAIMS
       SHOULD BE APPROVED AND WITHOUT NOTICE TO THE
       PUTATIVE CLASS.................................................................................................15

    A.      Applicable Legal Principles Governing Pre-certification Dismissal ....................15

    B.      The Proposed Settlement is Not the Result of Collusion Nor Does
        it Present Potential Prejudice to the Putative Class; The Dismissal
        Should Therefore Be Approved Without Requiring Notice to
        Putative Class Members..................................................................................18

        1.      The Dismissal Without Prejudice of Putative Class Claims
            Should be Approved. ...........................................................................18

            a.      The Settlement is not the Product of Collusion. ............................18

            b.      The Settlement Will Not Prejudice the Putative Class
                Members ................................................................................19

            c.      The Settlement Does Not Sacrifice Putative Class
                Interests in Order to Further the Interests of the Named
                Plaintiffs or Counsel. ..............................................................20

2. The Dismissal Without Prejudice Should be Approved Without Notice to Putative Class Members............................................................24

 a. The Facts and Circumstances of this Case Weigh Heavily in Favor of Approving the Dismissal of this Putative Class Action Without Notice to Putative Class Members. .................................................................24

 b. The Proposed Amendment to Fed. R. Civ. P. 23, effective December 1, 2003, makes clear that Notice to Putative Class Members Would Not be Required Here. .............25

V. CONCLUSION.....................................................................................26

1

2

### TABLE OF AUTHORITIES

3

**PAGE**

4

### CASES

5

*Arizona v. Shamrock Foods*, 729 F.2d 1208 (9th Cir. 1984) .............................................. 11

6

*Automobile Ins. Co. of Hartford, Conn. v. Springfield Dyeing Co.*, 109 F.2d 533, 536 (3d Cir.
    1940) .............................................................................................................................. 26

7

*Beef Industry Antitrust Litigation*, 600 F.2d 1148, 1167 (5th Cir.1979) .......................... 24

8

*Colburn v. Roto-Rooter Corp.*, 78 F.R.D. 679, 681-83 (N.D. Cal. 1978) ......................... 24

9

*Columbia Health Servs. of El Paso, Inc. v. Columbia/HCA Healthcare Corp.*,
    1997-1 Trade Cas. ¶ 71,694, 1996 WL 812934 (W.D. Tex. Dec. 23, 1996) ................... 24

10

*Diaz v. Trust Territory of the Pacific Islands*, 876 F.2d 1401 (9th Cir. 1989) ....................... passim

11

*Estate of Mahoney v. R.J. Reynolds Tobacco Co.*, 204 F.R.D. 150, 154-55 (S.D.
    Iowa 2001) ...................................................................................................................... 23

12

13

*Fine Paper Antitrust Litigation*, 685 F.2d 810 (3d Cir. 1982) .......................................... 3

14

*Harris v. Jones*, 41 F.R.D. 70, 74 (D. Utah 1966 ............................................................. 27

15

*Illinois Brick v. Illinois*, 431 U.S. 720, 97 S. Ct. 2061 (1977) ..................................... 11, 13

16

*In re Austrian and German Bank Holocaust Litigation*, 2001 WL 228107, *4
    (S.D.N.Y. March 8, 2001) .............................................................................................. 16

17

*In re Fine Paper Antitrust Litigation, 685 F.2d 810 (3d Cir. 1982)* ................................. 24

18

*In re Nazi Era Cases Against German Defendants Litigation*, 198 F.R.D. 429, 439
    (D.N.J. 2000) .................................................................................................................. 17

19

20

*Preferred MSO of America-Austin LLC v. QuadraMed Corp.*, 85 F. Supp. 2d 974,
    975 (C.D. Cal. 1999) ................................................................................................... 17, 18

21

*Pressman v. American President Companies, Ltd.*, 1995 WL 705148, *1 (N.D.
    Cal. Nov. 20, 1995) ........................................................................................................ 19

22

23

*Ross v. Diversified Collection Services, Inc.*, 1999 WL 672316, * 1 (N.D. Cal.
    Aug. 23, 1999) ............................................................................................................ 17, 18

24

*Smith v. Toyota Motor Sales*, 1977-1 Trade Cases ¶ 61,252, 1977 WL 1352 (N.D.
    Cal. 1977) ................................................................................................................... 3, 24

25

26

*Soskel v. Texaco, Inc.*, 94 F.R.D. 201, 203 (C.D.N.Y. 1982) .......................................... 19

27

*Western Duplicating, Inc. v. Riso, Inc., et al.*, Case No.: CIV. S 98-0208 FCD
    GGH ........................................................................................................................... 7, 8

28

PMOD 10325

# I.   PRELIMINARY STATEMENT

Plaintiffs Modesto City Schools and Stockton Unified School District (collectively, "Plaintiffs") have reached agreement with Defendants Riso, Inc. ("Riso"), Riso Kagaku Corporation ("RKC"), and RPSI Enterprises, Inc. d/b/a Riso Products of Sacramento ("RPSI") (collectively "Defendants") to fully and finally settle their individual claims against Defendants and to dismiss their individual claims against Defendants with prejudice, and that the claims of the putative class be dismissed without prejudice and without notice to the putative class members.  Defendants strongly deny any liability or wrongdoing of any sort, and, as provided in the Settlement Agreement, Defendants are entering into this settlement only to avoid the further significant defense costs of continuing litigation.

The parties join in urging the Court to approve this dismissal without prejudice to putative class claims.  After nearly four years of motion practice and extensive discovery focusing largely on class certification issues, Plaintiffs believe that the claims asserted in this action will be very difficult to certify as a class pursuant to Rule 23, FED. R. CIV. P.  Plaintiffs have reached this belief primarily because the discovery and evidence show it will be difficult to prove a class-wide injury.  Rather the claims arise from a *sui generis* contractual dispute between two school districts and their dealer, RPSI, over the use of generic supplies purchased from one supplier.

Furthermore, an additional substantial problem facing class certification is the class members' status as indirect purchasers which would require joinder of every one of Riso's past and present dealers if this case were to proceed as a class action.  Based upon the facts elicited during discovery and the Court's rulings, the Plaintiffs recognized that this case could require individual adjudication of issues concerning each of 500 current and former independent dealers operating in over 220 local markets.  The case could only proceed as an endless succession of mini-trials.  Even if there had been a putative class for which relief could be sought, this case

PMOD 10326

1  would be difficult to manage, potentially requiring years for trial and presenting overwhelming

2  detail to the trier of fact.

3       In addition to the potentially insurmountable problem of joinder, many other aspects of

4  this case have led Plaintiffs to recognize that there would be serious difficulties with any effort to

5  certify a class here.  Among other things, Plaintiffs would have to offer evidence of each

6  individual Riso dealer's purported involvement in and actions in furtherance of the alleged

7  conspiracy.  This evidence is likely to differ for each dealer.[1]  Also, some of the potential class

8  members have signed agreements containing arbitration clauses, which could preclude litigation

9  of antitrust claims in this forum; if challenged by Plaintiffs, these clauses would raise interpretive

10  issues unique to each agreement under the laws of many states.  These are just a few of the many

11  problems, in addition to the obstacle of joinder, that have led Plaintiffs to conclude that rather

12  than spending their time and money pursuing class certification, it would be more productive if

13  the parties were to discuss and arrive at a settlement.

14       Under applicable Ninth Circuit precedent, this Court should approve this pre-certification

15  settlement.  There is no cognizable prejudice to any member of the putative class, and the long,

16  hard-fought nature of this case, as well as the *de minimis* settlement, allays any concern about

17  collusion.  The Court should also conclude that no notice to the putative class is warranted.

18  Notice to the putative class would serve no purpose, nor would it advance any policy underlying

19  Rule 23.  Under consistent Ninth Circuit case law, notice to a putative class is not required where,

20  as here, there is no possibility of prejudice and no evidence of reliance on the pendency of the

21  settled suit.  Much like a court's denial of a motion for class certification, which requires no

22  notice to putative class members under Rule 23, the parties' determination after four years of

23

24  [1] For example, many courts have observed that vertical conspiracies (the sole remaining basis of the Amended
Complaint) are generally unsuitable for class treatment.  *See, e.g., In re Fine Paper Antitrust Litigation*, 685 F.2d

25  810 (3d Cir. 1982); *Smith v. Toyota Motor Sales*, 1977-1 Trade Cases ¶ 61,252, 1977 WL 1352 (N.D. Cal. 1977).
Here, in order to prove the alleged vertical conspiracies between Riso and its dealers, Plaintiffs would have to offer

26  evidence concerning each dealer's participation in a conspiracy with Riso and the nature of that conspiracy.  This
evidence would differ for each dealer.

27

28                              2

PMOD 10327

1    litigation that class resolution is not feasible similarly merits no notice.  Accordingly, the parties'

2    settlement agreement is premised on the condition that no notice of the dismissal of this action be

3    provided to the putative class members.

