**FILED**

NOV 17 2003

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

BY _____
    DEPUTY CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----ooOoo----

MODESTO CITY SCHOOLS, et al.,

       Plaintiffs,

   v.

RISO KAGAKU CORPORATION, et al.,

       Defendants.

NO. CIV. S-99-2214 FCD/GGH

MEMORANDUM AND ORDER

----ooOoo----

This matter is before the court on joint motion by plaintiffs Modesto City Schools and Stockton Unified School District ("plaintiffs") and defendants Riso Kagaku Corporation ("RKC"), its wholly-owned subsidiary, Riso, Inc. ("Riso"), and one of Riso's dealers ("defendants"), for court approval of the voluntary dismissal with prejudice of all individual claims by plaintiffs and dismissal without prejudice as to claims of putative class members.

1

PMOD 10529

2/06

BACKGROUND[1]

1. **The Parties**

Defendant RKC is a Japanese corporation headquartered in Tokyo, Japan. RKC manufactures digital duplicators known as Risographs, as well as spare parts, inks, and masters for use therein. RKC manufactures these products in Japan.

Riso is RKC's wholly-owned subsidiary. Riso is headquartered in Danvers, Massachussets. RKC sells and markets its products in the United States exclusively through Riso and through several hundred dealers. RPSI is one such dealer, with a sales territory in the central valley of California.

Plaintiffs and the class they purport to represent are end-users of RKC's products. More specifically, they own, lease, and/or operate Risographs that they purchased through Riso dealers in the United States.

2. **The Complaint**

On November 5, 1999, plaintiffs filed a ten-count suit on behalf of a putative class of "public schools and/or public school districts in the United States that have purchased or leased Risographs on or after October 21, 1999, and that have purchased maintenance or repair services or inks and masters supplies from Riso or its dealers." (Comp. ¶ 61.) Plaintiffs' complaint alleged ten claims including antitrust violations, unfair competition and unfair or deceptive acts or practices arising out of defendants' alleged disparagement of non-Riso

---

[1] The Court derived all facts referenced in this order from the parties' jointly-filed Memorandum of Points and Authorities in Support of Joint Motion for Approval of Dismissal Without Prejudice of Putative Class Action ("Motion").

supplies. Plaintiffs allegedly suffered harm as a result of defendants' monopolization of the "services market" by refusing to sell Riso replacement parts to independent service organizations ("ISO's") and of the "supplies market" by coercing service customers to use only Riso supplies. (Comp. ¶¶ 50-51.) Plaintiffs also alleged that defendants limited intra-brand competition in the sale of supplies and services to the detriment of consumers and unlawfully tied sales of Riso equipment to the dealers' purchases of Riso supplies. (Comp. ¶¶ 52, 161.)

3. **First Amended Complaint**

On February 8, 2003, defendant Riso filed a motion for partial summary judgment on the pleadings. Riso asserted that the putative class claims were barred by Illinois Brick v. Illinois, 431 U.S. 720 (1977), because the putative class members were indirect purchasers. Under Illinois Brick, Riso argued, the putative class could not proceed without joinder of the approximately 500 absent Riso dealers, and joinder of those defendants would render any class treatment unmanageable. By order dated March 28, 2002, the court found that plaintiffs' claims contravened Illinois Brick and directed plaintiffs to seek leave to amend the complaint.

Consistent with the court's order, plaintiffs successfully filed their first amended complaint on November 15, 2002. The first amended complaint asserted only four counts, all based on an alleged conspiracy. Plaintiffs dropped all monopolization and conspiracy to monopolize claims as well as all state law claims.

