## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| GREATE AMERICAN ALLIANCE INSURANCE COMPANY, et al., <br><br> Plaintiffs, <br><br> v. <br><br> RISO, INC. <br><br> Defendant. | ) ) ) ) ) ) ) ) ) ) ) |

Consolidated    04-12260-GAO
Civil Action Nos.  04-12397-GAO

| | |
|---|---|
| RISO, INC., <br><br> Plaintiff, <br><br> v. <br><br> GREAT AMERICAN INSURANCE COMPANY, et al., <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) |

Honorable Judge George A. O'Toole, Jr.

## MEMORANDUM IN SUPPORT OF
## MOTION FOR SUMMARY JUDGMENT

GREAT AMERICAN ALLIANCE
INSURANCE COMPANY, GREAT
AMERICAN ASSURANCE COMPANY,
GREAT AMERICAN INSURANCE
COMPANY AND GREAT AMERICAN
INSURANCE COMPANY OF NEW
YORK

By its attorneys,

Richard H. Nicolaides, Jr.
Mary F. Licari
Sarah E. Eversman
BATES & CAREY LLP
191 N. Wacker Drive
Suite 2400
Chicago, IL 60606

A. Hugh Scott (BBO #449160)
Robert A. Kole (BBO #633269)
CHOATE, HALL & STEWART
Two International Place
100-150 Oliver Street
Boston, MA 02110

3972049v1

# TABLE OF CONTENTS

I.      SUMMARY OF ARGUMENT..........................................................................................1

II.     STATEMENT OF FACTS.............................................................................................2

        A.      The Great American Policies.................................................................................2

        B.      The Modesto Complaint........................................................................................3

        C.      The Consolidated Actions .....................................................................................5

III.    ARGUMENT.................................................................................................................6

        A.      Summary Judgment Standard.................................................................................6

        B.      The Method For Determining Whether An Insurer Has A Duty To Defend
                Under Massachusetts Law......................................................................................7

                1.      In General .................................................................................................7

                2.      Claims For "Personal Injury" Coverage......................................................7

        C.      Great American Had No Duty To Defend RISO, Because The Modesto
                Plaintiffs Did Not Allege, And Could Not Allege, The Common Law
                Elements Of Disparagement...................................................................................9

        D.      The "Arising Out Of" Language In The Definition Of "Personal Injury"
                Did Not Obligate Great American To Defend RISO, Where There Was No
                Possibility Of "Personal Injury" Damages Being Assessed Against RISO In
                The Modesto Action.............................................................................................12

                1.      Pursuant To The Plain Language Of The Great American Policies,
                        RISO Was Not, And Could Not Have Been, "Legally Obligated To
                        Pay Damages Because Of Personal Injury" ...............................................12

                2.      RISO's "Arising Out Of" Argument Has Repeatedly Been Rejected
                        By Courts Addressing This Precise Issue...................................................13

                3.      The Illinois Trial Court's Decision In Knoll Is Inapplicable And
                        Wrongly Decided.....................................................................................16

IV.     CONCLUSION ...........................................................................................................19

i

## TABLE OF AUTHORITIES

**Cases**

*Acosta v. Ames Dep't Stores, Inc.*, 386 F.3d 5 (1st Cir. 2004) ........................................................6

*Amtrol, Inc., v. Tudor Ins. Co., No. Civ. A.* 01-10461-DPW, 2002 WL 31194863
(D. Mass. Sept. 10, 2002) ..............................................................................................6

*Blatty v. New York Times Co.,* 728 P.2d 1177 (Cal. 1986)..........................................................10

*Boston Housing Auth. v. Atlanta Int'l Ins. Co.,* 781 F. Supp. 80 (D. Mass. 1992)............................9

*Boston Symphony Orchestra, Inc. v. Commercial Union Ins. Co.,* 406 Mass. 7 (1989) ...............11

*Dryden Oil Co. of New England, Inc. v. Travelers Indem. Co.,* 91 F.3d 278
1st Cir. 1996) ..................................................................................................................8

*Global Naps, Inc. v. Federal Ins. Co.,* 336 F.3d 59 (1st Cir. 2003) .............................................8, 9

*Hakim v. Massachusetts Insurers' Insolvency Fund,* 424 Mass. 275 (1997) .................................12

*Herbert A. Sullivan, Inc. v. Utica Mut. Ins.* Co., 439 Mass. 387 (2003)...........................................7

*Isuzu Motors Ltd. v. Consumers Union of United States, Inc.,* 12 F. Supp.2d
1035 (C.D. Cal. 1998).................................................................................................10, 11

*Knoll Pharm. Co. v. Automobile Ins. Co. of Hartford,* 152 F. Supp.2d 1026
(N.D. Ill. 2001).....................................................................................................16, 17, 18

*Massachusetts Mut. Life Ins. Co. v. Aritech Corp.,* 882 F. Supp. 190
(D. Mass. 1995)................................................................................................................6

*Microsoft Corp. v. Zurich Am. Ins.* Co., No. COO-521P, 2001 WL 765871
(W.D. Wash. July 2, 2001)..............................................................13, 14, 15, 16, 19

*MiGi, Inc. v. Gannett Massachusetts Broadcasters, Inc.,* 25 Mass. App.
Ct. 394 (1988) .................................................................................................................10

*Motorists Mut. Ins. Co. v. National Dairy Herd Improvement Assoc., Inc.,*
750 N.E.2d 1169 (Ohio Ct. App. 2001).........................................................................16

