UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|   |   |
|---|---|
| GREAT AMERICAN ALLIANCE INSURANCE COMPANY, GREAT AMERICAN ASSURANCE COMPANY, GREAT AMERICAN INSURANCE COMPANY, AND GREAT AMERICAN INSURANCE COMPANY OF NEW YORK,<br><br>    Plaintiffs,<br><br>    v.<br><br>RISO, INC.,<br><br>    Defendant.<br><br>RISO INC.,<br><br>    Plaintiff,<br><br>    v.<br><br>GREAT AMERICAN ALLIANCE INSURANCE COMPANY, GREAT AMERICAN ASSURANCE COMPANY, GREAT AMERICAN INSURANCE COMPANY, AND GREAT AMERICAN INSURANCE COMPANY OF NEW YORK,<br><br>    Defendants. | Consolidated Civil Action Nos. 04-12260-GAO<br>04-12397-GAO |

**OPPOSITION OF RISO, INC. TO MOTION FOR SUMMARY JUDGMENT
OF GREAT AMERICAN ALLIANCE INSURANCE COMPANY, ET AL.**

**INTRODUCTION**

Great American Alliance Insurance Company, Great American Assurance Company, Great American Insurance Company, and Great American Insurance Company of New York (collectively "GAIC") have moved the Court for a summary judgment declaring that GAIC had no duty to defend Riso, Inc. ("Riso") against claims asserted against Riso in *Modesto City Schools, et al. v. Riso, Inc., et al.*, No. Civ. S 99-2214 DFL DAD (E.D. Cal., filed Nov. 5, 1999). Because GAIC's position is supported neither by the language of the insurance policies at issue,

nor by Massachusetts law, Riso opposes GAIC's motion, and has filed its own motion (Paper No. 18) seeking a declaration that GAIC had a duty to defend Riso in *Modesto*, and that in failing to discharge that duty, GAIC breached the policies.

The *Modesto* complaint alleged injury to consumers as a result of Riso's publication of material that disparaged Riso's competitors' products. The policies at issue obligate GAIC to defend and indemnify Riso against claims for "injury . . . arising out of . . . publication of material that . . . disparages a person's or organization's . . . products." Under a plain reading of the policy language, therefore, *Modesto* triggered GAIC's duty to defend: Riso allegedly disparaged an organization's products; plaintiffs' injury arose therefrom.

Disregarding the absence in the policies of any reference to the tort of "product disparagement," or any other language limiting coverage to circumstances in which the injured parties' own products were disparaged, GAIC asserts that in order to trigger coverage, the allegations in the complaint must satisfy each element of the tort of product disparagement. Because the *Modesto* complaint alleged that Riso caused injury by disparaging its competitors' products rather than the plaintiffs' own products, GAIC argues that *Modesto* failed to allege the "of and concerning" element of the tort of product disparagement. Consequently, GAIC asserts, the *Modesto* plaintiffs' injury did not arise from a covered "offense" as that term is defined in the policies, and GAIC's duty to defend never attached. GAIC's attempt to substitute the elements of the tort of product disparagement for the more expansive language it instead wrote into its policies is without basis in the policy language and conflicts with settled Massachusetts law.

# ARGUMENT

I. **GAIC Had a Duty to Defend Riso Because the *Modesto* Complaint Alleged (A) That Riso Published Material that Disparaged an Organization's Products, and (B) That the *Modesto* Plaintiffs' Injury Arose as a Result**

The policies provide that GAIC has a duty to defend any suit seeking damages for "personal injury" as this term is defined in the policies. SMF at ¶ 7.[1] The policies define "personal injury" to include injury "arising out of" the covered "offense" of "oral or written publication of material that . . . disparages a person's or organization's goods, products, or services." SMF at ¶ 8. This policy language imposes a two-pronged test. The underlying suit must allege: (A) that the insured published material that disparaged an organization's products; and, (B) that the plaintiffs' injury arose as a result. As Riso has set forth in detail in its memorandum in support of its own motion for summary judgment, *Modesto* satisfied both prongs.