4         Plaintiffs' decision to enter into this *de minimis* settlement is not solely the result of the

5    anticipated difficulty of obtaining class certification.  Plaintiffs have discovered facts that lead

6    them to believe that they have substantial obstacles to success on the merits.  Plaintiffs have

7    learned, for example, that the maintenance agreements they believed were uniform among Riso

8    dealers are not imposed by Riso, and are not uniform.  In fact, considerable variation is present

9    from dealer to dealer.  Additionally, the fact that prior to the October, 1994 meeting the Dealer

10   Agreements were already in the form to which Plaintiffs objected, makes it very difficult for

11   Plaintiffs to prove their conspiracy theory.  Moreover, Plaintiffs now believe that their conspiracy

12   theory suffers from a competing view that what actually occurred at the October, 1994 meeting

13   was that a plan was enacted to implement better pricing to compete more effectively with generic

14   supplies.  Even the "core documents" that have been brought to this Court's attention as

15   evidencing a conspiracy can be interpreted as demonstrating that Riso's "plan" for dealing with

16   generic supply competition was simply to set up a "bid desk" to provide bid support to Riso

17   dealers.  *See* Exhibits A and B to the Declaration of Mark J. Tamblyn in Support of Pltfs' Mem.

18   in Opp. to Def.'s Mot. for Partial Summ. Judg., filed April 11, 2002.  Plaintiffs believe they

19   would have significant difficulty demonstrating the requisite injury to competition necessary for

20   antitrust claims.

21        From Defendants' perspective, although strongly believing that the claims herein have no

22   merit, the costs of continuing to litigate this case would be substantial.  Defendants have already

23   incurred millions of dollars in defense costs in connection with motions addressed to the

24   pleadings, discovery, class certification work, and expert reports.  (As discussed herein, Plaintiffs

25   have likewise incurred heavy costs.)  Although the case is still scheduled for trial in April 2004,

26   the Court's Scheduling Order has in effect been long set aside as a result of rulings described

27

Mem. of P & A in Supp. of Joint Mot. for Approval of Dismissal Without Prejudice of Putative Class Action

28

3

2183137

PMOD 10328

1 herein. To continue with the case would require the parties to essentially return to the starting

2 blocks. Plaintiffs and Defendants both recognized the high costs of proceeding with the

3 litigation, and instead have devoted their resources to meeting, discussing the problems Plaintiffs

4 face with the merits of the case, and reviewing materials relating to the issues concerning the

5 substance of the claims — *vis-à-vis* the potential for settlement. After so doing, the parties have

6 concluded that the settlement they propose is in the best interest of all concerned.

7 The terms of the settlement proposed by the parties are contained in a written Settlement

8 Agreement, a copy of which has been filed under seal as Exhibit 1 in connection with this

9 Motion. (The proposed terms of the settlement are summarized in section III. below.) As spelled

10 out in sections 3 through 5 of the Settlement Agreement, if the Court approves the dismissal, the

11 parties will thereafter conduct a closing of their settlement, at which time, among other things,

12 the Plaintiffs will execute a Motion for Dismissal in the form of Exhibit B to the Settlement

13 Agreement attached hereto. In accordance with the Settlement Agreement, the Motion for

14 Dismissal will be filed with the Court for entry as a final judgment within three days after the

15 closing.

16 ## II.  PROCEDURAL & FACTUAL BACKGROUND

17 ### A.  The Parties and Products

18 RKC, a Japanese corporation, manufactures printer duplicators (sometimes referred to as

19 "digital duplicators") and inks and masters specially formulated to work with them. Riso

20 purchases these products from RKC in Japan and imports them into the United States, where it

21 sells the products primarily to independent Riso dealers. The independent dealers resell the

22 products and provide service to customers, including public schools and public school districts.

23 Printer duplicators are a technology for copying. From a customer's standpoint, printer

24 duplicators are functionally equivalent to copiers. The principal customers for printer duplicators

25 include businesses, public and private schools, churches, print and copy shops, and similar

26 institutions with substantial multi-copy needs, for which digital duplicators are particularly well

27

Mem. of P & A in Supp. of Joint Mot. for Approval of Dismissal Without Prejudice of Putative Class Action

28                                         4

**PMOD 10329**

1   suited.  Printer duplicators compete for these customers with digital and analog copiers, offset

2   printing, and other technologies.

3       Riso equipment and supplies are distributed in the United States through several hundred

4   independent dealers, as well as directly by Riso through 23 branches, all of which also service

5   Riso equipment.  During the class period alleged by Plaintiffs, from October 1994 to the present,

6   a total of approximately 500 past and present dealers have sold Riso products or serviced Riso

7   equipment.  *See* Declaration of Daniel S. Weil, President, Riso, Inc., attached hereto as Exhibit 2,

8   at ¶¶ 4, 8.

9       Each Riso dealer and its customers enter into their own maintenance agreements and

10  warranties that provide for the servicing by the dealer of the customer's equipment.  At the outset

11  of this case, Plaintiffs had access only to their own maintenance agreements with their own local

12  dealer, RPSI.  When this suit was filed, and for some time afterwards, Plaintiffs proceeded under

13  what they later learned was a mistaken belief that the language in these maintenance agreements

14  was dictated by Riso, Inc. and was uniform among all Riso dealers.  Discovery has demonstrated

15  that the maintenance agreements are not uniform, but in fact are drafted by each dealer for use

16  with its own customers and vary widely from one dealer to another.  Indeed, the language used is

17  often based on forms used by the dealer in its sales of other office equipment.  *See* Declaration of

18  Edward Stoessel, President, RPSI, attached hereto as Exhibit 3, at ¶¶ 8-10.  Unlike RPSI's

19  agreement with MCS and SUSD, the evidence demonstrates that "most of the [maintenance]

20  contracts did not regulate in any way the use of third party supplies."  Expert Report of Dr. David

21  Rubinfeld, filed October 12, 2001, at 19-21 ("Rubinfeld Report").  In any case, these terms are

22  the result of independent decisions by the dealer, and *are not prescribed by Riso*.

23      RPSI is an independently-owned and operated Riso dealer that sells Riso-brand printer

24  duplicators, parts and supplies, and provides service on the Riso machines.  It has repeatedly been

25  the successful bidder for contracts to supply printer duplicators, supplies, and service to both of

26  the named Plaintiffs.  RPSI sells primarily, though not exclusively, in its assigned geographic

27

Mem. of P & A in Supp. of Joint Mot. for Approval of Dismissal Without Prejudice of Putative Class Action

28

5

2183137

**PMOD 10330**

1  territory in central California. It has had no dealings with RKC or with the vast majority of the

2  putative class members.

3          Plaintiffs have learned through discovery that RPSI is not a typical Riso dealer. Of the

4  approximately 250 active Riso dealers in the country, RPSI is one of only a very few independent

5  dealers for which Riso is the only product line. For the vast majority of Riso's dealers, Riso

6  printer duplicators are only one of the product lines of office equipment, typically including

7  photocopiers, they carry and sell. In fact, the average percentage of each Riso dealer's business

8  represented by its sales and service of Riso products is only 14%. Weil Decl. at ¶¶ 5-6. RPSI is

9  almost alone in depending on Riso for most of its business. *Id.* While Defendants firmly believe

10  that the actions of RPSI were not unlawful, the typical dealer's multi-product line relationships

11  provide strong reasons for the dealer to not engage in the sorts of misconduct alleged by Plaintiffs

12  (such as imposing coercive "ties" between Riso supplies and service) that could jeopardize the

13  dealer's relationship with its customers.

14          **B. The Original Complaint**

15          The genesis of the present case was an action filed in January, 1998, by one of Riso's

16  competitors, a generic supplier. *Western Duplicating, Inc. v. Riso, Inc.,* Case No.: CIV. S 98-

17  0208 FCD GGH. Western alleged, among other things, that RPSI, Riso, and RKC made

18  disparaging and defamatory comments about supplies sold by Western and other sellers of non-

19  Riso supplies for use in Riso duplicators. Based on these and other allegations, Western asserted

20  claims against the Defendants for violations of the U.S. antitrust laws, unfair competition,

21  business disparagement, tortious interference, and trade libel and disparagement. All of these

22  claims, either in whole or in part, rested on allegations of defamation and disparagement.

23          On November 5, 1999, Plaintiffs Modesto City Schools and Stockton Unified School

24  District filed a ten-count suit on behalf of a putative class of "public schools and/or public school

25  districts in the United States that have purchased or leased Risographs on or after October 21,

26  1994, and that have purchased maintenance or repair services or inks and masters supplies from

27

Mem. of P & A in Supp. of Joint Mot. for Approval of Dismissal Without Prejudice of Putative Class Action

28                                              6

2183137                                                                    **PMOD 10331**

1   RISO or its dealers." Compl. ¶ 61.  The Complaint, and now the Amended Complaint, in this

2   case contain factual allegations similar to those in the *Western* Complaint, including allegations

3   that RPSI and Riso disparaged non-Riso supplies.[2]

4       The Plaintiffs are two school districts that are long-time customers of RPSI, an

5   independent Riso dealer located in Sacramento, California.  The original Complaint alleged that

6   the putative class was harmed in two principal ways by Riso and its dealers:  that Defendants

7   monopolized the services market by refusing to sell Riso replacement parts to independent

8   service organizations ("ISOs") and the supplies market by coercing service customers to use only

9   Riso-brand supplies.  *Id.* ¶¶ 50-51.  Additionally, the Complaint alleged that Riso limited

10  intrabrand competition in the sale of supplies and services to the detriment of consumers and

11  unlawfully tied sales of Riso equipment to dealers to the dealers' purchases of Riso supplies.  *Id.*

12  ¶¶ 52, 161.