4. **Class Certification**

On January 25, 2002, prior to the filing of Riso's motion

3

PMOD 10531

for partial summary judgment, plaintiffs had filed a motion for class certification. Plaintiffs sought certification of a nationwide class asserting claims as set forth in the *original* complaint. The court set a schedule for determination of the class certification issue and provided for designation of experts and provision of expert reports. However, due to defendants' intervening Illinois Brick motions, the court never heard plaintiffs' class certification motion.[2]

In light of the court's rulings on the Illinois Brick motions and after review of the experts' reports and other evidence produced during discovery, plaintiffs now express reservations regarding the feasibility of class certification. Specifically, defendants' expert opined that plaintiffs' remaining conspiracy claim did not involve questions common to all class members, there were over 30 significant non-common issues, named plaintiffs were not typical of the putative class, and potential problems existed regarding the adequacy of plaintiffs as class representatives.[3]

//

5.   **Proposed Settlement**

---

[2]   The hearing on plaintiffs' motion was scheduled for April 5, 2003. The court continued the hearing several times and then removed the item from the calender as a result of the rulings on defendants' Illinois Brick motions.

[3]   The reports prepared by plaintiffs' experts are of little value because they focused on the monopolization claims in the original complaint that plaintiffs later dropped. Plaintiffs' counsel have used defendants' expert, Dr. Daniel Rubinfeld, in the past and attempted to retain him in this case. As a consequence, plaintiffs state that "while it is certainly expected that opposing experts will reach differing opinions, plaintiffs' counsel have good reason to take seriously Dr. Rubinfeld's opinions and to carefully weigh the impact his opinions may carry." (Mot. at 11, N. 8.)

4

In addition to the class certification problems, the discovery process revealed to plaintiffs that some of the factual assumptions underlying plaintiffs' allegations were mistaken.[4] With this new information about the viability of their claims, plaintiffs determined to pursue settlement. As for defendants, they continue to deny that plaintiffs' claims have any merit. However, defendants believe settlement is in their best interest to avoid incurring substantial additional litigation costs. As a result, after four years of hard-fought litigation, which included extensive discovery and intense motion practice, parties reached a settlement.

Under the terms of the settlement agreement, all of plaintiffs' individual claims would be dismissed with prejudice. Claims of putative class members would be dismissed without prejudice. Parties now seek court approval of the settlement as required under Federal Rule of Civil Proc. 23(e). Parties request that the settlement be approved without requiring notice to putative class members.

**STANDARD**

Federal Rule of Civil Procedure 23(e) provides that "[a] class action shall not be dismissed or compromised without the approval of the court, and notice of the proposed dismissal or compromise shall be given to all members of the class in such

---

[4] For example, plaintiffs believed that all Riso dealers used a standard maintenance agreement prescribed by Riso. Plaintiffs discovered that the maintenance agreement used by their Riso dealer, RPSI, was not used by other dealers and that Riso did not provide a standard maintenance agreement for use by its dealers. This, and other discovery findings, substantially undermined plaintiffs' conspiracy claims.

5

manner as the court directs." The Ninth Circuit has interpreted the rule to require court approval of class actions even where the class has not yet been certified. Diaz v. Trust Territory of the Pacific Islands, 876 F.2d 1401, 1408 (9th Cir. 1989). However, the standard of review for pre-certification dismissals is less stringent than for post-certification dismissals. Id. (finding that the court need not perform the same substantive oversight required in post-certification context because dismissal will not have res judicata effect on absent class members). The inquiry into pre-certification dismissals should focus on possible collusion or prejudice to the absent class members. Id.

## ANALYSIS

### I. Court Approval of the Dismissal

The Ninth Circuit has held that the district court, in determining whether to approve pre-certification dismissal of class claims, should inquire into whether the dismissal is the product of collusion and whether it would cause prejudice to absent putative class members from:

> 1) class members' possible reliance on the filing of the action if they are likely to know of it either because of publicity or other circumstances, 2) lack of adequate time for class members to file other actions, because of a rapidly approaching statute of limitations, and 3) any settlement or concession of class interests made by the class representative or counsel in order to further their own interests.
> Id.