*New England Tea & Coffee Co. v. Fireman's Fund Ins. Co.,* 54 Mass.
App. Ct. 903 (2002) .........................................................................................................9

*New York Times v. Sullivan,* 376 U.S. 254 (1964) ......................................................................10

3972049v1

*Open Software Foundation, Inc. v. United States Fidelity and Guar. Co.*,
   307 F.3d 11 (1st Cir. 2002) ...................................................................................................17, 18

*Optinrealbig.com, LLC v. Ironport Sys., Inc.*, 323 F. Supp.2d 1037
   (N.D. Cal. 2004) ...........................................................................................................................11

*Purdue Frederick Co. v. Steadfast Ins. Co.*, No. 601345/04, 2005 WL 1662028
   (N.Y. Super. Ct. July 12, 2005) ..............................................................................................16, 18

*QSP, Inc. v. Aetna Cas. and Sur. Co.*, 773 A.2d 906 (Conn. 2001) ...........................15, 16, 18, 19

*Quinn v. City of Boston*, 325 F.3d 18 (1st Cir. 2003) ........................................................................6

*Titan Holdings Syndicate, Inc. v. City Of Keene, N.H.*, 898 F.2d 265
   (1st Cir. 1990) ................................................................................................................................7

*Transamerica Ins. Co. v. KMS Patriots, L.P.*, 52 Mass. App. Ct. 189 (2001) .................................9

*Western Duplicating, Inc. v. RISO, Inc.*, No. CIV S 98 0208 FCD GGH (E.D. Cal.) .....................11

*Zahiri v. General Acc. Ins. Co. of America*, No. 00-P-392, 2002 WL 2021576
   (Mass. Ct. App. Sept. 4, 2002) .....................................................................................................9

3972049v1

Plaintiffs, Great American Alliance Insurance Company f/k/a American Alliance Insurance Company, Great American Assurance Company f/k/a Agricultural Insurance Company, Great American Insurance Company, and Great American Insurance Company of New York f/k/a American National Fire Insurance Company (collectively "Great American"), submit this memorandum in support of their Motion for Summary Judgment against Defendant RISO, Inc. ("RISO").

## I.    SUMMARY OF ARGUMENT

The primary issue to be resolved in these consolidated actions is whether Great American was obligated to defend RISO in connection with an antitrust lawsuit filed against RISO in the United States District Court for the Eastern District of California (the "Modesto Action"). The plaintiffs in the Modesto Action (the "Modesto Plaintiffs") sought recovery from RISO for multiple restraints of trade in violation of federal antitrust laws, and related anti-competitive conduct in violation of the Massachusetts Consumer Protection Act. It is undisputed that the general liability and umbrella liability insurance policies issued to RISO by Great American do not provide coverage for these types of claims.

RISO seeks to avoid this dispositive fact by arguing instead that the allegations in the Modesto complaint concerning disparagement of a *competitor's* product adumbrate a covered "personal injury" offense. RISO's argument fails because the Modesto Plaintiffs were not competitors of RISO, but rather consumers as to whom, all admit, RISO did not disparage. In fact, the Modesto Plaintiffs did not assert a single claim for disparagement against RISO, nor did they allege that RISO disparaged them or their goods, products or services.

Instead, the only mention of disparagement in the Modesto complaint relates to RISO's alleged disparagement of certain of its competitors' products in furtherance of an illegal tying arrangement in violation of the Sherman Antitrust Act. RISO's competitors were not parties to the Modesto Action, and the Modesto Plaintiffs did not seek damages, as (of course) they could not have, because of RISO's alleged disparagement of someone else's products. Accordingly, there was no possibility, under any reading of the Modesto complaint, that RISO could have been obligated to pay "personal injury" damages to the Modesto Plaintiffs. Great American therefore had no duty to defend RISO, and it is entitled to summary judgment here.

## II.    STATEMENT OF FACTS

### A.    The Great American Policies[1]

Great American issued primary and umbrella liability policies to RISO for the period from August 1, 1994 through September 1, 2000 (the "Great American Policies"). Each of the Great American Policies provide coverage for, *inter alia,* "personal injury" liability. Affidavit of Richard Nicolaides ("Nicolaides Aff."), Tabs A and B, p. 4; Tabs C, D and E, p. 5; Tab F, pp. 5–6; Tabs G, H, I, J, K and L, p. 1. "Personal injury" coverage is available only for sums RISO is "legally obligated to pay as damages because of personal injury." *Id.* Great American has the "right and duty to defend any 'suit' seeking those damages." *Id.* Thus, under the plain terms of the Great American Policies, Great American is obligated to defend suits against RISO only to the extent those suits seek damages "because of personal injury."

---

[1]    The relevant provisions of the Great American Policies are set forth fully in Great American's Statement of Undisputed Facts, which is submitted herewith.

3972049v1

The Great American Policies define "personal injury" as: " injury ... arising out of one or more of the following offenses:

1.      false arrest, detention or imprisonment;

2.      malicious prosecution;

3.      the wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies by or on behalf of its owner, landlord or lessor;

4.      oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services; or

5.      oral or written publication of material that violates a person's right of privacy."

*Id.* at Tabs A and B, p. 13; Tabs C, D and E, pp. 14–15; Tab F, p. 15; Tabs G, H, I and J, p. 7; Tabs K and L, p. 9. Only one of these enumerated "offenses" -- disparagement -- is at issue in this action.