    A. **The *Modesto* Complaint Alleged that Riso Published Material That Disparaged an Organization's Products**

The *Modesto* complaint satisfied the first prong because it alleged that Riso engaged in a "concerted strategy . . . to falsely disparage non-RISO inks and masters." SMF at ¶ 16. The *Modesto* plaintiffs further alleged that Riso "indiscriminately disparag[ed] all non-RISO supplies," through publishing warnings (emblazoned on its Risograph machines and mailed to consumers) that using non-Riso supplies could seriously damage Risographs and void their warranties. SMF at ¶¶ 17, 19. Riso also allegedly branded its competitors as "pirates" and engaged in "routine disparagement of all 'generic' or 'pirate' supplies." SMF at ¶ 18. *Modesto* is thus easily distinguishable from the underlying complaint in *Open Software Foundation, Inc. v. United States Fidelity & Guaranty Co.*, which contained no allegations that the insured had

---

[1] "SMF" refers to Riso's Concise Statement of Material Facts contained in Riso's Motion for Summary Judgment on Insurers' Duty to Defend (Paper No. 18).

published or uttered *anything*, much less anything disparaging.  307 F.3d 11, 33 (1st Cir. 2002).  GAIC admits that Riso allegedly disparaged its competitors' products.  GAIC's Statement of Material Facts at ¶ 40.   It is therefore undisputed that *Modesto* satisfied the policies' first prong.

### B. The *Modesto* Plaintiffs' Alleged Injury Arose Out of Riso's Publication of Material That Disparaged an Organization's Products

*Modesto* satisfied the second prong because the plaintiffs' alleged injury arose, in whole or in part, out of Riso's "concerted strategy" of disparaging competitors' products.  SMF at ¶ 20.  The specific theories of liability alleged in *Modesto* may have been antitrust claims, but the *source* from which the plaintiffs' injury originated was Riso's publication of material that disparaged non-Riso supplies.  See *Bagley v. Monticello Ins. Co.*, 720 N.E.2d 813, 817 (Mass. 1999) (instructing, "It is the source from which the plaintiff's personal injury originates, rather than the specific theories of liability alleged in the complaint which determines the insurer's duty to defend"); *Boston Symphony Orchestra, Inc. v. Commercial Union Ins. Co.*, 545 N.E.2d 1156, 1159 (Mass. 1989) (stating, "The process is not one of looking at the legal theory enunciated by the pleader").  Disparagement of competitors' products allegedly was the central means by which Riso pursued its alleged anticompetitive purpose.  SMF at ¶ 15.  Riso allegedly disparaged non-Riso products and, as a direct result, the *Modesto* plaintiffs allegedly acted to their detriment by choosing to pay inflated prices for Riso products and to forgo cheaper alternatives.  SMF at ¶ 20.  The causal connection between Riso's alleged disparagement and plaintiffs' injury is clear.

GAIC thus is wrong in asserting that a holding in Riso's favor would require an "unreasonable, limitless interpretation of the 'arising out of' language."  GAIC's Memorandum in Support of Motion for Summary Judgment, at 18 (hereinafter, "GAIC Memo").  The nexus between the alleged disparagement and the alleged injury was substantial.  Such a connection is more than sufficient to satisfy an "arising out of" standard – a standard Massachusetts courts

construe expansively in the insurance context. *Metropolitan Property & Cas. Ins. Co. v. Fitchburg Mut. Ins. Co.*, 793 N.E.2d 1252, 1255 (Mass. App. Ct. 2003). Under Massachusetts law, "arising out of" "is ordinarily held to mean 'originating from, growing out of, flowing from, incident to or having connection with.'" *Id.* (quoting *Murdock v. Dinsmoor*, 892 F.2d 7, 8 (1st Cir. 1989)). The phrase "arising out of" thus "indicates a wider range of causation than the concept of proximate causation in tort law," but describes a level of causation greater than 'but for' causation. *Rischitelli v. Safety Ins. Co.*, 671 N.E.2d 1243, 1245 (Mass. 1996). The "arising out of" standard is met where the causal connection between an injury and its alleged cause is "reasonably apparent." *Metro. Prop. & Cas. Ins. Co. v. Santos*, 774 N.E.2d 1128, 1133 (Mass. App. Ct. 2002). Massachusetts courts generally have found the "arising out of" standard unmet only where some intervening, superseding event directly caused the plaintiff's injury. For example, when one motorist physically attacked another after their cars collided, the resulting injuries did not arise from the crash. *Rischitelli*, 671 N.E.2d at 1244. No such intervening event occurred here: Riso allegedly disparaged non-Riso products, and the plaintiffs allegedly acted to their detriment as a direct result.[2]