13      According to the Complaint, while the Plaintiffs often had purchased reprographic

14  equipment, supplies, and service from RPSI under competitive bidding processes, in the summer

15  of 1997, (without using the bidding process required by law) both MCS and SUSD purchased

16  generic Riso-compatible supplies from a third party supplier, Western Duplicating, Inc.[3]  Compl.

17  ¶ 144.  Plaintiffs claim that when RPSI became aware of these purchases, one of RPSI's

18  principals threatened both school districts with termination of their maintenance agreements,

19  relying on provisions in RPSI's maintenance agreements – not found in other dealers' contracts –

20

21  [2] Those allegations formed part of the basis for nine of the ten claims asserted in the original Complaint, including
    alleged antitrust violations and unfair competition and unfair or deceptive acts or practices, and continue to be at the
22  heart of the present Amended Complaint, where Plaintiffs claim there was a "concerted strategy by RISO and its
    dealers to falsely disparage non-RISO inks and masters suitable for use in Risographs and thereby reinforce the tying
23  arrangement between Risograph warranty service and use of Risograph inks and masters."  Amended Compl. ¶100
    (further alleging "[t]he routine disparagement of all "generic" or "pirate" supplies include statements which are false
24  and known to be false, or reckless as to the truth of the assertions made.")

25  [3] The *Western Duplicating* case, filed in January, 1998, *Western Duplicating, Inc. v. Riso, Inc., et al.*, Case No.: CIV.
    S 98-0208 FCD GGH, was settled over three years later, when Defendants' insurance companies made nominal
26  payments to Western.  Riso and RPSI paid nothing and vigorously denied all liability."

27
    Mem. of P & A in Supp. of Joint Mot. for Approval of Dismissal Without Prejudice of Putative Class Action
28                                                          7
    2183137

1   that made the agreement voidable for use of "unauthorized supplies." Compl. ¶ 141, 144.

2   Plaintiffs claim that these threats and disparagement of generic supplies deterred them from

3   continuing to use the non-Riso supplies. Compl. ¶ 144.

4       As discussed below, Plaintiffs decided to settle under the present terms only after

5   engaging in thorough, vigorous, and costly litigation. The progress of this case can be divided

6   into three main stages: (1) initial motion practice, (2) preparation for the class certification

7   hearing, and (3) the *Illinois Brick* phase.

8   **C. Initial Motion Practice**

9       The first phase in this case was devoted to extensive motion practice. Riso, Inc.'s initial

10  motion to dismiss, in part based on the statutes of limitations, was denied. The Court ruled that

11  Plaintiffs had alleged a continuing violation, so as to prevent the statute of limitations from

12  running: "Here, plaintiffs allege that Riso and its dealers have undertaken new and independent

13  acts in furtherance of the October 1994 agreement, and that plaintiffs have been injured each time

14  they purchased Riso supplies or service in that they paid supracompetitive prices for the same."

15  July 25, 2000 Order at 3 (footnote omitted).

16      RKC also filed a Motion to Dismiss, asserting that it was not subject to personal

17  jurisdiction in the United States. On July 25, 2000, the Court granted Plaintiffs 90 days (later

18  extended by an additional 45 days) in which to conduct discovery directed at jurisdictional issues.

19  The resulting discovery was vigorously pursued by Plaintiffs. It was extensive and costly and

20  went not only to the jurisdictional issues but also to the merits. Plaintiffs served numerous

21  document requests on both Riso and RKC. Over 100,000 pages of materials were produced both

22  in the United States and in Tokyo, Japan, including documents reflecting communications

23  between RKC and Riso, Inc. Riso's President was deposed in Boston. The parties' attorneys

24  traveled to Tokyo for a document production, and Osaka, Japan to take the deposition of an RKC

25  executive. In order to bridge language issues, expedite document production in Japan, and

26  address potential questions of Japanese law, Plaintiffs hired a Tokyo law firm, Ushijima &

27

28

1  Associates; Plaintiffs also hired an interpreter (flown in from Hawaii at Plaintiffs' expense) and a

2  special court reporter/videographer to take the deposition, all at significant expense, i.e., at a cost

3  of over $55,900.00. *See* Declaration Michael A. Grob, attached hereto as Exhibit 4 at ¶¶6-9.[4]

4      **D. Preparation for Class Certification: The Scheduling Order and Discovery**

5      On January 24, 2001, the Court entered a Scheduling Order, establishing a framework for

6  fact and expert discovery to develop a record to determine if this case could legitimately proceed

7  as a nationwide class action as alleged by Plaintiffs.

8      Plaintiffs pursued substantial written discovery in this case. Plaintiffs served

9  approximately 140 interrogatories on Riso (excluding subparts) and approximately 125 document

10 requests relating to class certification, the merits, and personal jurisdiction. Pursuant to these

11 document requests, Riso produced over 200,000 responsive documents. These documents cover

12 a wide range of factual issues pertinent to both class certification and the merits of Plaintiffs'

13 claims. Plaintiffs also served approximately 100 document requests on RKC and 75 on RPSI.

14 Plaintiffs have served a number of subpoenas requesting documents from third party Riso dealers.

15 The parties conducted a number of depositions in this case, some at considerable expense.[5]

16

17

18  ───────────────────────

19 [4] Following this discovery, RKC's jurisdictional motion was renewed. On April 13, 2001, the Court ruled that RKC
   was not subject to jurisdiction under an "alter ego" theory, nor was it subject to specific jurisdiction; the Court
20 ordered, however, that further briefing be conducted on the issue of whether RKC might be held subject to
   jurisdiction on a "general agency" theory. Another round of briefing was submitted, and after oral argument held on
21 June 26, 2001, the Court issued its August 1, 2001 Order holding that RKC was subject to jurisdiction. RKC sought
   §1292 (b) certification to the Ninth Circuit, which, after another round of briefing, this Court granted. The parties
22 then briefed the Petition for Permission to Appeal before the Ninth Circuit; on November 9, 2001, the Ninth Circuit
   declined to hear the matter.

23 [5] Plaintiffs took the deposition of Riso's President, on September 12, 2000, in Boston, and also deposed an RKC
   executive on October 4 and 5, 2000 in Osaka, Japan. (As noted above, this deposition alone necessitated that
24 Plaintiffs hire an interpreter, a court reporter/videographer, and a Japanese law firm.) In October 2001, Riso deposed
   Arlene Westmoreland and David Louis, the purchasing agents for the Plaintiffs, on issues pertaining to class
25 certification. In preparation for the class certification briefing and hearing, Riso deposed Mr. Weinstein and Mr.
   Wagner, Plaintiffs' class certification experts, and on December 7, 2001, Plaintiffs deposed Riso's class certification
26 expert, Dr. Daniel Rubinfeld. On February 8, 2002, Plaintiffs also deposed a Riso corporate representative regarding
   Riso databases and information systems.

27
   Mem. of P & A in Supp. of Joint Mot. for Approval of Dismissal Without Prejudice of Putative Class Action

28                                     9

PMOD 10334

**E.  The Illinois Brick Phase and the Resulting Amended Complaint**

On February 8, 2002, Riso, Inc. filed a Motion for Partial Judgment on the Pleadings

based on the Supreme Court's holding in *Illinois Brick v. Illinois*, 431 U.S. 720, 97 S. Ct. 2061

(1977).  Riso asserted that the putative class members were indirect purchasers and, unless the

500 dealers from whom they had purchased were joined as party plaintiffs, the putative class

claims were barred by the indirect purchaser doctrine of *Illinois Brick*.  Riso further contended

that joinder of the 500 absent dealers would be futile, as their presence would render any class

treatment unmanageable.  The Court agreed that Plaintiffs' claims were inconsistent with *Illinois*

*Brick* and instructed Plaintiffs to seek leave to amend their Complaint in order to fit their

allegations within the ambit of *Arizona v. Shamrock Foods*, 729 F.2d 1208 (9th Cir. 1984).

March 28, 2002 Order at 11-12.

On May 14, 2002, Plaintiffs filed their first Motion for Leave to Amend, which this Court

denied on July 10, 2002.  While deferring the ruling on whether joinder was required under

*Illinois Brick* until such time as there was a ruling on Plaintiffs' class certification motion, the

Court rejected Plaintiffs' arguments opposing joinder.[6]  July 10, 2002 Order at 15.  The Court

provided clear guidance that in order to maintain a damages class, Plaintiffs should join the Riso

dealers.  The Court denied Plaintiffs' request to add California Cartwright Act state law claims in

order to evade the impact of the *Illinois Brick* bar.  *Id.* at 21-22.  The Court also pointed out

difficulties Plaintiffs faced in their section 2 monopolization claims.