### 1. Collusion

In this case, the court finds no evidence of collusion. The parties vigorously litigated this matter for four years. In

6

their joint motion for approval of the dismissal, the parties aver that they negotiated the settlement in good faith and at arms length. Moreover, the substance of the settlement does not raise the specter of collusion. Indeed, plaintiffs' recovery is minimal and reflects an amount proportionate to their individual claims.

**2.  Prejudice**

The likelihood that absent class members relied on the filing of this action is remote. Only two newspaper articles covered the litigation over its four-year history. No absent class members attempted to intervene, and, despite repeated efforts, plaintiffs' counsel was unable to located any similarly situated class members to join the action as named plaintiffs.

Further, the class claims are dismissed without prejudice, and potential absent class members are free to pursue their claims individually. Because the statute of limitations was tolled during the pendency of this action, putative class members' claims should not be time-barred as a result of this action.[5]

---

[5]  After <u>American Pipe</u>, the running of the statute of limitations is less of a concern, although it is still a factor. <u>Diaz</u>, 876 F.2d at 1410 (noting that where there is a short time from dismissal until expiration of the statute of limitations, class members may hear of dismissal too late.) Conceivably, any class member whose individual claims were approaching the four-year statute of limitations when this action was filed could be prejudiced if they hear about dismissal of this action too late to file an individual claim. However, any such prejudice is speculative at best. Parties note that any individual claims could allege a continuing violation as did the plaintiffs in this case. Moreover, the parties allege that they are aware of no putative class members relying on this case. As noted above, no plaintiffs attempted to intervene, and after diligent efforts, plaintiffs could locate no class members to join as named
(continued...)

Lastly, there is no indication that any class interests were conceded or settled by the class representative or counsel in order to further their own interests. The negotiations that produced this settlement grew out of plaintiffs' recognition that class certification was unlikely in light of evidence that other school districts were not similarly situated to the named plaintiffs.[6] Under these circumstances, the court can finds no indication that settlement of the individual claims and dismissal of potential class claims undermines putative class members' interests in any way. The individual settlement will have no legally binding effect on putative class members, and ordering plaintiff to continue to pursue class certification merely would force both parties to incur greater costs.

## II. Notice to Putative Absent Class Members

Rule 23(e) also requires that "notice of the proposed dismissal or compromise shall be given to all members of the class in such manner as the court directs." However, notice to the class of pre-certification dismissal is not required in all circumstances.[7] <u>Diaz</u>, 876 F.2d at 1408. Notice to class

---

[5](...continued)
plaintiffs.

[6] The parties' joint motion explains that "the case has been vigorously pursued by plaintiff's counsel, but, as sometimes happens, the case did not turn out to be the case plaintiffs initially imagined." (Mot. at 20.) Plaintiffs go on to describe the facts that "no longer exist or have failed to materialize as anticipated." (Mot. at 20.)

[7] A proposed amendment to Fed. R. Civ. P. 23, effective December 1, 2003, appears to eliminate the notice requirement when dismissal occurs prior to class certification. The comments to the proposed Rule 23 state: ". . .[N]otice is not required when the settlement binds only the individual class
(continued...)

8

members is required only when consistent with the Rule's purposes: 1) to protect defendants by preventing a plaintiff from appending class allegations to the complaint in order to extract a more favorable settlement, 2) to protect the putative class from objectionable structural relief, and 3) to protect the class from prejudice it would suffer if class members refrained from filing suit because of knowledge of the pending action. Id. at 1409.

First, it does not appear that plaintiffs appended the class claims merely to enhance their own bargaining power. As noted above, the parties have vigorously litigated this matter and conducted extensive discovery on the issue of class certification. While plaintiffs concede that class certification appears unlikely in light of the evidence produced during discovery, there is no indication that the class claims were frivolous when filed. To the contrary, the class allegations were not boiler plate and plaintiffs' zealous pursuit of discovery regarding class certification suggests that the allegations were not added to force a quick and favorable settlement. See id. (finding no evidence that "class allegations were 'boiler plate' added in an effort to get a quick, advantageous settlement for the named plaintiffs.")