### B.      The Modesto Complaint

The Modesto Plaintiffs were two school districts located in California. Nicolaides Aff., Tab N, ¶¶4-5. They filed suit against RISO in the U.S. District Court for the Eastern District of California. The gravamen of the Modesto Plaintiffs' complaint was that RISO engaged in multiple restraints of trade and unfair methods of competition in connection with RISO's sale of services and supplies for its digital duplicator product, marketed under the trade name Risograph. *Id.* at ¶17. Specifically, the Modesto Plaintiffs alleged that RISO possessed monopoly power in the market for Risograph parts, and that RISO and its dealers used that monopoly power "to restrict or eliminate competition in the Risograph services market, creating ... a second monopoly in the Risograph service market ...." *Id.* at ¶48. As a result, the Modesto Plaintiffs alleged that RISO was able to charge "supracompetitive prices in the retail markets for Risograph services

3

and supplies." *Id.* at ¶50. In other words, the Modesto Plaintiffs complained that they overpaid

for Risograph parts and services.

    The Modesto Plaintiffs asserted four causes of action against RISO:

a.    Count I -- Violation of Section 1 of the Sherman Act -- Restraints of Trade in the Risograph Service Market;

b.    Count II -- Violation of Section 1 of the Sherman Act -- Restraints of Trade in the Risograph Supply Market;

c.    Count III -- Violation of the Wilson Tariff Act -- Restraints of Items in Foreign Trade and Commerce; and

d.    Count IV --Violation of the Massachusetts Consumer Protection Act by RISO's Unfair Methods of Competition and Unfair and Deceptive Acts or Practices.

*Id.* at ¶¶68-124.

    Nowhere in their complaint did the Modesto Plaintiffs seek damages from RISO

"because of" any "personal injury" offense, including the offense of disparagement. RISO relies

on certain allegations in Count II of the Modesto complaint to create a duty to defend, where the

Modesto Plaintiffs alleged that RISO's acts fell within "well-established categories of conduct"

prohibited by Section 1 of the Sherman Act, including among others, unlawful "tying

arrangements." *Id.* at ¶90. To demonstrate a "tying arrangement" in the supply market, the

Modesto Plaintiffs alleged that RISO engaged in a variety of coercive tactics designed to

illegally "tie" warranty services on products sold by RISO with supplies manufactured by RISO.

*Id.* at ¶98. One of the tactics RISO used was to place warning stickers on its products "telling

customers to use only RISO manufactured supplies," thereby, according to the Modesto

Plaintiffs, "indiscriminately disparaging all non-RISO supplies." *Id. See also id.* at ¶100 (the

warning stickers were "one part of a concerted strategy by RISO and its dealers to falsely

disparage non-RISO inks and masters suitable for use in Risographs and thereby reinforce the

tying arrangement between Risograph warranty service and use of Risograph inks and masters").

4

The disparaging statements concerned RISO's competitors, not the Modesto Plaintiffs.

Nowhere in Count II, nor anywhere else in the complaint, do the Modesto Plaintiffs allege that

RISO committed any libel, slander or disparagement as to the Modesto Plaintiffs, or their goods,

products or services. RISO has admitted as much in this suit, and further admits:

- The Modesto Plaintiffs did not allege that RISO made any oral or written statement about any plaintiff, individually or collectively.

- The Modesto Plaintiffs did not seek any damages from RISO because any plaintiff was slandered, libeled, or disparaged by RISO, nor were any plaintiffs' goods, products or services disparaged by RISO.

Nicolaides Aff., Tab O, Responses 4-11. RISO acknowledges that in settling the Modesto

Action, it paid nothing to settle a claim against RISO for libel, slander or disparagement of the

Modesto Plaintiffs. *Id.* at Responses 12-14.

## C.   The Consolidated Actions

On October 27, 2004, Great American filed a complaint in this Court, seeking a

declaration that it owed no duty to defend or indemnify RISO under the Great American Policies

with respect to the Modesto Action. On the same day, RISO filed a complaint in Massachusetts

Superior Court, Suffolk County, seeking a declaration of coverage and asserting breach of

contract against Great American (the "State Court Action"). Great American removed the State

Court Action to this Court, where the actions were consolidated by agreement of the parties.

On March 28, 2005, the parties submitted a joint scheduling order, which was entered by

the Court. The parties agreed that this action should proceed in two phases, with the first phase

limited to determining whether Great American owed a duty to defend RISO in the Modesto

Action. If the Court grants Great American's motion for summary judgment, the parties

acknowledge that this case will be fully and finally resolved. If the Court does not grant Great

American's motion, this case will proceed to phase two, in which all other issues will be

5

resolved. Those issues include the reasonableness of the defense costs incurred by RISO in the Modesto Action and whether Great American has a duty to indemnify RISO for losses arising out of the Modesto Action.