---

[2] Although the First Circuit predicted in 2002 in *Open Software*, 307 F.3d at 31, that Massachusetts would follow the Third Circuit and interpret "arising out of" as imposing a "material contribution" standard, Massachusetts cases since *Open Software* have declined to do so. *See e.g.*, *Metropolitan v. Fitchburg*, 783 N.E.2d 1252, 1255 (Mass. App. Ct. 2003) (making no reference to the concept of "material contribution"); *Phoenix Ins. Co. v. Churchwell*, 785 N.E.2d 392, 395 (Mass. App. Ct. 2003) (making no reference to the concept of "material contribution" and stating "in the final analysis, [determining what an injury 'arises out of'] involves a judgment call"); *Tae v. Tae*, 783 N.E.2d 827, 300 (Mass. App. Ct. 2003) (same). Indeed, at least some Massachusetts cases suggest that "arising out of" denotes a level of causation very close to "but for" causation. *See e.g.*, *Roe v. Lawn*, 634 N.E.2d 117, 119 (Mass. 1994) (holding that sexual assault of school bus passenger by bus's driver "arose out of the use of the school bus"). Accordingly, in 2004 in *National Union v. Lumbermens*, the First Circuit apparently signaled a retreat from the "material contribution" concept, setting forth the "arising out of" standard as imposing an "intermediate causation standard" and making no reference to "material contribution." 385 F.3d 47, 50 (1st Cir. 2004). In any event, the connection between the injuries alleged by the *Modesto* plaintiffs and Riso's alleged disparagement would satisfy even a "material contribution" standard.

In this respect, *Modesto* is again easily distinguished from the underlying case at issue in *Open Software*. Whereas the *Modesto* plaintiffs contended that Riso's "concerted strategy . . . to falsely disparage non-RISO inks and masters" injured the plaintiffs by causing them to overpay for Riso supplies and forgo cheaper alternatives, *Open Software* included no similar allegations. 307 F.3d at 22. Rather, the underlying complaint placed "no reliance on defamatory or disparaging materials . . . as a cause of injury." *Id.* Indeed, given the "absence of a substantial consumer base with the capacity to alter its purchasing behavior in response to disparaging or defamatory material," even had the insured published disparaging material, no injury could have resulted. *Id.* at 24, n.12 (noting that the underlying complaint failed to allege the sufficient causal nexus between disparagement and injury that was present in *Knoll Pharm. Co. v. Auto. Ins. Co. of Hartford*, 152 F.Supp.2d 1026 (2001)). In the present case, in contrast, there was a substantial consumer base for Risograph supplies. This consumer base allegedly altered its purchasing behavior in response to Riso's disparaging material, and was financially injured as a result. SMF at ¶ 20. *Modesto* thus satisfied the policies' second prong.

Because the *Modesto* complaint alleged both (1) that Riso disparaged an organization's products, and (2) that plaintiffs' injury arose as a result, the plain language of the policies obligated GAIC to provide Riso with a defense.

**II.   Because the Policy Language Does Not Unambiguously Refer To the Tort of Product Disparagement, Massachusetts Courts Would Not Look to the Elements of That Tort to Determine Whether *Modesto* Triggered GAIC's Duty to Defend**

Unable to point to any policy language limiting coverage to circumstances where the underlying plaintiff's own products were disparaged, GAIC argues that this Court should look beyond the four corners of the policies and substitute the formal elements of the tort of product disparagement for the more general policy language GAIC drafted. The Massachusetts Supreme

Judicial Court ("SJC") expressly rejected this approach in *Boston Symphony Orchestra, Inc. v. Commercial Union Insurance, Co.*, 545 N.E.2d 1156, 1159 (1989) ("*BSO*"), and this court should do likewise. *See Daigle v. Maine Med. Ctr., Inc.*, 14 F.3d 684, 689 (1st Cir. 1994) (noting that federal courts sitting in diversity are "absolutely bound by a current interpretation of [applicable state] law formulated by the state's highest tribunal").