On September 24, 2002, Plaintiffs filed their second Motion for Leave to Amend.  The

Court granted Plaintiffs' Motion on November 13, 2002, again postponing a final determination

---

[6] Although declining to dismiss Plaintiffs' class damages claims for failure to join the intermediate Riso dealers, the Court "provid[ed] clarification to the parties and . . . address[ed] Plaintiffs' argument that joinder is not required." July 10, 2002 Order at 15: 19-26.  The discussion that followed rejected each of Plaintiffs' arguments. *Id.* at 15-17. *See also* November 13, 2002 Order at 7: 11-14 ("While the court did address (and reject) plaintiffs' arguments that joinder was not required (*see id.* at 15-17), it did so to provide 'clarification' to the parties on the issue.") (Citation omitted).

Mem. of P & A in Supp. of Joint Mot. for Approval of Dismissal Without Prejudice of Putative Class Action

10

2183137

**PMOD 10335**

1  on the need to join the past and present Riso dealers until the time of the ruling on the class

2  certification motion.  November 13, 2002 Order at 7.

3        Plaintiffs' First Amended Complaint, filed November 15, 2002, consists of four counts,

4  all based on an alleged conspiracy. First Am. Compl. ¶¶ 51-58; *see also* September 24, 2002

5  Pls.' Mem. of P & A in Supp. of Mot. for Leave to Amend at 3-4.  As a result of the preceding

6  motion practice, all monopolization claims and claims of conspiracy to monopolize were dropped

7  by Plaintiffs, as were the California state law claims.

8    **F.  Impact of Illinois Brick and the resulting Amended Complaint upon Plaintiffs'
        Motion for Class Certification and their Experts' Opinion**
9

10        Plaintiffs filed their Motion for Class Certification on January 25, 2002, pursuant to

11  which Plaintiffs sought to certify a nationwide class asserting the claims in the original

12  Complaint.  Because of the series of *Illinois Brick* motions, however, Plaintiffs' class certification

13  motion was never heard.  The hearing on Plaintiffs' motion was originally scheduled for April 5,

14  2003; the Court several times continued the hearing date for Plaintiffs' Motion for Class

15  Certification and ultimately took the hearing off calendar altogether because of its rulings on

16  Defendants' *Illinois Brick* motions.  Plaintiffs did not re-file their motion for class certification.

17        In setting a schedule for the determination of class certification, the Court provided for

18  reports and supplementary reports by experts for both parties.  Plaintiffs retained Mr. Roy

19  Weinstein and Mr. Mark Wagner.  Riso retained Dr. Daniel Rubinfeld, former Deputy Assistant

20  Attorney General of the Antitrust Division.[7]  Rubinfeld Rep., filed October 12, 2001 at 1.

21        In arriving at the conclusion that there are substantial obstacles to class certification,

22  Plaintiffs have carefully examined the opinions of Dr. Rubinfeld and those of their own experts.[8]

23
_____

24  [7] Dr. Rubinfeld has served as a court-appointed expert on class certification issues and has been retained and testified
    as an expert on behalf of both plaintiffs and defendants on class certification questions.  Rubinfeld Rep. 1-2.

25  [8] Plaintiffs' counsel have retained and worked with Dr. Rubinfeld as their own expert in at least one other case and
    attempted to retain him in this case.  Plaintiffs' counsel believes Dr. Rubinfeld to be a credible witness.  Thus, while
26  it is certainly expected that opposing experts will reach differing opinions, Plaintiffs' counsel have good reason to
    take seriously Dr. Rubinfeld's opinions and to carefully weigh the impact his opinions may carry.
27
    Mem. of P & A in Supp. of Joint Mot. for Approval of Dismissal Without Prejudice of Putative Class Action
28                                           11

2183137                                                          PMOD 10336

1  Plaintiffs believe that the *Illinois Brick* rulings, which resulted in the dismissal of the

2  monopolization claims, have significantly impacted the viability of their experts' previous

3  conclusions. Plaintiffs' experts focused exclusively on the monopolization counts as the source

4  of the common questions they felt justified class treatment. Plaintiffs' experts did not address the

5  only remaining claims — alleged conspiracy claims — in their reports. In contrast, Dr. Rubinfeld

6  focused on the conspiracy claims (which are now the *only* claims in the case), concluding:

7
       The question of whether any particular company was or was not part of any alleged
       conspiracy is an individuated question. The investigation into Plaintiffs' conspiracy

8         claims would thus involve a dealer-by-dealer analysis that would not be "common" to all
       putative class members.

9
    Rubinfeld Rep. at 3.

10

11        Dr. Rubinfeld further opined that individual issues predominate over common issues and

12  that the proposed class action is inferior to other means of resolving the controversy. *See, e.g.,*

13  Rubinfeld Rep. at 30-31. Dr. Rubinfeld identified over 30 significant non-common issues

14  relating to the class in this case, including whether individual maintenance agreements created

15  actionable coercion and the non-common issues raised by the many local markets involved.

16  Rubinfeld Rep. at 3, 8-27, 30-31. He also concluded that the named Plaintiffs were not typical of

17  the class and noted potential problems with the adequacy of Plaintiffs as class representatives.

18  Rubinfeld Rep. at 27-30. Dr. Rubinfeld concluded that "it would not be appropriate to certify the

19  class proposed in the Complaint." Rubinfeld Rep. at 2.

20        Dr. Rubinfeld did not base his report solely on his own analysis; he also referred to the

21  work of Plaintiffs' experts. For example, Dr. Rubinfeld pointed out that Plaintiffs' experts were

22  unable to develop a common formula to calculate damages. Rubinfeld Rep. at 4, 30. Dr.

23  Rubinfeld also observed that if the class members' claims were handled as individual actions

24  instead of on a class basis, "each suit would only have to consider the local competitive

25  conditions in the local market." Rubinfeld Rep. at 30. Localized suits would also have better

26  access to relevant information and testimony. Rubinfeld Rep. at 31. For these and other reasons,

27

28

PMOD 10337

1   Dr. Rubinfeld concluded that the superiority and predominance requirements were not satisfied

2   here. *Id.*

3          Regardless of the weight to be attached to Dr. Rubinfeld's opinions, however, Plaintiffs'

4   discovery in the case has led them to independently conclude that the essence of their Amended

5   Complaint — maintenance agreement language and dealer conduct relating thereto — are matters

6   arising out of the relationships between individual dealers and their respective customers. The

7   lack of uniformity they uncovered as to these matters presented Plaintiffs with unexpected and

8   significant risks to their certification motion (as well as the merits of their claims). Plaintiffs

9   were also increasingly aware that their best case was against a single dealer.

10               **III.   SUMMARY OF INDIVIDUAL SETTLEMENT TERMS**

11          Plaintiffs and Defendants executed the Settlement Agreement on October 20, 2003.

12   Should the Court wish to review it, a fully executed copy of the Settlement Agreement has been

13   filed separately by the parties under seal. Exhibit 1 hereto. Under the Settlement Agreement,

14   only the individual claims of Plaintiffs will be compromised: "None of the alleged claims of the

15   alleged putative class are being settled by this Agreement, and all alleged class claims are being

16   dismissed without prejudice." Settlement Agreement, Recitals, p. 2. The Motion for Dismissal,

17   attached as Exhibit B to the Settlement Agreement, expressly provides that any putative class

18   claims are dismissed without prejudice.

19          Defendants disclaim any and all liability for the claims alleged by Plaintiffs in this action.

20   Nevertheless, in exchange for a full release of the Plaintiffs' individual claims, Defendants have

21   agreed to pay the individual Plaintiffs a negotiated amount representing only a portion of what

22   Plaintiffs allege were their individual damages in this action. Defendants are paying this

23   negotiated amount in the combined form of cash and Riso supplies[9] (inks and masters) at a three-

24   to-one ratio of supplies to cash. Settlement Agreement, § 5. Defendants have also agreed to pay

25

26   [9] The payment to MCS and SUSD is to be made to each district separately in proportion to the degree of the
     respective district's supply purchases from RPSI, which is approximated at 25% MCS and 75% SUSD. *See*
27   Settlement Agreement, §5.