The second purpose behind the notice requirement of Rule 23(e), to protect the class from objectionable structural relief,

---

⁷(...continued) representatives. Notice of settlement binding on the class is required either when the settlement follows class certification or when the decisions on certification and settlement proceed simultaneously."

is not implicated here. The settlement of plaintiffs' individual claims and dismissal without prejudice of all class claims does not provide for structural relief. Moreover, no class claims would be compromised as part of the settlement; they would be dismissed without prejudice.

The third purpose of the notice requirement is prevention of prejudice to class members who may have refrained from filing suit because of the pending class action. Here, prejudice is highly unlikely because there is no indication such class members exist. Neither party is aware of "a single individual putative class member that has or could have refrained from filing their own action because of the pendency of this suit." (Mot. at 24.) Moreover, parties both assert that "based upon the results of . . . discovery, there is no cognizable class that has an interest in prosecution of this action." (Mot. at 24.) Under these circumstances, any potential prejudice to putative class members is highly speculative.

## CONCLUSION

For the reasons set forth above, parties' joint motion for approval to dismiss plaintiffs' individual claims with prejudice is hereby granted. Parties' motion for approval to dismiss plaintiffs' individual claims without prejudice and without notice to the putative class is GRANTED.

IT IS SO ORDERED.

DATED: November 17, 2003.

FRANK C. DAMRELL, Jr.
UNITED STATES DISTRICT JUDGE

PMOD 10538

daw

United States District Court
for the
Eastern District of California
November 18, 2003

* * CERTIFICATE OF SERVICE * *

2:99-cv-02214

Modesto City Schools

   v.

Riso Kagaku Corp

---

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Eastern District of California.

That on November 18, 2003, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office, or, pursuant to prior authorization by counsel, via facsimile.

| | |
|---|---|
| Harvey G Sanders Jr<br>PRO HAC VICE<br>Leatherwood Walker Todd and Mann<br>PO Box 87<br>300 East McBee Avenue<br>Suite 500<br>Greenville, SC  29602-0087 | MP/FCD<br><br>VC/GGH |

James T Hewitt
PRO HAC VICE
Leatherwood Walker Todd and Mann
PO Box 87
300 East McBee Avenue
Suite 500
Greenville, SC  29602-0087

James P Ulwick
PRO HAC VICE
Kramon and Graham
One South Street
Suite 2600
Baltimore, MD  21202

John Augustine Bourgeois
PRO HAC VICE
Kramon and Graham

PMOD 10539

One South Street
Suite 2600
Baltimore, MD  21202

Michael A Grob
Kronick Moskovitz Tiedemann and Girard
400 Capitol Mall
27th Floor
Sacramento, CA  95814-4417

Edwin G Harvey
Thompson Coburn
One Mercantile Center
St Louis, MO  63101-1693

Laurence G Christopher
PRO HAC VICE
Thompson Coburn
One Firstar Plaza
St Louis, MO  63101

Richard M Clinton
PRO HAC VICE
Dorsey and Whitney
US Bank Centre
1420 Fifth Avenue
Suite 3400
Seattle, WA  98101

Eugene C Gratz
Law Offices of Eugene C Gratz
PO Box 4197
Laguna Beach, CA  92652-4197

Milton D Andrews
PRO HAC VICE
Thompson Coburn
1909 K Street NW
Suite 600
Washington, DC  20006-1167

Steven M Sherman
PRO HAC VICE
Thompson Coburn
1909 K Street NW
Suite 600
Washington, DC  20006-1167

William W Ocken
Duncan Ball and Evans
641 Fulton Avenue
Second Floor
Sacramento, CA  95825

David Howard Pollock
Duncan Ball and Evans
641 Fulton Avenue
Second Floor
Sacramento, CA  95825

Jack L. Wagner, Clerk

by: Deputy Clerk

PMOD 10540