## III.    ARGUMENT

### A.    Summary Judgment Standard

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Acosta v. Ames Dep't Stores, Inc.,* 386 F.3d 5, 7-8 (1st Cir. 2004) *(citation omitted).* The purpose of summary judgment "is to pierce the boilerplate of the pleadings and provide a means for prompt disposition of cases in which no trial-worthy issue exists." *Quinn v. City of Boston,* 325 F.3d 18, 28 (1st Cir. 2003) *(citations omitted).*

Questions of insurance policy interpretation are questions of law for the court. *Amtrol, Inc. v. Tudor Ins. Co., No. Civ. A.* 01-10461-DPW, 2002 WL 31194863, at *4 (D. Mass. Sept. 10, 2002) *(citation omitted).*[2] "When the relevant facts upon which coverage of a claim is premised are not in dispute, the application of the insurance policy to those facts is also a question of law that can be resolved on summary judgment." *Id. (citation omitted).* Even where "disputed issues of fact hover in the background" of a motion for summary judgment, if "resolution of the dispute rests solely on an interpretation of unambiguous contract language ... the disputed issues are immaterial and the cross-motions may be resolved as a pure question of law." *Massachusetts Mut. Life Ins. Co. v. Aritech Corp.,* 882 F. Supp. 190, 191-92 (D. Mass. 1995) (citation omitted).

---

[2]     Unpublished cases are attached to the Nicolaides Aff. at Tab Q.

3972049v1

**B.     The Method For Determining Whether An Insurer Has A Duty To Defend Under Massachusetts Law**

**1.     In General**

The Massachusetts Supreme Judicial Court, in *Herbert A. Sullivan, Inc. v. Utica Mut. Ins. Co.*, 439 Mass. 387, 394 (2003), discussed the method for determining whether an insurer has a duty to defend under Massachusetts law.[3]  The Court held that the duty to defend is determined by "matching the third-party complaint with the policy provisions: if the allegations of the complaint are 'reasonably susceptible' of an interpretation that they state or adumbrate a claim covered by the policy terms, the insurer must undertake the defense." *Id. (citations omitted).* The duty to defend is based on "'the facts alleged in the complaint and those facts which are known to the insurer.'" *Id. (citation omitted).*

The Court was careful to caution, however, that where the allegations of the underlying complaint "'lie expressly outside the policy coverage and its purpose, the insurer is relieved of the duty to investigate' or defend the [insured]." *Id. (citations omitted).*

**2.     Claims For "Personal Injury" Coverage**

In determining whether an insurer has a duty to defend under the "personal injury" insuring agreement of a general liability policy, courts in this Circuit, applying Massachusetts law, look to whether the allegations in the underlying complaint are "reasonably susceptible" to an interpretation that they state or adumbrate the required elements of the relevant "personal injury" offense (in this case, disparagement). *See Titan Holdings Syndicate, Inc. v. City Of Keene, N.H.,* 898 F.2d 265, 271 (1st Cir. 1990) ("To come within the personal injury coverage, a suit must be based on allegations of any offense for which the [insured] might become liable.").

---

[3]     RISO is incorporated and has its principal place of business in Massachusetts and the broker for the Great American Policies, Marsh & McLennan, Inc., was located in Massachusetts. The underlying Modesto Action was filed in California by two California School Districts. This Court does not have to address choice of law because Massachusetts and California law do not differ on the substantive issues in dispute in this motion.

7

The First Circuit explained: "[i]n the world of liability insurance policies, coverage for 'personal injury' liability depends not primarily on the type of *injury* sustained, but whether the injuries arose from the commission of certain *offenses.*" *Id.* at 270 (*citation omitted*). The definition of "personal injury" is "very limited" and should not be broadly construed. *Dryden Oil Co. of New England, Inc. v. Travelers Indem. Co.,* 91 F.3d 278, 285-86 (1st Cir. 1996) *(citation omitted).*

The First Circuit's analysis in *Global Naps, Inc. v. Federal Ins. Co.,* 336 F.3d 59 (1st Cir. 2003), is instructive. In *Global Naps,* the policyholder ("Global Naps") sought reimbursement of defense costs incurred in defending a lawsuit brought by Verizon. *Id.* at 60. Global Naps alleged that Verizon's complaint adumbrated a claim for malicious prosecution, one of the enumerated "personal injury" offenses in its policy, despite the fact that Verizon did not assert a cause of action against Global Naps for malicious prosecution. *Id.* at 60-61.

The Court, applying Massachusetts law, looked to whether the allegations in the Verizon complaint were "reasonably susceptible of an interpretation that they state or adumbrate a claim for malicious prosecution." *Id.* at 62 *(citation omitted).* The Court began its analysis by identifying each of the elements of the offense of malicious prosecution under New York law.[4] It then looked to the allegations in the Verizon complaint to determine whether they were "reasonably susceptible to an interpretation that they adumbrate, or sketch" each of the required elements. *Id.* at 64. Because the Verizon complaint could not be read to allege special damages, one of the required elements of malicious prosecution under New York law, the Court held that the insurer had no duty to defend under Massachusetts law. *Id.* at 66.

---

[4]     The Court looked to New York law, because the underlying Verizon suit was filed in New York. *Global Naps,* 336 F.3d at 62.