In *BSO* the SJC refused to interpret policy language providing coverage for personal injury "arising out of . . . publication of . . . disparaging material" as coextensive with the tort of product disparagement. As the SJC explained:

> [The insurer] contends that [the policy] language refers to the torts of product disparagement and disparagement of property. The [insured] contends that the term disparage should be given its ordinary meaning. Disparage means, among other things, "to lower in rank and estimation by actions or words," or "to speak slightly of." WEBSTER'S NEW INTERNATIONAL DICTIONARY OF THE ENGLISH LANGUAGE 750 (2d ed. 1959). . . . If the ambiguous language of the policy is construed against the insurer, [the underlying] complaint was 'reasonably susceptible' of stating a claim that would fall within the zone of covered injuries.

*BSO*, 545 N.E.2d at 1159; *see also Open Software*, 307 F.3d at 20 (recognizing that Massachusetts courts interpret "disparage" in the insurance context by reference to ordinary usage, not common law tort elements). Resolving the ambiguity in favor of the ordinary meaning of "disparage," the SJC rejected the insurer's attempt to define "publication . . . of . . . disparaging material" as synonymous with the tort of product disparagement. *BSO*, 545 N.E. 2d at 1159. Contrary to GAIC's assertion, the SJC did not look to whether vague underlying allegations might be construed to state the elements of the tort of disparagement. Once it determined that the policy language did not unambiguously refer to the tort of disparagement, the SJC gave "disparage" its ordinary meaning and had cause neither to identify the tort's elements, nor to test whether these elements could be met – whether by construing vague allegations or otherwise. Applying *BSO* to the present case, because "publication of material that . . . disparages a person's or organization's . . . products" does not unambiguously refer to the tort of

B3091988.3                                  - 7 -

product disparagement, coverage under the policies does not depend on whether the *Modesto* allegations satisfied the "of and concerning" element of that tort.

Only where policy language clearly limits coverage to a specific, well-recognized tort do Massachusetts courts test whether the elements of that tort are met. *Compare BSO*, 545 N.E.2d at 1159 ("publication of . . . disparaging material" does not unambiguously refer to tort of product disparagement), *with Global NAPS, Inc. v. Federal Ins. Co.*, 336 F.3d 59, 63-64 (1st Cir. 2003) ("malicious prosecution" unambiguously refers to tort of the same name). Thus, in *Global NAPS, Inc. v. Federal Insurance Co.*, the First Circuit looked first to the policy language, which provided coverage for "malicious prosecution." Analyzing this language, the court concluded that it unambiguously referred to the common law tort of the same name, because "[t]he long common law history of 'malicious prosecution' undermines the ordinary meaning construction." 336 F.3d at 63. Having found that the parties intended coverage only for the tort of malicious prosecution, court *then* examined whether the underlying allegations satisfied the tort's elements. *Id.* at 64. *Global NAPS* and the other cases GAIC cites thus do not support its assertion that "the starting point for determining whether Great American had a duty to defend RISO under Massachusetts law is identifying each of the elements of [the tort of product disparagement]." GAIC Memo at 9. To the contrary, the starting point is the policy language itself. *Brazas Sporting Arms, Inc. v. Am. Empire Surplus Lines Ins. Co.*, 220 F.3d 1, 4 (1st Cir. 2000) ("We begin with the actual language of the policies, given its plain and ordinary meaning"). Where, as here and in *BSO*, the policy language does not unambiguously limit the scope of coverage to the tort of product disparagement, there is no cause to import its elements. *See BSO*, 545 N.E.2d. at 1159; *see also Brazas*, 220 F.3d at 4 (in determining coverage "we consider what an objectively

reasonable insured, reading the relevant policy language, would expect to be covered"). To do so would override the parties' intended scope of coverage, as set forth in the policy language.[3]

There is no "special test" for determining the existence of a duty to defend under 'personal injury' coverage, as GAIC intimates. The test is the same as that applied for any other type of coverage. *See BSO*, 545 N.E.2d at 1159. Whether the injuries arose from the commission of a listed offense must be determined with reference to the descriptions of offenses provided in the policy. In the context of the "offense" described as "publication of material that . . . disparages a person or organization's . . . products," the policy language dictates the two-pronged test discussed above, *i.e.,* whether the insured allegedly disparaged an organization's products, and whether the claimant's alleged injury arose out of the alleged disparagement. Because *Modesto* satisfied this two-pronged test, it triggered GAIC's duty to defend.