     Mem. of P & A in Supp. of Joint Mot. for Approval of Dismissal Without Prejudice of Putative Class Action

28                                                    13

     2183137                                                                              **PMOD 10338**

1   Plaintiffs a fraction of the almost $3 million Plaintiffs' counsel have incurred in attorneys' fees

2   and costs in the prosecution of this lawsuit spanning nearly four years.  Grob Decl. at ¶ 20;

3   Settlement Agreement, § 5.

4          In order to address the specific complaints by the named Plaintiffs about the actions of

5   their dealer, Riso has also agreed in the Settlement Agreement to send two letters to all active

6   Riso dealers advising the dealers of customer relations problems that could arise as a result of

7   annual maintenance agreement terms and certain bidding practices.  Settlement Agreement,

8   Exhibit F.  Plaintiffs believe this is significant because, even though they were unable to unearth

9   evidence of any similarly situated putative class members, in the event that there are isolated

10  instances of similar conduct by a few solitary dealers, the letters may discourage such dealers

11  from engaging in such conduct.  Riso further agreed to clarify its Domestic Dealer Agreement by

12  adding a partial sentence confirming that Riso's warranty is not voided automatically by the use

13  of unauthorized products or services.  Settlement Agreement, § 6.  This addition did not change

14  the meaning of the Dealer Agreement, but only re-stated its current terms to avoid the possibility

15  of any misunderstanding by any Riso dealers.  Riso also agreed to modify its Dealer Policy

16  Manual so that the warranty language quoted there is identical to the language in the OEM

17  product warranty in Schedule E of its Dealer Agreement, which Plaintiffs agreed is reasonable

18  and does not need to be changed.  *Id.* at § 6.

19         Assuming the Court issues a ruling approving dismissal of Plaintiffs' claims with

20  prejudice and those of the putative class without prejudice, and with no notice being required to

21  the class, the parties will thereafter conduct a closing to effectuate the terms of the Settlement

22  Agreement.  At the closing, the parties will execute the stipulation of dismissal which will then

23  be filed with the Court for entry of final judgment.

24

25

26

27

28

Mem. of P & A in Supp. of Joint Mot. for Approval of Dismissal Without Prejudice of Putative Class Action

14

2183137

PMOD 10339

**IV.  UNDER THE APPLICABLE LEGAL PRINCIPLES,
DISMISSAL WITHOUT PREJUDICE OF THE PUTATIVE CLASS CLAIMS
SHOULD BE APPROVED AND WITHOUT NOTICE TO THE PUTATIVE CLASS**

### A.  Applicable Legal Principles Governing Pre-certification Dismissal

Rule 23(e), FED. R. CIV. P. provides: "A class action shall not be dismissed or compromised without the approval of the court, and notice of the proposed dismissal or compromise shall be given to all members of the class in such manner as the court directs." The Rule and the decisions interpreting it require that any dismissal or settlement of a class action be approved by the court, even if, as here, no class has yet been certified.  Courts interpreting Rule 23(e) have also held that notice of pre-certification dismissal is <u>not</u> mandatory and depends upon the facts and circumstances of the case.  *See* MANUAL ON COMPLEX LITIGATION,  § 30.212, p. 22 (Third ed. 2001).[10]

For example, in *Diaz v. Trust Territory of the Pacific Islands*, 876 F.2d 1401 (9th Cir. 1989), the Ninth Circuit held that Rule 23(e)'s standard for reviewing pre-certification dismissals is less stringent than for post-certification dismissals:

> The court's duty to inquire into a settlement or dismissal differs before and after certification.  Before certification, the dismissal is not *res judicata* against the absent class members and *the court does not need to perform the kind of substantive oversight required when reviewing a settlement binding upon the class* . . . .

*Id.* at 1408 (emphasis added).  Rather, the district court's inquiry under Rule 23(e) should be as to possible collusion or prejudice to absent class members from:

> (1) class members' possible reliance on the filing of the action if they are likely to know of it either because of publicity or other circumstances, (2) lack of adequate time for class members to file other actions, because of a rapidly approaching statute of limitations, (3) any settlement or concession of class interests made by the class representative or counsel in order to further their own interests.

*Id.*[11]

---

[10] *See* section IV B.2.b. *infra* (Proposed Amendment to Rule 23(e)m, effective December 1, 2003, provides that no notice would be required in cases such as this).

[11] Other courts have adopted the same approach. Courts identify the relevant inquiries as whether the individual settlement is "collusive" and whether the dismissal will "prejudice" absent class members. *E.g.*, *In re Austrian and German Bank Holocaust Litigation*, 2001 WL 228107, *4 (S.D.N.Y. March 8, 2001); *In re Nazi Era Cases Against*

Mem. of P & A in Supp. of Joint Mot. for Approval of Dismissal Without Prejudice of Putative Class Action

15

PMOD 10340

1    Courts in the Ninth Circuit have also held that, absent unique circumstances not present

2  here, notice to putative class members of a settlement with individual plaintiffs is unnecessary.

3  *See Preferred MSO of America-Austin LLC v. QuadraMed Corp.*, 85 F. Supp. 2d 974, 975 (C.D.

4  Cal. 1999); *Ross v. Diversified Collection Services, Inc.*, 1999 WL 672316, * 1 (N.D. Cal. Aug.

5  23, 1999) . Although *Diaz* involved unique facts,[12] the Ninth Circuit did provide some guidance

6  in that case as to the circumstances under which notice is required to putative class members

7  when dismissal occurs prior to certification. The court noted that notice of pre-certification

8  dismissal serves three purposes: (1) it protects a defendant from a plaintiff which appends class

9  action allegations to a complaint in order to extract a more favorable settlement; (2) it protects the

10  class from objectionable structural relief, trade-offs between compensatory and structural relief,

11  or depletion of limited funds to pay class claims; and (3) it protects the class from prejudice it

12  would otherwise suffer if class members had refrained from filing suit because of knowledge of

13  the pending class action (e.g., statute of limitations bar). 876 F.2d at 1409-10.

14    Under the facts of *Diaz*, the court found that the first two factors did not affect its analysis

15  because there was no evidence of an abusive class action filing, the class claims were dismissed

16  — not compromised — and there was no issue of structural relief because the government no

17  longer employed the intervenor class. *Id.* at 1409. The court did find, however, there was "at

18

---

19  *German Defendants Litigation*, 198 F.R.D. 429, 439 (D.N.J. 2000) ("[A] district court should make a 'proper
inquiry' to determine whether a proposed settlement and dismissal are tainted by collusion or will prejudice absent
20  members of the putative class"). As noted in *In re Nazi*, "When contemplating the dual aims of avoiding collusion
and prejudice, the focus should primarily be on the possibility that the pre-certification compromise is the product of
21  collusion." *Id.*

22  [12] In *Diaz*, 252 named plaintiffs, employees of the Trust Territory of Pacific Islands, filed a putative class action
claiming that government salary schedules unlawfully discriminated against Trust Territory citizens and third-country
23  nationals. Pursuant to several stipulations, the district court dismissed the plaintiffs' class claims and allowed the
case to proceed as an individual action; the court did not require notice of the dismissal to putative class members.
24  Two members of one of the putative classes sought to intervene in the action and to vacate the district court's prior
order dismissing class claims, in part on the basis that no notice of the dismissal had been provided to the putative
25  class. The district court denied the motion to intervene, finding that no notice under Rule 23(e) was required to
putative class members and that the intervenors were not unduly prejudiced. The Ninth Circuit reversed, focusing on
26  the unique facts of the case involving "deficiencies in communications among thousands of islands scattered over
thousands of miles of ocean" and the running of statutes of limitations. *876 F.2d* at 1411.

27

Mem. of P & A in Supp. of Joint Mot. for Approval of Dismissal Without Prejudice of Putative Class Action

28                                          16

2183137

PMOD 10341

1   least a strong possibility of prejudice from the dismissal because of the running of [statutes of

2   limitation] and the deficiencies in communications among thousands of islands scattered over

3   thousands of miles of ocean." *Id.* at 1411.

4       The *Diaz'* court's requirement of notice for pre-certification dismissal thus turned on the

5   peculiar facts of that case involving a putative class of Micronesian residents living scattered

6   throughout island nations.  Subsequent district court decisions in the Ninth Circuit that have

7   reviewed pre-certification individual settlements have found that notice was not required under

8   the facts of those cases.

9       For instance, in *Preferred MSO of America-Austin LLC v. QuadraMed Corp.*, 85 F. Supp.

10  2d 974, 975 (C.D. Cal. 1999), the plaintiff brought a putative class action suit alleging various

11  violations of the federal Y2k Act.  Pursuant to the Y2k Act's mandatory pre-suit mediation

12  provision, the defendant immediately moved to stay the case pending mediation.  The plaintiff

13  objected to pre-certification mediation of class claims, arguing that it could prejudice absent class

14  members.  The district court disagreed and ordered mediation.  The court stated that the parties

15  could reach an individual settlement during mediation and that notice to the class would not

16  necessarily be required: "[C]ourts have consistently held that notice to class members is required

17  only when consistent with the rule's purpose — the protection of absent class members. . . .