3972049v1

The approach followed by the Court in *Global Naps* -- *i.e.* determining whether the underlying complaint adumbrates each of the elements of the underling personal injury offense -- has been consistently followed by Massachusetts courts analyzing coverage under the "personal injury" insuring agreement. *See New England Tea & Coffee Co. v. Fireman's Fund Ins. Co.,* 54 Mass. App. Ct. 903, 904 (2002) (no duty to defend where there was no evidence that the insured made a public statement about the underlying plaintiff, a key element of the tort of defamation under Massachusetts law); *Transamerica Ins. Co. v. KMS Patriots, L.P.,* 52 Mass. App. Ct. 189, 193 (2001) (insurer had no duty to defend under "personal injury" insuring agreement where insured could not establish the elements of the tort of defamation, because the insured did not publish alleged defamatory comments to a third party).[5]

## C.    Great American Had No Duty To Defend RISO, Because The Modesto Plaintiffs Did Not Allege, And Could Not Allege, The Common Law Elements Of Disparagement

As set forth above, the starting point for determining whether Great American had a duty to defend RISO under Massachusetts law is identifying each of the elements of the applicable "personal injury" offense, which in this case is disparagement. This Court must look to California law to identify the elements of disparagement. *See Global Naps,* 336 F.3d at 62-63 (while the Court applied Massachusetts law in determining whether insurer had a duty to defend, it looked to New York law, the state where the underlying suit was filed, to identify the elements

---

[5]      *See also Zahiri v. General Acc. Ins. Co. of America*, No. 00-P-392, 2002 WL 2021576, at *4 (Mass. Ct. App. Sept. 4, 2002) (insurer had no duty to defend under personal injury insuring agreement, where underlying complaint did not allege the tort of defamation and the jury charge did not include a claim of defamation); *Boston Housing Auth. v. Atlanta Int'l Ins. Co.,* 781 F. Supp. 80, 84 (D. Mass. 1992) (while the underlying complaint "did assert that the BHA provided disparate rental services to the NAACP plaintiffs, the Complaint did not assert facts which alleged a breach of the warranty of habitability so as to constitute constructive eviction;" court looked to the gravaman of the complaint, discriminatory racial practices, and refused to hold insurer had a duty to defend under the personal injury insuring agreement).

9

of the tort of malicious prosecution to determine whether the complaint alleged the personal injury offense).

Common to any libel, slander or disparagement tort is the First Amendment requirement that the statement upon which the tort is based must directly and specifically refer to, or be "of and concerning," the plaintiff asserting the claim. *New York Times v. Sullivan,* 376 U.S. 254, 288 (1964) ("[w]e also think the evidence was constitutionally defective in another respect: it was incapable of supporting the jury's finding that the allegedly libelous statements were made 'of and concerning' respondent"). The California Supreme Court has specifically recognized the "of and concerning" requirement, and its applicability to product disparagement claims. *Blatty v. New York Times Co.,* 728 P.2d 1177, 1182-85 (Cal. 1986). *See also Isuzu Motors Ltd. v. Consumers Union of United States, Inc.,* 12 F. Supp.2d 1035, 1044-45 (C.D. Cal. 1998) (dismissing product disparagement claims brought by car distributor and importer, where the allegedly disparaging statements were "of and concerning" the car manufacturer, not the distributor or importer).[6]

The Modesto Plaintiffs were customers, not competitors of RISO. RISO admits that it did not disparage or otherwise make any statement whatsoever regarding the Modesto Plaintiffs. Nicolaides Aff., Tab O. The "of and concerning" requirement is glaringly absent. For this reason, the Modesto Plaintiffs did not, and as a matter of law could not, assert a claim for disparagement against RISO. The mere fact that the Modesto complaint alleges that someone, somewhere was disparaged is not enough. The disparagement had to be "of and concerning" the Modesto Plaintiffs, which it was not. *See Isuzu Motors,* 12 F. Supp.2d at 1045. Because the

---

[6]     Massachusetts law, which is the only other state's law which could have applied to the Modesto Action, also recognizes the "of and concerning" requirement. *MiGi, Inc. v. Gannett Massachusetts Broadcasters, Inc.*, 25 Mass. App. Ct. 394, 396 (1988).

10

Modesto complaint could not be interpreted to adumbrate a claim for disparagement under California law, Great American had no duty to defend RISO. *Supra* at 7-8.[7]

The "of and concerning" requirement could, of course, be satisfied if one of RISO's competitors brought a disparagement claim against RISO. That is precisely what happened in *Western Duplicating, Inc. v. RISO, Inc.,* No. CIV S 98 0208 FCD GGH (E.D. Cal.) ("the *Western Duplicating* action"), an action brought against RISO by one of its competitors. Nicolaides Aff., Tab P. Western Duplicating alleged that RISO "made false or misleading factual representations of the nature, characteristics, or qualities of plaintiffs' services and products." *Id.* at ¶¶137-38. Among the claims Western Duplicating asserted against RISO was a claim under the Lanham Act, which "prohibit[s] false and misleading statements and representations made by a defendant about the plaintiff's product or services." *Id.* at ¶136. Based on these allegations, Great American defended RISO in the *Western Duplicating* action. Conversely, where the complaint contains no allegations of disparagement "of and concerning" the plaintiff, like the Modesto complaint here, Great American has no duty to defend RISO.[8]

---

[7]    It is important to note that this is not a case in which the underlying complaint contains vague or unclear allegations which could, if construed in favor of the policyholder, be "reasonably susceptible" to an interpretation that might bring the allegations within the terms of the insurance policy. *E.g. Boston Symphony Orchestra, Inc. v. Commercial Union Ins. Co.,* 406 Mass. 7, 12-13 (1989). Here, to the extent the Modesto Plaintiffs alleged disparagement, they did so only as against a third party. There simply is no conceivable way the Modesto complaint can be read to assert a disparagement claim against RISO, because the Modesto Plaintiffs could not assert such a claim against RISO as a matter of law.