That other jurisdictions may approach the issue differently is of no moment. The SJC's decision in *BSO* forecloses the approach taken in *Microsoft Corp. v. Zurich American Insurance Co.*, 2001 WL 765871 (W.D. Wash. July 2, 2001), *QSP, Inc. v. Aetna Casualty & Surety Co.*,

---

[3] Curiously, GAIC cites *Titan Holdings Syndicate, Inc. v. City of Keene, N.H.*, 898 F.2d 265 (1st Cir. 1989), for the proposition that "courts in this Circuit, applying Massachusetts law, look to whether the allegations in the underlying complaint . . . state or adumbrate the required elements of the relevant 'personal injury' offence." GAIC Memo at 7. GAIC's reliance on *Titan* is misplaced.

First, *Titan* was decided on the basis of New Hampshire law, not Massachusetts law. *Titan*, 898 F.2d at 268. Second, even were *Titan* applicable, it does not support GAIC's position because it expressly rejected an insurer's attempt to substitute the formal elements of a tort in place of an insurer's chosen policy language. *Id.* at 273. Policy language at issue in *Titan* provided coverage for "personal injury . . . arising out of . . . wrongful entry or eviction or other invasion of the right to private occupancy." *Id.* at 271. The insured sought a defense against allegations that odors, noise, and light emitted by the insured's sewage treatment plant had interfered with another's property. *Id.* at 273. The insurer refused coverage on the basis that the underlying suit failed to allege physical invasion of property, a required element of the tort of trespass. *See Id.* Although recognizing the absence of allegations of physical invasion, the *Titan* court rejected the insurer's argument, stating, "it is reasonable and consonant with the ordinary meaning of the clause to hold that the suit alleges . . . an invasion [of the right to private occupancy], and so is covered by [the] policy." *Id.* In reaching this conclusion, the *Titan* court explored the possible relationship between the policy language and recognized torts such as trespass, but ultimately applied the policy language to hold in favor of coverage without finding the elements of any particular tort to have been satisfied. *Id.* at 272-73 (citing *Town of Epping v. St. Paul Fire & Marine Ins. Co.*, 444 A.2d 496, 499 (N.H. 1982) for the proposition that "other invasions of private occupancy" lacks precise definition); *see also Town of Goshen v. Grange Mut. Ins. Co.*, 424 A.2d 822, 825 ("other invasions of private occupancy" lacks "definitional clarity as to the scope of coverage").

773 A.2d 906 (Conn. 2001), and *Purdue Frederick Co. v. Steadfast Insurance Co*. 2005 WL 1662028 (N.Y. Sup. Ct. July 12, 2005) no matter how well-reasoned GAIC thinks these cases may be. *See Dash v. Chicago Ins. Co.*, 2004 U.S. Dist. LEXIS 17309, at *35 (D. Mass. 2004) ("there is no basis for a federal court, sitting in diversity, to carve a backwards-looking limitation out of well-established Massachusetts Supreme Judicial Court precedent"); *accord Porter v. Nutter*, 913 F.2d 37, 40-41 (1st Cir. 1990). The decision in each of these cases turned on the courts' interpretation of policy language as referring exclusively to the tort of product disparagement, the very approach rejected by the SJC in *BSO*. They did not, as GAIC contends, apply the same analytical framework as Massachusetts courts. Quite the opposite is true. Whereas the *Microsoft*, *QSP*, and *Purdue* courts gave "disparage" a technical, legal meaning and therefore imported the elements of the tort of product disparagement into the policies, *BSO* demonstrates that the SJC would refuse to do likewise.