18  When the dismissal or settlement of a class action is without prejudice and will not prevent any

19  class member from bringing a subsequent action, courts have held that the notice provision of

20  Rule 23(e) is inapplicable." *Id.* at 979.

21      Similarly, in *Ross v. Diversified Collection Services, Inc.*, 1999 WL 672316, * 1 (N.D.

22  Cal. Aug. 23, 1999), the plaintiff brought a putative class action alleging improper debt collection

23  practices.  After discovery, and before the plaintiff had moved for class certification, the parties

24  proposed to settle the plaintiff's individual claims and to dismiss the class claims without

25  prejudice.  On the plaintiff's motion to dismiss the class claims without prejudice, the court held:

26  "Because I am clearly satisfied that there has been no abuse of the class action device and no

27

28  Mem. of P & A in Supp. of Joint Mot. for Approval of Dismissal Without Prejudice of Putative Class Action

                                    17

2183137                                                    **PMOD 10342**

1  prejudice to absent putative class members, I approve the proposed settlement and dismissal of

2  the class claims without a certification determination or notice to the class under Rule 23(e)."[13]

3  **B. The Proposed Settlement is Not the Result of Collusion Nor Does it Present**
   **Potential Prejudice to the Putative Class; The Dismissal Should Therefore Be**
4  **Approved Without Requiring Notice to Putative Class Members.**

5  **1. The Dismissal Without Prejudice of Putative Class Claims Should be**
6  **Approved.**

7  *Diaz* identifies three tests to be met in approving a pre-certification settlement. All three

8  are met here.

9  a.  The Settlement is not the Product of Collusion.

10  There are no indicia of collusion here. The individual settlement was negotiated in good

11  faith and at arms-length. The parties began earnest settlement discussions only after the

12  development of facts in discovery suggesting the improbability of class certification and after

13  several Court rulings that demonstrated there were significant impediments to class certification,

14  including the prospect of joinder of almost 500 present and former Riso dealers.[14] Additionally,

15  substantial questions regarding the merits of the underlying claims more than justify the

16  settlement. Plaintiffs' discovery has led them to conclude that there are likely significant

17  deficiencies in the claims they sought to advance, *see* discussion in section 4.B.1 (3) *infra*, and

18  Plaintiffs have no desire (or obligation) to continue to press forward on claims they perceive to be

19  increasingly questionable if an opportunity for a fair informal resolution is presented.

20  _____

21  [13] Other district courts in the Ninth Circuit have held that pre-certification notice to the class was not required for
   voluntary dismissals. *See, e.g., Pressman v. American President Companies, Ltd.*, 1995 WL 705148, *1 (N.D. Cal.
22  Nov. 20, 1995) (holding that voluntary dismissal without settlement did not require class notice; "based on the
   minimal media coverage or publicity regarding this litigation, among other factors, there are no facts or
23  circumstances presented by this case which indicate that potential class members have, to their detriment, refrained
   from filing suit in reliance upon the pendency of the case.").

24  [14] Absent any contrary evidence, a court may rely upon counsel's representation that the settlement is not the product
   of collusion. *E.g., Soskel v. Texaco, Inc.*, 94 F.R.D. 201, 203 (C.D.N.Y. 1982) ("Without any evidence to the
25  contrary, a court may accept as sufficient counsels' representations that there has been no collusion or bad faith
   underlying their motivation in dismissing the class claims. . . . In the cases at hand, in addition to the representations
26  of counsel, the nature of the final agreement itself negates the possibility that the settlement is the product of
   collusion.").

27

   Mem. of P & A in Supp. of Joint Mot. for Approval of Dismissal Without Prejudice of Putative Class Action

28                                                    18

1    The *de minimis* settlement amounts also refute any potential claim of collusion. The

2    individual Plaintiffs are receiving only a portion of what they originally claimed were their actual

3    damages associated with their dispute with RPSI regarding the purchase of generic supplies from

4    Western Duplicating. Plaintiffs' counsel are receiving only a fraction of the almost $3 million

5    dollars in attorneys' fees, expert witness fees, and other litigation costs incurred in the

6    prosecution of this case. *See* Grob Decl., at ¶ 20. There can be no assertion that the small

7    amounts paid by Defendants will deplete any fund available for (albeit highly unlikely) claims

8    that could be asserted by putative class members. The Defendants are settling only to avoid the

9    costs and expenses of continued litigation, and to resolve whatever inherent risks of litigation

10   might be presented by the claims of the individual Plaintiffs against their single dealer, RPSI.

11          b.   The Settlement Will Not Prejudice the Putative Class Members

12   There has been no publicity in this case that could have caused absent putative class

13   members to rely upon the prosecution of this action. *Diaz*, 875 F. 2d at 1408. A nationwide

14   Lexis-Nexis search revealed only two news articles discussing this case, and both articles were

15   over three years old from two local newspapers in Sacramento and Modesto, where either the

16   lawsuit or the named Plaintiffs are located. *See* news articles dated April 10, 1998 and

17   September 27, 2000, attached as Exhibits 5-A and 5-B to the Declaration of H. Oestreicher

18   (Exhibit 5 hereto).

19   Furthermore, unlike *Diaz*, there has been no attempt by other putative class members to

20   intervene in this action. Early in the case, and again thereafter, Plaintiffs represented to the Court

21   that they would "soon" be joining other schools as party plaintiffs. *See* January 25, 2000 Joint

22   Status Conf. Report at 2: 12-14 ("Plaintiffs intend to amend the pleadings to add additional

23   representative plaintiffs from geographically diverse areas of the country and/or to add additional

24   Riso dealer defendants in the near future."); November 28, 2000 Joint Status Conf. Report at 3:

25   2-4 (same representation). Although Plaintiffs made these representations with the best of

26   intentions, to Plaintiffs' surprise, and despite their repeated efforts to find other similarly situated

27

Mem. of P & A in Supp. of Joint Mot. for Approval of Dismissal Without Prejudice of Putative Class Action

28                                                   19

**PMOD 10344**

1    schools to join them, Plaintiffs' counsel were unable to locate any additional schools or school

2    districts to serve as named Plaintiffs in this action. Grob Decl. at ¶¶ 10-13. Thus, no additional

3    representative plaintiffs were ever joined. Additionally, no counsel for potential plaintiffs have

4    ever contacted Plaintiffs' counsel seeking information or wishing to discuss similar claims. *Id.* at

5    ¶ 14.

6          c.   The Settlement Does Not Sacrifice Putative Class Interests in Order to Further the Interests of the Named Plaintiffs or Counsel.

7

8        As described above, this has been a hard-fought case, involving nearly four years of

9    protracted motion practice and extensive discovery. The case has been vigorously pursued by

10   Plaintiffs' counsel, but, as sometimes happens, the case did not turn out to be the case that

11   Plaintiffs initially imagined. Plaintiffs have been unable to find evidence of any alleged

12   misconduct extending beyond their own relationship with their individual Riso dealer in

13   connection with a single generic supplier. In short, the facts and circumstances that propelled

14   them to initiate these proceedings either no longer exist or have failed to materialize as

15   anticipated. For example:

16      • Plaintiffs filed this action believing that there was a "standard" "uniform" maintenance agreement used by all Riso dealers. Plaintiffs have discovered that the maintenance agreement used by RPSI in 1997 was not used by other dealers; Plaintiffs believe that this fact seriously undercuts any theory that RPSI's maintenance agreement was the product of a conspiracy between RPSI and Riso.

17

18

19      • Similarly, Plaintiffs have discovered that there is considerable variation in the language of maintenance agreements amongst Riso dealers, presenting Plaintiffs with a substantial burden in showing that the maintenance agreements were the product of a conspiracy. The evidence demonstrates that very few dealers had maintenance agreement language similar to RPSI's.

20

21

22      • Plaintiffs have discovered that the language used by Riso in its OEM warranty to dealers is not the same as the language in the 1997 RPSI maintenance agreement; the language in Riso's OEM warranty is not objectionable, but only provides that Riso will not pay for damage **caused** by third-party supplies, service, or attachments.

23

24

25      • Plaintiffs have discovered that Riso does not issue an OEM warranty to end-users (other than to customers of Riso's 23 branch offices).

26      • Plaintiffs have discovered that the OEM warranty issued by Riso's branch offices to end-users was not, and is not objectionable; [Some branch warranties even expressly provided that it was *not* a condition of the warranty that the buyer use

27

28

2183137

**PMOD 10345**

only Riso authorized supplies.] Weil Decl. Exhibit 2 hereto at ¶9, and Riso Branch Warranty attached thereto as Exhibit 2-A.

- The named Plaintiffs were never issued *any* warranties — let alone warranties in some "standard form," based on Riso's Dealer Agreement; MCS and SUSD received five year maintenance agreements in what is RPSI's own unique formulation.

- The named Plaintiffs' particular Riso dealer, RPSI, is a unique dealer within the Riso distribution system, in that it is a "Riso-only" dealer, thus undermining Plaintiffs' claims of typicality and adequacy of representation. Weil Decl. Exhibit 2, at ¶¶ 5-6; Stoessel Decl. Exhibit 3, at ¶¶ 6-7

- Plaintiffs have discovered that the maintenance agreement used by RPSI in 1997 was not "handed down" by Riso, Inc., but had actually been used by RPSI for almost a decade prior, and originated not with Riso, but with a reprographic competitor, Gestetner. Stoessel Decl. at ¶¶ 8-12.