[8]    Although the "of and concerning" requirement is most glaringly absent in the Modesto complaint, it is not the only element of disparagement that is missing. *Isuzu* instructs that the claim of disparagement involving pecuniary loss is known as trade libel under California law. *Isuzu Motors,* 12 F.Supp.2d at 1045. To prove the tort of trade libel under California law, a plaintiff must show that the defendant: (1) made a statement that disparages the quality of the plaintiff's product; (2) that the offending statement is couched in fact, not opinion; (3) that the statement was false; (4) that the statement was made with malice; and (5) that the statement resulted in monetary loss. *Optinrealbig.com, LLC v. Ironport Sys., Inc.,* 323 F. Supp.2d 1037, 1048 (N.D. Cal. 2004). The Modesto Plaintiffs' vague allegations concerning RISO's use of "disparaging" warning stickers does not satisfy these elements.

11

**D.    The "Arising Out Of" Language In The Definition Of "Personal Injury" Did Not Obligate Great American To Defend RISO, Where There Was No Possibility Of "Personal Injury" Damages Being Assessed Against RISO In The Modesto Action**

Apparently recognizing that the Modesto complaint could not conceivably be interpreted to support a claim for disparagement, RISO has argued that the "arising out of" language in the definition of "personal injury" -- "personal injury ... arising out of ... oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services" -- is sufficiently broad to encompass the Modesto Plaintiffs' claims. In essence, RISO's argument is that so long as the underlying plaintiffs' injuries relate in some fashion to the torts of slander, libel or disparagement, an insurer has a duty to defend under the personal injury insuring agreement. The position not only is facially unreasonable, it is completely at odds with the plain language of the personal injury insuring agreement and the case law interpreting "arising out of" in the context of the personal injury provision.

**1.    Pursuant To The Plain Language Of The Great American Policies, RISO Was Not, And Could Not Have Been, "Legally Obligated To Pay Damages Because Of Personal Injury"**

Under Massachusetts law, an insurance policy is interpreted just like any other contract, with the words in the policy given their "usual and ordinary sense." *Hakim v. Massachusetts Insurers' Insolvency Fund,* 424 Mass. 275, 280 (1997) (*citations omitted*). In seeking to obtain coverage for antitrust and unfair competition claims under the Great American Policies, RISO ignores the fact that a condition precedent to application of the "personal injury" insuring agreement is that the insured must be "legally obligated to pay damages because of personal injury." Nicolaides Aff., Tabs A-L. RISO admits that it did not pay a dime to the Modesto Plaintiffs to resolve any claim for slander, libel or disparagement. *Id.* at Tab O. Nor could it

12

have; as set forth above, the Modesto Plaintiffs could never have asserted a disparagement or trade libel claim against RISO, because the alleged disparaging warning stickers were not "of and concerning" the Modesto Plaintiffs. Thus, in response to the Modesto complaint, RISO could not, under any circumstances, have been obligated to pay "damages *because of* personal injury." The "arising out of" language in the definition of "personal injury" does not alter that fundamental fact.

Instead, it is clear from the Modesto complaint that the allegations concerning the warning stickers were pled strictly to demonstrate a "tying arrangement," a category of conduct prohibited by Section 1 of the Sherman Act. The Modesto complaint is not "reasonably susceptible" of any other interpretation. Pursuant to the "usual and ordinary" meaning of the unambiguous language of the personal injury insuring agreement, the Great American Policies do not provide coverage for such claims.

### 2.    RISO's "Arising Out Of" Argument Has Repeatedly Been Rejected By Courts Addressing This Precise Issue

Well-reasoned and directly on point case law, from multiple jurisdictions, shows that RISO's "arising out of" argument is incorrect. The case of *Microsoft Corp. v. Zurich Am. Ins. Co.*, No. COO-521P, 2001 WL 765871 (W.D. Wash. July 2, 2001) is particularly instructive. In *Microsoft*, the Court was confronted with a fact pattern virtually identical to the claim RISO presents here. In both cases, the underlying complaints alleged that the insured engaged in monopolistic practices, unlawful restraints of trade and other anticompetitive practices enabling the insured to charge supercompetitive prices. *Id.* at *1. The plaintiffs in the underlying *Microsoft* suits were, like the Modesto Plaintiffs here, consumers of the insured's products. *Id.* Microsoft's policies, like the Great American Policies, provided coverage for "personal injury ... arising out of ... oral or written publication of material that slanders or libels a person or

13

organization or disparages a person's or organization's goods, products or services." *Id.* at *5. While acknowledging that the underlying causes of action were for antitrust violations, Microsoft argued, as RISO does here, that the claims "arose out of" acts of disparagement, a covered personal injury offense. *Id.* Microsoft, like RISO, relied on allegations that it disparaged its competitors' (not the plaintiffs') products, and engaged in "so-called 'FUD' (fear, uncertainty, and doubt) campaigns which were intended to undermine their competitors' products." *Id.* at *2.

On cross motions for summary judgment, the *Microsoft* Court rejected the policyholder's arguments and ruled that the insurers had no duty to defend or indemnify Microsoft. *Id.* at *6-7. The Court explained that in determining whether the insurers had a duty to defend Microsoft under Washington law, it had to "examine whether the types of offenses alleged in the Underlying Complaints are analogous to any of the torts enumerated in the disputed policies...." *Id.* at *6. There was no dispute among the parties that Microsoft's policies did not provide coverage for antitrust violations. *Id.* Microsoft's only hope was to persuade the Court that the underlying complaints could be construed to allege personal injury "arising out of" allegations of disparagement. The Court was not persuaded.