### III. The Decision in *Knoll Pharmaceutical* Illustrates That a Court Applying BSO to the Present Case Would Conclude that *Modesto* Triggered GAIC's Duty to Defend Riso

Although *Microsoft*, *QSP*, and *Purdue* conflict with *BSO*, the District Court for the Northern District of Illinois' decision in *Knoll Pharmaceutical* is consistent with *BSO*, and demonstrates that a court applying *BSO*'s logic to the present case would find in favor of Riso. *See Knoll*, 152 F.Supp.2d at 1034-35. As set forth in detail in Riso's memorandum in support of its own motion for summary judgment, the *Knoll* court, like the SJC in *BSO*, refused to give "disparage" a technical legal meaning. *Id.* at 1038. Thus, coverage under the implicated policy provision did not depend on whether the underlying allegations satisfied the elements of the tort of product disparagement. *See id.* The court reasoned as follows: (1) "Disparagement has been defined as "words which criticize the quality of one's goods or services"; (2) "Consequently allegations that . . . [the insured] advertised that [its drug] is superior to all other drugs that treat

[the same condition], are disparaging in that they criticize the quality of other companies' . . . products as being inferior. . . ."; (3) thus, the allegations are "within the categories of wrongdoing that the policies cover." *Id.* The *Knoll* decision did not turn on the common law elements of product disparagement under Illinois law; it made no reference to them whatsoever. Rather, the court reached its conclusion on the basis of the policy language. Because the *Knoll* court applied the same analytical framework as *BSO* to find in favor of coverage, *Knoll* illustrates that a court applying the logic of the SJC's decision in *BSO* to the present case should rule that GAIC had a duty to defend Riso in *Modesto*.

GAIC's attempts to distinguish *Knoll* are without basis. *Knoll* did not "turn on an unusual provision of Illinois law which . . . permits a party to assert a claim for product disparagement . . . on behalf of another party." GAIC Memo at 16. The common law elements of the tort of product disparagement under Illinois law – as under Massachusetts and California law – require that the disparaging statement be made "of and concerning" the plaintiff's products. *Shivarelli v. CBS, Inc.*, 776 N.E.2d 693, 702-703 (Ill. App. 2002); *Richard Wolf Med. Instruments Corp. v. Dory*, 723 F.Supp. 37, 42 (N.D.Ill. 1989) ("one of the elements of the tort of commercial disparagement [under Illinois law] . . . is disparagement of the goods, services, or business of the plaintiff"); *Unique Concepts, Inc. v. Manuel*, 669 F.Supp. 185, 190 (N.D.Ill. 1987) ("a tort claim for commercial disparagement under Illinois common law . . . arises when the defendant has made a statement which falsely disparages the quality of either the goods plaintiff sells or the services plaintiff performs").[4] Rather, *Knoll* turned on the court's refusal to

---

[4] The *Knoll* court's observation that a consumer would have standing under the Illinois Uniform Trade Practices Act ("IUTPA") to bring a suit for unfair competition based on disparagement allegations, *see Knoll*, 152

interpret "publication of material that . . . disparages a[n] organization's . . . products" as unambiguously referring to the tort of product disparagement. In making this determination, the District Court followed *Winklevoss Consultants, Inc. v. Fed. Ins. Co.*, 11 F.Supp. 995 (1998), which effectively is the Illinois equivalent of *BSO*. *Knoll*, 152 F.Supp. at 1037. Construing policy language identical to that at issue here, the *Winklevoss* court had concluded, as did the SJC in *BSO*, that "the policy offense of 'disparagement' is not synonymous with common law commercial disparagement." *Winklevoss*, 11 F.Supp at 1000.

Similarly meritless is GAIC's argument that the *Knoll* decision relied on an "unreasonable, limitless interpretation of the 'arising out of language'" that Massachusetts courts would not adopt. GAIC Memo at 17-18. As Riso has previously discussed, this argument fails because the causal connection between Riso's alleged disparagement and the *Modesto* plaintiffs' injury is abundantly clear. *See supra*, at § I.B. Riso allegedly disparaged non-Riso products; plaintiffs acted to their detriment as a direct result. Moreover, in *Open Software* the First Circuit recognized the sufficiency of the causal connection in *Knoll* between the alleged disparagement and plaintiffs' injury, implying that it would rule likewise if presented with similar facts. *Open Software*, 307 F.3d at 24, n.12. It thus would hardly stretch the definition of "arising out of" to hold GAIC to its obligation to defend Riso against *Modesto*.