- Even RPSI itself changed its maintenance agreement in 1998 so that it no longer uses the allegedly coercive statements; from 1998 forward, RPSI's language has included a "causation" requirement, i.e., the generic supply must "cause" abnormal, frequent calls or service problems." Stoessel Decl. at ¶ 13.

- The lack of uniformity of maintenance agreements; Riso's lack of involvement in the language of the maintenance agreements; the absence of a uniform dealer to end-user warranty; the fact that even Riso's OEM warranty to dealers and Riso's OEM warranty to branch customers is unobjectionable — all tend to refute any conspiratorial effort of the sort Plaintiffs envisioned when they brought this action.

- Plaintiffs have discovered that their belief that a conspiracy was launched at an October, 1994 meeting of Riso's Dealer Advisory Council is refuted by the fact that the restraints of trade they had believed were imposed as a result of that meeting had actually been part of Riso's Dealer Agreement since the time Riso first started doing business in 1987. Additionally, Plaintiffs have discovered no action that was taken subsequent to the 1994 meeting that could realistically be attributed to that meeting. These facts also tend to refute any conspiratorial effort of the sort Plaintiffs envisioned when they brought this action.

- Plaintiffs' review of Riso's documents has revealed that even the "core documents" that they have brought to this Court's attention as evidencing a "conspiracy" in fact all evidence that Riso's "plan" for dealing with generic supply competition was actually to set up a "bid desk" to provide bid support to Riso dealers. *See* Exhibits A and B to the Declaration of Mark J. Tamblyn in Support of Pltfs' Mem. in Opp. to Def.'s Mot. for Partial Summ. Judg., filed April 11, 2002.

- Plaintiffs, through a study conducted by their expert, Mr. Wagner, have discovered that there is a readily available supply of Independent Service Organizations ("ISOs") on hand to provide service to Riso machines. *See* December 27, 2001, Wagner Supp. Report at Tab D, Schedule 1. Dr. Rubinfeld followed up on the Wagner study, and using the same methodology, found the prevalence of ISOs to be even greater. January 18, 2003, Rubinfeld Supp. Report, at ¶¶ 8-10. Plaintiffs recognize that this finding significantly impacts Plaintiffs' allegations regarding

the tying of service and supplies. The availability of alternative service undercuts any theoretical coercive power a Riso dealer might be able to assert.

- Although Plaintiffs dropped their section 2 monopolization claims after the Court's July 10, 2002 ruling, Defendants were also prepared to demonstrate a number of potentially insurmountable problems with those claims. For example:

  - The market definition Plaintiffs wished to advance (a digital duplicator only market) was severely undermined by the cross-competition with other reprographic machines;

  - Riso lacks a key indicia of market power, the ability to raise prices, in that Riso's wholesale supplies pricing to its dealers has not been increased since 1995 (inks) and 1996 (masters). Weil Decl. at ¶ 15.

- Plaintiffs have reviewed the terms of Riso's Dealer Agreement, compared the terms Plaintiffs found objectionable with the terms of other reprographic manufacturer/distributors' Dealer Agreements, and found that Riso's terms are no more restrictive than that of most others, and in fact are less than or equally restrictive than many. Rubinfeld Report at ¶¶ 19-21. Plaintiffs have concluded that there are substantial obstacles to showing that the provisions of Riso's Dealer Agreement are objectionable.

- Additionally, in this case, the named Plaintiffs are potentially subject to a host of disabling defenses, including:

  - Stockton's purchasing agent testified that her school district was not "coerced" by RPSI in any way. 10/3/01 Westmoreland Dep. at 314: 12-21.

  - Stockton's bid terms, which provide that they are incorporated by reference in its contract with RPSI, provide that it may use generic supplies. 10/3/01 Westmoreland Dep. at 152: 19 -154: 21. This provision — although never raised by Stockton with RPSI — would have insulated it entirely from RPSI's alleged threats.

  - When it was displeased with RPSI, Stockton purchased a competitive Ricoh brand digital duplicator — thereby demonstrating that it was not "locked-in" to the Riso products. 10/3/01 Westmoreland Dep. at 283: 13 - 284: 6.

  - Stockton and Modesto would both only accept bids from "franchised dealers," precluding ISOs from bidding. Westmoreland Dep. at 278-79; Louis Dep. at 110-12. Thus both schools have a substantial burden to overcome in order to demonstrate that they were harmed by the alleged restraints on ISOs, since neither demonstrated an inclination to do business with them. *See Estate of Mahoney v. R.J. Reynolds Tobacco Co.*, 204 F.R.D. 150, 154-55 (S.D. Iowa 2001) (class certification denied where evidence supported that named plaintiffs would not have acted differently if they had been provided with information allegedly concealed by defendant).

PMOD 10347

1    After extensive discovery and research, Plaintiffs acknowledge they would face

2    substantial difficulties in obtaining certification of a class action as alleged in the Complaint.

3    This case involves hundreds of dealers and hundreds of local markets.  Elements of every claim

4    in this case, such as each dealer's knowledge of and participation in the conspiracy — including

5    not only the terms of each dealer's maintenance agreement, but also individual dealer verbal or

6    other conduct[15] — must be proved for each dealer in each of these local markets.  These

7    individual inquiries, amounting to hundreds of mini-trials, would swamp any common issues and

8    render the suit unmanageable.  *E.g., Columbia Health Servs. of El Paso, Inc. v. Columbia/HCA*

9    *Healthcare Corp.*, 1997-1 Trade Cas. ¶ 71,694, 1996 WL 812934 (W.D. Tex. Dec. 23, 1996).

10   It is also well recognized that vertical conspiracies such as that alleged here are generally

11   not appropriate for class treatment.  *E.g., In re Fine Paper Antitrust Litigation*, 685 F.2d 810 (3d

12   Cir. 1982); *Smith v. Toyota Motor Sales*, 1977-1 Trade Cases ¶ 61,252, 1977 WL 1352 (N.D. Cal.

13   1977).  *See also Colburn v. Roto-Rooter Corp.*, 78 F.R.D. 679, 681-83 (N.D. Cal. 1978) (denying

14   certification on plaintiff's tying claim).

15   Plaintiffs carefully evaluated the prospects of pursuing an injunctive-relief-only case, as

16   the *Illinois Brick* bar does not apply to injunctive claims.  *In re Beef Industry Antitrust Litigation*,

17   *600 F.2d 1148, 1167 (5th Cir.1979)*.  However, Plaintiffs now believe that injunctive relief is

18   unnecessary.  As a substantive matter, there is no evidence of a class-wide problem to be

19   remedied.  To the extent there may be isolated incidents of dealer involvement in conduct similar

20   to that complained of here, Plaintiffs believe the letter to the dealers (set forth in Exhibit F-1 to

21   the Settlement Agreement) will address that.  And, if not, an individual contract action by the

22   aggrieved customer against its respective dealer is superior to the class action approach as a

23   means of handling such disputes.  Moreover, an injunction, even if granted, would not be

24

25   ---
     [15] Language in the service agreements is not enough.  Plaintiffs recognize that the language in RPSI 's service
     agreement had benignly been in place for many years, and that language did not deter them from purchasing Western
26   Duplicating's supplies in 1997.  It was only the advent of RPSI's alleged coercive statements that raised the "generic
     supply issue" with MCS and SUSD.
27
     Mem. of P & A in Supp. of Joint Mot. for Approval of Dismissal Without Prejudice of Putative Class Action
28

1   effective unless the dealers themselves could be enjoined, and that could not occur without their

2   being joined as defendants.  Joinder for that purpose, however, would again be self-defeating for

3   class certification purposes due to the same manageability problem discussed above.

4       **2.  The Dismissal Without Prejudice Should be Approved Without Notice to**

5          **Putative Class Members**

6         a.  The Facts and Circumstances of this Case Weigh Heavily in Favor of
            Approving the Dismissal of this Putative Class Action Without Notice to

7           Putative Class Members.

8          The parties have not agreed to any "structural relief" that would somehow prejudice the

9   class, nor has there been any prejudicial trade-off between structural relief and compensatory

10  damages.  Plaintiffs sought primarily damages in this case and, in the settlement, are recovering

11  money and Riso supplies.  As described above, Riso has agreed to send advisory letters to dealers

12  and to make a modest clarification in the Dealer Agreement.  These actions do not constitute

13  structural relief, could not conceivably prejudice absent putative class members and are intended,

14  in any case, to address the specific, alleged incidents between Plaintiffs and their dealer.