Microsoft erred, in the Court's view, by overextending the breadth of the policies' "arising out of" language. *Id.* Microsoft could not overcome the fact that the "of and concerning" requirement was missing. The Court stated:

> It is a well-established principle of First Amendment jurisprudence that the injured party in an action for product disparagement must establish that the disparaging communication was personally directed to his or her product. This is known as the "of and concerning" rule. The parties appear to agree that the Underlying Complaints contain some references, however minimal, to disparaging statements made by Microsoft about its competitors' products. Significantly, the Underlying Complaints contain no allegations that Microsoft

14

> disparaged the complainants nor any product created by the
> complainants. The allegations of disparagement clearly are not "of
> and concerning" the consumers who have brought the Underlying
> Complaints.

*Id. (citations omitted).* The Court further relied upon language in Microsoft's policies, also

present in the Great American Policies, providing that the insurers were "obligated only to pay

for 'those sums that the insured becomes *legally obligated to pay as damages* because of

'personal injury' or 'advertising injury.'" *Id.* (emphasis supplied). Because Microsoft could

not be legally obligated to pay the underlying plaintiffs damages for product disparagement, it

could not state a claim for personal injury coverage. *Id.*

The Connecticut Supreme Court reached the same result in *QSP, Inc. v. Aetna Cas. and*

*Sur. Co.*, 773 A.2d 906 (Conn. 2001). In *QSP*, an insured publisher and its subsidiaries sought

coverage for liability to schools and youth groups for antitrust violations in the magazine fund-

raising market. *Id.* at 910-11. The lower court held that the insureds' claims fell outside the

scope of the advertising injury and personal injury insuring agreements, despite allegations by

the plaintiffs that the insureds engaged in defamation, disparagement, malicious prosecution, and

unfair competition against their competitors. *Id.* at 912.

The Connecticut Supreme Court agreed, affirming the lower court and applying an

analysis like that of the *Microsoft* Court. *Id.* at 913. The Court concluded that the underlying

plaintiffs were "not the proper parties to raise the allegations that ... trigger coverage, nor did the

[underlying] plaintiffs suffer any injury that would be causally connected to any offense covered

under 'personal injury.'" *Id.* at 915. Again, the critical element that was missing was the "of

and concerning" requirement. The Court stated: "Where the alleged defamatory statements

were not made about the [underlying] plaintiffs, they do not satisfy the 'of and concerning'

element crucial to prevailing on a common-law defamation claim." *Id.* at 916 *(citations*

15

3972049v1

*omitted). See also Purdue Frederick Co. v. Steadfast Ins. Co.,* No. 601345/04, 2005 WL 1662028, at \*7 (N.Y. Super. Ct. July 12, 2005) (no "personal injury" coverage for antitrust claims); *Motorists Mut. Ins. Co. v. National Dairy Herd Improvement Assoc., Inc.,* 750 N.E.2d 1169, 1175 (Ohio Ct. App. 2001) (no "personal injury" coverage where the underlying complaint, "a detailed document containing more than eighty paragraphs of allegations, does not contain a single allegation that NDHIA [insured] published a false statement about the *Agritronics* plaintiffs to a third party").

The *Microsoft* and *QSP* courts reached their conclusions applying the same analytical framework used by Massachusetts courts -- *i.e.*, they looked to the elements of the claimed "personal injury" offense, and determined whether the underlying complaint could be read to allege each element of the offense. *Supra* at 7-8. Because at least one necessary element of disparagement was missing -- the "of and concerning" requirement -- no coverage was available under the "personal injury" insuring agreement. RISO fares no better here, and has no right to "personal injury" coverage from Great American.

### 3.    The Illinois Trial Court's Decision In *Knoll* Is Inapplicable And Wrongly Decided

The only Court to reach a different result was the Court in *Knoll Pharm. Co. v. Automobile Ins. Co. of Hartford,* 152 F. Supp.2d 1026 (N.D. Ill. 2001), a case that purports to apply Illinois law. The Court's decision in *Knoll is* inapplicable here, primarily for four reasons. First, the decision turns on the Court's interpretation of an unusual provision of Illinois law which, according to the Court, permits a party to assert a claim for product disparagement or unfair competition on behalf of another party. *Id.* at 1037. California law, which would have applied to any claim of disparagement brought by the Modesto Plaintiffs, specifically rejects

3972049v1

such a possibility, based on the "of and concerning" requirement of First Amendment jurisprudence. *Supra* at 10.

Second, the *Knoll* Court held that under Illinois law, the policy language "arising out of" is "broad and vague" and "must be liberally construed." *Knoll,* 152 F. Supp.2d at 1035 *(citation omitted).* The First Circuit Court of Appeals, however, has rejected *Knoll's* expansive interpretation of "arising out of" in the context of the personal injury insuring agreement. *See Open Software Foundation, Inc. v. United States Fidelity and Guar. Co.,* 307 F.3d 11, 24 (1st Cir. 2002).[9]

In *Open Software,* the insured alleged that its insurer breached its duty to defend an antitrust suit filed against the insured. *Open Software,* 307 F.3d at 12. The insured argued that the underlying complaint contained sufficient facts to adumbrate defamation and disparagement claims, despite the absence of any such causes of action. *Id.* at 20.