Finally, GAIC attempts to distinguish *Knoll* on the ground that the policies at issue here provide coverage only for suits where the insured is "legally obligated to pay damages because of personal injury." GAIC Memo at 18. GAIC argues that because the *Modesto* plaintiffs did not seek damages for product disparagement, they did not seek damages because of any

---

F.Supp.2d at 1037, likewise does not distinguish *Knoll* from the present case. Both California and Massachusetts also would permit suits by injured consumers, not simply competitors, under their respective unfair trade practices statutes. Cal. Bus. & Prof. Code § 17203; Mass. Gen. Laws ch. 93A, § 9.

"personal injury" offense. *Id.* This argument is circular. It merely restates GAIC's contention that the pertinent "personal injury" offense refers exclusively to the tort of product disparagement. Because Massachusetts courts would conclude that the *Modesto* complaint contained allegations falling within the policies' definition of personal injury, the *Modesto* plaintiffs clearly did seek damages for a personal injury offense as that term is defined in the policies.

### IV.  There is No Unfairness in Enforcing the Policies as Written

As the foregoing discussion demonstrates, the specific wording of the definition of "personal injury" in liability policies has the effect of setting up a dichotomy. On the one hand, certain "offenses" are clearly described by reference to recognized torts, such as malicious prosecution. A claim will be found to allege such an offense only if all elements of the common law tort are pleaded. On the other hand, certain "offenses" are described in more generic terms, and this group includes, for example, "publication of material that . . . disparages a person's or organization's . . . products." A claim will be found to allege such an offense if it falls within the descriptive wording of the policy, regardless of whether it pleads all elements of a recognized common law tort cause of action. The court may explore the question whether the law provides a remedy for the allegations made – as the *Knoll* court considered the availability to consumer plaintiffs of a claim under the IUTPA – but the policy wording is the touchstone.

For this reason, GAIC's assertion that the policies "do not provide coverage for antitrust claims" is not only untrue, but misses the point. *See* GAIC Memo at 1. Because antitrust claims often involve allegations of injury caused by disparaging competitors' products, insureds may reasonably expect that such claims fall within the "offense" of "publication of material that . . .

disparages a person's or organization's goods [or] products." As GAIC's counsel recently observed:

> Depending upon the particular facts alleged in the complaint, such a claim could closely resemble a common law claim for product disparagement or trade libel. In such a situation, it would be reasonable for an insured to argue that the claim involves "personal and advertising injury" arising out of the offense of "disparagement."

Richard H. Nicolaides, Jr. & Jonathan T. Viner, *Disparagement Claims Under the CGL's Personal and Advertising Injury Coverage*, CLAIMS LAW UPDATE (Spring, 2005). When an insurer deliberately chooses wording broad enough to encompass such claims, it is fair to impose on the insurer the natural consequence of that choice. As the SJC instructs, "If an insurer desires to cover, and therefore to defend against, only those actions seeking damages for . . . product disparagement . . . then the insurer can issue a policy that says as much." *BSO*, 545 N.E.2d at 1159. Like the insurer in *BSO*, GAIC chose not to do so, and there is no basis under either the policy language or Massachusetts law for retroactively imposing such a limitation.

## CONCLUSION

Because the *Modesto* complaint alleged (A) that Riso published material that disparaged an organization's products, and (B) that the *Modesto* plaintiffs' injury arose as a result, *Modesto* triggered GAIC's duty to defend Riso. Riso therefore respectfully requests that this Court deny GAIC's motion for summary judgment.

                                                RISO, INC.

                                                By its attorneys,

/s/ Martin C. Pentz
Martin C. Pentz  BBO# (39405)
Jeremy A. M. Evans  (BBO# 661048)
Foley Hoag, LLP
155 Seaport Boulevard
Boston, MA 02210-2600
(617) 832-1000

Dated: September 8, 2005