15         There is no reason to believe that even a single putative class member has refrained from

16  filing suit because it had knowledge of the pending suit.  Plaintiffs' own attempts to locate

17  additional named plaintiffs failed.  Grob Decl. at ¶¶ 10-13.  There has been an utter lack of

18  publicity that would cause any putative class member to refrain from acting.  Neither Plaintiffs

19  nor Defendants are aware of a single individual putative class member that has or could have

20  refrained from filing their own action because of the pendency of this suit.  Because of the

21  inherent factual and legal impediments to class certification, it is appropriate to resolve this case

22  on an individual basis and to dismiss the class claims without prejudice and without notice to the

23  putative class.  Based upon the results of the parties' discovery, there is no cognizable putative

24  class that has an interest in the prosecution of this action.  For these reasons, the Court should

25  approve the requested dismissal of this putative class action and without requiring notice to the

26  putative class members.

27  Mem. of P & A in Supp. of Joint Mot. for Approval of Dismissal Without Prejudice of Putative Class Action

28

2183137

PMOD 10349

b.  The Proposed Amendment to Fed. R. Civ. P. 23, effective December 1, 2003, makes clear that Notice to Putative Class Members Would Not be Required Here.

Finally, no notice of settlement is necessary here for the putative class members, as they will not be bound by the settlement. This is confirmed by the recent amendment to Federal Rule of Civil Procedure 23(e). The new amendment to Rule 23(e) becomes effective on December 1, 2003, absent contrary Congressional action. The amendment specifically provides that court approval of settlements is only necessary for a *certified* class:

> (A) The court must approve any settlement, voluntary dismissal, or compromise of the claims, issues, or defenses of a *certified* class.
> (B) The court must direct notice in a reasonable manner to all class members *who would be bound* by a proposed settlement, voluntary dismissal, or compromise.

Proposed Amendment to FED. R. CIV. P. 23(e)(1)(A), (B) (emphasis added).

Additionally, the Committee Note to proposed Rule 23 states as follows:

> *Subdivision (e)(1)(B) carries forward the notice requirement of present Rule 23(e) when the settlement binds the class through claim or issue preclusion; notice is not required when the settlement binds only the individual class representatives.* Notice of settlement binding on the class is required either when the settlement follows class certification or when the decisions on certification and settlement proceed simultaneously.

Committee Note to Proposed FED. R. CIV. P 23(e) (emphasis added).

This new amendment and its Committee Note resolves any question as to whether notice is required in situations when there is no certified class. Accordingly, in this case, where a class has never been certified (and additionally, with the previously discussed significant obstacles to certification), notice of an individual settlement to putative class members is not necessary.[16]

---

[16] Moreover, when the new Rule 23 takes effect, retroactive application of the amended Rule to this case will be appropriate. Courts have long held that an amendment to the Federal Rules of Civil Procedure applies to cases pending before the effective date of the amendment unless the court concludes that "their application would not be feasible or would work an injustice." *Automobile Ins. Co. of Hartford, Conn. v. Springfield Dyeing Co.*, 109 F.2d 533, 536 (3d Cir. 1940). In the particular context of Rule 23, courts have often applied amendments to the Rule in cases pending before the amendment's effective date. *See, e.g., Richardson Electronics, Ltd. v. Panache Broadcasting of Pennsylvania, Inc.*, 202 F.3d 957, 957-58 (7th Cir. 2000) (new Rule 23(f), authorizing interlocutory

Mem. of P & A in Supp. of Joint Mot. for Approval of Dismissal Without Prejudice of Putative Class Action

25

2183137

PMOD 10350

## V. CONCLUSION

For the foregoing reasons, Plaintiffs and Defendants respectfully request the Court to approve the dismissal of this action with prejudice as to the claims of the individual named Plaintiffs and without prejudice as to the claims of the putative class members. The parties request leave to effectuate a closing of their settlement and for Plaintiffs' counsel to execute and file the Motion for Dismissal in the form of Exhibit B to the Settlement Agreement (Exhibit 1 hereto), upon which final judgment can thereafter be entered by this Court.

---

appeals of class certification orders, applies to cases pending before Rule's effective date; "[g]enerally a new procedural rule applies to the uncompleted portions of suits pending when the rule became effective."); *Harris v. Jones*, 41 F.R.D. 70, 74 (D. Utah 1966) (applying new amendments to Rule 23, including new rules relating to notice, to case pending before effective date of amendments).

Mem. of P & A in Supp. of Joint Mot. for Approval of Dismissal Without Prejudice of Putative Class Action

26

2183137

PMOD 10351

1

2

DATED: October 17, 2003

3

4                                              Respectfully submitted,

5                                              KRONICK, MOSKOVITZ, TIEDEMANN &
                                               GIRARD, P.C.

6

7                                              By _____
                                                  MICHAEL A. GROB
8                                                 Attorneys for Plaintiffs
                                                  MODESTO CITY SCHOOLS AND
9                                                 STOCKTON UNIFIED SCHOOL DISTRICT
                                                  400 Capitol Mall, 27th Floor
                                                  Sacramento, CA 95814-4417

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25   Mem. of P & A in Supp. of Joint Mot. for Approval of Dismissal Without Prejudice of Putative Class Action

                                                  27

26   2183137

27

PMOD 10352

1

2                                    THOMPSON COBURN LLP

3
                         By _____
4                            EDWIN G. HARVEY, ESQ.
                             Attorneys for Defendant
5                            RISO, INC.
                             *Pro Hac Vice*
6                            One U.S. Bank Plaza
                             St. Louis, Missouri 63101-1693
7                            Telephone: (314) 552-6000

8                            EUGENE C. GRATZ - BAR NO. 74490
                             LAW OFFICES OF
9                            EUGENE C. GRATZ
                             301 Forest Avenue - Suite 200
10                           Post Office Box 4197
                             Laguna Beach, CA 92652-4197
11                           Telephone: (949) 497-3234
                             Local Counsel for Defendant
12                           RISO, INC.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27
   Mem. of P & A in Supp. of Joint Mot. for Approval of Dismissal Without Prejudice of Putative Class Action
28
                                    28

   2183137

                                                          PMOD 10353

1

THOMPSON COBURN LLP

2

3  By _____

4    EDWIN G. HARVEY, ESQ.
    Attorneys for Defendant
    RISO KAGAKU CORP.

5    *Pro Hac Vice*
    One U.S. Bank Plaza

6    St. Louis, Missouri 63101-1693
    Telephone: (314) 552-6000

7

8    EUGENE C. GRATZ - BAR NO. 74490
    LAW OFFICES OF

9    EUGENE C. GRATZ
    301 Forest Avenue - Suite 200

10    Post Office Box 4197
    Laguna Beach, CA 92652-4197

11    Telephone: (949) 497-3234
    Local Counsel for Defendant

12    RISO KAGAKU CORP.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

Mem. of P & A in Supp. of Joint Mot. for Approval of Dismissal Without Prejudice of Putative Class Action

28

29

2183137

**PMOD 10354**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DORSEY & WHITNEY, LLP

By _Richard m. Clinton_
RICHARD M. CLINTON, ESQ.
Attorneys for Defendant
RISO KAGAKU CORP.
*Pro Hac Vice*
U.S. Bank Centre
1420 Fifth Avenue, Suite 3400
Seattle WA 98101

PMOD 10355

2183137

1

2                                        DUNCAN, BALL & EVANS, P.C.

3

                              By _____
4                              JERRY M. DUNCAN
                               David Pollock
5                              Attorneys for Defendant
                               RPSI ENTERPRISES, INC.,
6                              d/b/a RISO PRODUCTS OF
                               SACRAMENTO, INC.
7                              641 Fulton Avenue, Second Floor
                               Sacramento, CA 95825
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

PMOD 10356

1

## CERTIFICATE OF SERVICE

I hereby certify and declare that on October 20 2003, I caused the following to be served by United States Mail on the below parties. I declare under penalty of perjury that the foregoing is true and correct.

*Cathy L. Miller*

KRONICK, MOSKOVITZ, TIEDEMANN &
GIRARD, P.C.
MICHAEL A. GROB
Attorneys for Plaintiffs,
MODESTO CITY SCHOOLS
AND STOCKTON UNIFIED SCHOOL DISTRICT
400 Capitol Mall, 27th Floor
Sacramento, CA 95814-4417

THOMPSON COBURN LLP
EDWIN G. HARVEY, ESQ.
Attorneys for Defendants
RISO, INC. and RISO KAGAKU CORP.
*Pro Hac Vice*
One U.S. Bank Plaza
St. Louis, Missouri 63101-1693
Telephone: (314) 552-6000

EUGENE C. GRATZ - BAR NO. 74490
LAW OFFICES OF
EUGENE C. GRATZ
301 Forest Avenue - Suite 200
Post Office Box 4197
Laguna Beach, CA 92652-4197
Telephone: (949) 497-3234
Local Counsel for Defendants
RISO, INC. and RISO KAGAKU CORP.

DORSEY & WHITNEY, LLP
RICHARD M. CLINTON, ESQ.
Attorneys for Defendant
RISO KAGAKU CORP.
*Pro Hac Vice*
U.S. Bank Centre
1420 Fifth Avenue, Suite 3400
Seattle WA 98101

Mem. of P & A in Supp. of Joint Mot. for Approval of Dismissal Without Prejudice of Putative Class Action

1

218313

**PMOD 10357**