The First Circuit rejected the insured's argument. Rather than finding the phrase "arising out of" ambiguous, as the court did in *Knoll,* the First Circuit adopted a significantly narrower interpretation of "arising out of," holding that the "personal injury" offense must "contribute materially to the injury." *Id.* at 22. The First Circuit explained that "materially contributes" connotes a range of causation narrower than a "but for" test: "[T]he relevant causation issue with regard to insurance coverage is not whether 'the injury could have taken place without the advertising' (but-for causation), but whether the advertising did in fact contribute materially to the injury." *Id.* at 21 *(citation omitted).* Because the insured could not establish that any disparagement "materially contributed" to the plaintiffs' injuries, the insured was not entitled to

---

[9]     Although *Open Software* cites *Knoll* to support its conclusion that a causal connection must exist between the "personal injury" offense and the plaintiffs' alleged injuries, it does not accept *Knoll's* limitless interpretation of the "arising out of" language. *See infra* at 17-18.

17

personal injury coverage. *Id.* at 23-24. The First Circuit remarked: "the financial impact of OSF's words pales in comparison to the economic effect of its deeds...." *Id.* at 24.

The same is true here. The Modesto complaint included four causes of action, none for disparagement. Instead, in 124 paragraphs, the Modesto Plaintiffs alluded to disparagement only twice, both times in relation to non-parties, and both times for purposes of establishing an illegal "tying arrangement" under the Sherman Antitrust Act. Nicolaides Aff., Tab N ¶¶98, 100. Certainly, these stray allegations supporting an antitrust violation do not satisfy *Open Software's* "material contribution" requirement. Like in *Open Software,* the "financial impact" of RISO's "disparaging" warning stickers "pales in comparison to the economic effect of its deeds." It was RISO's deeds -- unlawful restraints of trade and anti-competitive conduct -- that materially contributed to the Modesto Plaintiffs' injuries.

A third reason *Knoll is* inapplicable here is that the *Knoll* Court was not asked to consider the language in the personal injury insuring agreement that restricts coverage to suits where the insured is "legally obligated to pay damages because of personal injury." *Supra* at 12-13. *(emphasis supplied)* That language clearly precludes coverage for claims in which plaintiffs, like the Modesto Plaintiffs here, are not seeking damages "because of" disparagement or any other "personal injury" offense.

Finally, to the extent *Knoll* conflicts with the well-reasoned decisions in *Microsoft* and *QSP,* it is wrongly decided. In fact, *Knoll* recently has been rejected for its unreasonable, limitless interpretation of the "arising out of" language in the personal injury insuring agreement. *See Purdue Frederick,* 2005 WL 1662028, at *7 ("This court finds that Knoll takes the definition of 'arising out of' too far. The antitrust plaintiffs, in their own actions, do not raise any claim for injuries arising out of any covered offense enumerated in the policy ..."). The *Purdue Frederick*

18

Court instead followed the well-reasoned decision of the Connecticut Supreme Court in *QSP* which, like the court in *Microsoft*, rejected an insured's attempt to obtain "personal injury" coverage for antitrust claims. Great American respectfully requests that this Court do the same.

## IV.    CONCLUSION

In construing the underlying Modesto complaint, Massachusetts law requires that the Court determine whether the allegations are "'reasonably susceptible' of an interpretation that they state or adumbrate a claim covered by the policy terms ...". "Reasonably susceptible" is key; it does not mean an unreasonable interpretation that is not legally possible, which is RISO's argument here. The Modesto Plaintiffs, as a matter of law and fact, could never have asserted a claim of disparagement or trade libel against RISO. The personal injury insuring agreement in the Great American Policies states that Great American will pay damages the insured is "legally obligated to pay because of personal injury." RISO, by its own admissions, was not, and could never have been, legally obligated to pay the Modesto Plaintiffs damages for disparagement.

For these reasons, Great American had no duty to defend or indemnify RISO and has no

duty today to reimburse RISO's defense costs. This Court should grant Great American's

motion and enter judgment in favor of Great American declaring that Great American had no

duty to defend, indemnify or reimburse any defense costs of RISO regarding the underlying

Modesto Action.

Respectfully submitted,

GREAT AMERICAN INSURANCE COMPANY,
GREAT AMERICAN INSURANCE COMPANY
OF NEW YORK, GREAT AMERICAN
ASSURANCE COMPANY, and GREAT
AMERICAN ALLIANCE INSURANCE
COMPANY

By its attorneys,

Richard H. Nicolaides, Jr.
Mary F. Licari
Sarah E. Eversman
BATES & CAREY LLP
191 N. Wacker Drive, Suite 2400
Chicago, IL 60606
Tel: (312) 762-3210
Fax: (312) 762-3200

A. Hugh Scott (BBO #449160)
Robert A. Kole (BBO #633269)
CHOATE, HALL & STEWART
Two International Place, 100-150 Oliver Street
Boston, MA 02110
Tel:   (617) 248-5000
Fax:   (617) 248-4000

Dated: August 18, 2005

I HEREBY CERTIFY THAT A TRUE COPY OF
THE ABOVE DOCUMENT WAS SERVED
UPON THE ATTORNEY OF RECORD FOR
EACH OTHER PARTY BY MAIL/HAND ON: S/18/05

3972049v1