IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| GREAT AMERICAN ALLIANCE INSURANCE COMPANY, et al., <br><br> Plaintiffs, <br><br> v. <br><br> RISO, INC. <br><br> Defendant. | Consolidated Civil Action Nos. 04-12260-GAO <br> 04-12397-GAO |
| RISO, INC., <br><br> Plaintiff, <br><br> v. <br><br> GREAT AMERICAN INSURANCE COMPANY, et al., <br><br> Defendants. | Honorable Judge George A. O'Toole, Jr. |

**MEMORANDUM IN OPPOSITION TO
RISO'S MOTION FOR SUMMARY JUDGMENT**

GREAT AMERICAN ALLIANCE INSURANCE COMPANY, GREAT AMERICAN ASSURANCE COMPANY, GREAT AMERICAN INSURANCE COMPANY and GREAT AMERICAN INSURANCE COMPANY OF NEW YORK

By their attorneys,

Richard H. Nicolaides, Jr.
Mary F. Licari
Sarah E. Eversman
Bates & Carey LLP
191 N. Wacker Driver
Suite 2400
Chicago, IL 60606

A. Hugh Scott (BBO #449160)
Robert A. Kole (BBO #633269)
Choate, Hall & Stewart LLP
Two International Place
100-150 Oliver Street
Boston, MA 02110

3979774v1

## TABLE OF CONTENTS

I. INTRODUCTION ........................................................................................................ 1

II. ARGUMENT .............................................................................................................. 1

    A.    Under Settled Principles Of Insurance Contract Construction, The Great American Policies Do Not Provide Coverage For RISO's Antitrust Claims ............................................................................................... 1

    B.    Even Applying The Broad Duty To Defend Standard Of *Boston Symphony*, Great American Had No Duty To Defend RISO In The Modesto Action .................................................................................................. 6

        1.    As RISO Admits, *Boston Symphony* Is Factually Inapposite ..................... 6

        2.    The *Knoll* Court's Ruling Had Nothing To Do With The Scope Of The Duty To Defend And Everything To Do With Peculiarities Of Illinois Law ................................................................. 11

    C.    *Western Duplicating* Is Relevant Only As An Example Of A Complaint That, Unlike The Modesto Complaint, Is "Reasonably Susceptible" Of Adumbrating A Claim For Disparagement ........................................................ 12

III. CONCLUSION ........................................................................................................ 15

## TABLE OF AUTHORITIES

Cases

*Boston Symphony Orchestra, Inc. v. Commercial Union Ins. Co.*, 406 Mass. 7 (1989) ................passim

*Dryden Oil Co. of New England, Inc. v. Travelers Indem. Co.*, 91 F.3d 278 (1st Cir. 1996) ................4

*Farm Family Mut. Ins. Co. v. Whelpley*, 54 Mass. Ct. App. 743 (2002) ................10

*Fireman's Fund Ins. Co. v. Special Olympics Intl., Inc.*, 346 F.3d 259 (1st Cir. 2003) ................4

*Global Naps, Inc. v. Federal Ins. Co.*, 336 F.3d 59 (1st Cir. 2003) ................10

*Knoll Pharm. Co. v. Automobile Ins. Co. of Hartford*, 152 F. Supp.2d 1026
    (N.D. Ill. 2001) ................6, 11, 12

*Massachusetts Insurers Insolvency Fund v. Safety Ins. Co.*, 439 Mass. 309 (2003) ................4

*Microsoft Corp. v. Zurich Amer. Ins. Co.*, 2001 WL 765871 (W.D. Wash. July 2, 2001) ................3, 11, 12

*Mission Ins. Co. v. United States Fire Ins. Co.*, 401 Mass. 492 (1988) ................4

*New England Tea & Coffee Co. v. Fireman's Fund Ins. Co.*, 54 Mass. App. Ct. 903 (2002) ................9

*Open Software Foundation, Inc. v. United States Fidelity and Guar. Co.*, 307 F.3d 11
    (1st Cir. 2002) ................10, 11, 13

*Purdue Frederick Co. v. Steadfast Ins. Co.*, No. 601345/04, 2005 WL 1662028
    (N.Y. Super. Ct. July 12, 2005) ................11, 12

*QSP, Inc. v. Aetna Cas. and Sur. Co.*, 773 A.2d 906 (Conn. 2001) ................11, 12

*Ruggerio Ambulance Serv., Inc. v. National Grange Mut. Ins. Co.*, 430 Mass.
    794 (2000) ................10

*Stein-Brief Group, Inc. v. Home Indem. Co.*, 76 Cal. Rptr.2d 3 (Cal Ct. App. 1998) ................4

*Sterilite Corp. v. Continental Cas. Co.*, 17 Mass. App. Ct. 316 (1984) ................2

*Titan Holdings Syndicate, Inc. v. City of Keene*, 898 F.2d 265 (1st Cir. 1990) ................5

*Transamerica Ins. Co. v. KMS Patriots LP*, 52 Mass. App. Ct. 189 (2001) ................14

*Wake Stone Corp. v. Aetna Cas. and Sur. Co.*, 995 F. Supp. 612 (E.D. N.C. 1998) ................5

*Western Duplicating, Inc. v. RISO, Inc.*, No. CIV S 98 0208 FCD GGH (E.D. Cal.) ................12

I. **INTRODUCTION**

RISO's motion for summary judgment is based on a selective (and erroneous) reading of the Great American Policies,[1] and a great (and erroneous) overstatement of the Supreme Judicial Court's holding in *Boston Symphony Orchestra, Inc. v. Commercial Union Ins. Co.*, 406 Mass. 7 (1989). RISO ignores the plain language of the personal injury insuring agreement, which as a predicate to coverage states that the insured must be "legally obligated to pay damages because of personal injury." This language is dispositive because the Modesto Plaintiffs did not seek -- and indeed could not have sought -- damages from RISO "because of" any personal injury offense against them.

*Boston Symphony* is factually distinguishable from this action, as RISO readily admits. Unlike the Modesto Plaintiffs, the plaintiff in *Boston Symphony* could potentially have sought damages from the insured for disparagement and did, in fact, allege that the insured made disparaging statements about her. Here, the Modesto Plaintiffs alleged that RISO disparaged a third party. The Modesto Plaintiffs could never have recovered damages from RISO for disparaging statements about a third party. Thus, RISO was not, and could not be, "legally obligated to pay damages" because of disparagement in the Modesto Action. Accordingly, Great American, not RISO, is entitled to summary judgment here.

II. **ARGUMENT**

   A. **Under Settled Principles Of Insurance Contract Construction, The Great American Policies Do Not Provide Coverage For RISO's Antitrust Claims.**

The principles of insurance contract construction that apply to the parties' cross-motions for summary judgment are not in dispute. As RISO acknowledges in its opening brief, Great

---

[1] Unless otherwise indicated, the definitions of certain terms set forth in Great American's Memorandum Of Law In Support Of Its Motion For Summary Judgment ("Great Am. Br.") apply here.

American could only have owed RISO a defense in the Modesto Action if the allegations of the Modesto Complaint were "'reasonably susceptible of an interpretation that they state or adumbrate a claim covered by the policy terms ....'" Memorandum In Support Of RISO, Inc.'s Motion For Summary Judgment On Insurer's Duty to Defend ("RISO Br.") at 9 (quoting *Sterilite Corp. v. Continental Cas. Co.*, 17 Mass. App. Ct. 316, 318 (1984)). Thus, as RISO admits, "'the process is one of envisaging what kinds of *losses* may be proved as lying within the range of the allegations of the [underlying] complaint ....'" *Id.* (emphasis added). "Envisaging what kinds of losses may be proved" with respect to the Modesto Complaint could never result in a loss because of disparagement.

Even if every allegation in the Modesto Complaint were proven to be true -- and even if every fact known or readily knowable by Great American relating to the Modesto Complaint were taken as gospel -- RISO would not have had to pay one dime of losses to the Modesto Plaintiffs as a result of a personal injury offense. The reason is simple -- the Modesto Plaintiffs were not seeking damages from RISO for any such offense. Nicolaides Aff., Tab O, Responses 4-11. Instead, the Modesto Plaintiffs were seeking damages from RISO strictly because RISO allegedly violated federal antitrust laws and the Massachusetts Consumer Protection Act. *Id.*, Tab N. Because such claims undisputedly are *not* covered by the Great American Policies, Great American could not, as a matter of law, have had a duty to defend RISO with respect to the Modesto Complaint.

Faced with these immutable, and ultimately dispositive, facts, RISO argues that the Great American Policies provide coverage for "publication of material that ... disparages *a person's* or organizations goods, products or services," as opposed to "*the underlying plaintiff's* goods, products or services." RISO Br. at 11 (emphasis added). This argument proves too much.

Following RISO's logic, Great American has a duty to defend anytime a complaint could somehow be construed to relate in some manner to disparagement of someone -- anyone -- not strictly the underlying plaintiffs who seek damages from the insured. Under RISO's interpretation, an insurer would have a duty to defend under the personal injury insuring agreement for *any* type of claim -- whether an antitrust violation, an auto accident, an assault and battery, or anything else -- so long as the plaintiff included an allegation in its complaint that someone, somewhere was disparaged. RISO's position not only defies common sense, it ignores the plain language of the Great American Policies.

A necessary predicate to application of the personal injury insuring agreement is that the insured must be "legally obligated to pay damages because of personal injury." *E.g.* Nicolaides Aff., Tab A, p. 4. Great American has the "right and duty to defend any 'suit' seeking those damages" -- *i.e.* only those damages RISO is "legally obligated to pay."

Tellingly, RISO barely mentions this policy language in its brief. RISO Br. at 11-13. The reason is obvious -- RISO cites no authority, and Great American is aware of none, holding that an insured could be "legally obligated to pay damages" to a plaintiff based on the insured's disparagement of a third party, *i.e.* someone other than the plaintiff. As the Court succinctly stated in *Microsoft*:

> The Court's reasoning is bolstered by the plain language of the disputed policies[.] Defendants are obligated only to pay for "those sums that the insured becomes *legally obligated to pay as damages* because of 'personal injury' or 'advertising injury.'" Because the Underlying Complaints cannot be read to include any causes of action for disparagement, it is fair to conclude that plaintiff will never become legally obligated to pay damages arising from any allegations of disparagement in the pending anti-trust litigation.

*Microsoft Corp. v. Zurich Amer. Ins. Co.*, 2001 WL 765871, *6 (W.D. Wash. July 2, 2001) (emphasis added).

- 3 -

3979774v1

What RISO seeks here is an expansive reading of the definition of personal injury, while ignoring the unambiguous "legally obligated to pay as damages because of personal injury" language that forms the predicate for coverage under the personal injury insuring agreement. RISO's interpretation runs afoul of fundamental principles of insurance policy interpretation. As set forth by the Massachusetts Supreme Judicial Court in *Mission Ins. Co. v. United States Fire Ins. Co.*, 401 Mass. 492, 497 (1988) (citation omitted), courts should construe insurance policies as a whole "'without according undue emphasis to any particular part over another.'" Courts must further read a policy "in the context of the insurance scheme in Massachusetts;" in other words, consistent with the purpose of the insurance. *Massachusetts Insurers Insolvency Fund v. Safety Ins. Co.*, 439 Mass. 309, 313 (2003). *See also Fireman's Fund Ins. Co. v. Special Olympics Intl., Inc.*, 346 F.3d 259, 261 (1st Cir. 2003) (citation omitted) ("'courts may not single out an isolated word or phrase at the expense of the language as a whole;' '[t]he object of the court is to construe the contract as a whole, in a reasonable and practical way, consistent with its language, background, and purpose'"). There simply is no rational way to read the personal injury insuring agreement as a whole, including the "legally obligated to pay as damages because of personal injury" language, as mandating coverage for damages the insured never could have been legally obligated to pay.

This conclusion is further supported by the fact that courts construe the personal injury insuring agreement narrowly, not expansively, as RISO's arguments demand. *Dryden Oil Co. of New England, Inc. v. Travelers Indem. Co.*, 91 F.3d 278, 285-86 (1st Cir. 1996) (citation omitted) (definition of "personal injury" is "very limited" and should not be broadly construed). *See also Stein-Brief Group, Inc. v. Home Indem. Co.*, 76 Cal. Rptr.2d 3, 9 (Cal Ct. App. 1998) (citations omitted) ("personal injury coverage is not dependent on an occurrence ... but arises out

- 4 -

of one or more offenses specified in the policy ... like bodily injury and property damage coverage, personal injury coverage is limited to tort damage"); *Wake Stone Corp. v. Aetna Cas. and Sur. Co.*, 995 F. Supp. 612, 615 (E.D. N.C. 1998) (citation omitted) ("'personal injury' coverage under a Commercial General Liability policy is limited to coverage for those torts specifically enumerated in the policy itself").

Applying these well-settled principles of insurance contract construction, the First Circuit Court of Appeals -- one year after the Supreme Judicial Court issued its decision in *Boston Symphony* (*see infra* at 6-10) -- rejected an insured's claim for personal injury coverage where the insured was not "legally obligated to pay damages" for disparagement. *See Titan Holdings Syndicate, Inc. v. City of Keene*, 898 F.2d 265, 271-272 (1st Cir. 1990). The First Circuit held that to obtain personal injury coverage, "a suit must be based upon allegations of an offense for which the City [insured] might become liable." *Id.* In concluding that no such suit existed, the First Circuit reasoned:

> The City does not argue that the Meanens' suit alleges injury due to false arrest, detention, imprisonment, or malicious prosecution. Nor do we accept the City's argument that because the Meanens claim to have suffered public ridicule on account of the sewage plant, their complaint falls within the policies' personal injury coverage. To come within the personal injury coverage, a suit must be based upon allegations of an offense for which the City might become liable. The Meanens' writ contains no allegations that the City defamed them or which could otherwise support the City's liability for damages based on "ridicule and jest." The allegations of public ridicule merely elaborate on the claim of mental suffering.

*Id.* Because "a suit must be based upon allegations of an offense for which the [insured] might become liable," which could never happen here, RISO likewise is not entitled to personal injury coverage.

### B. Even Applying The Broad Duty To Defend Standard Of *Boston Symphony*, Great American Had No Duty To Defend RISO In The Modesto Action.

RISO relies almost exclusively upon *Boston Symphony Orchestra, Inc. v. Commercial Union Ins. Co.*, 406 Mass. 7 (Mass. 1989), and *Knoll Pharm. Co. v. Automobile Ins. Co. of Hartford*, 152 F. Supp.2d 1026 (N.D. Ill. 2001), to argue that Great American had a duty to defend RISO in the Modesto Action. RISO is wrong on both fronts. Neither *Boston Symphony* nor *Knoll* assist RISO in its quest for coverage.

#### 1. As RISO Admits, *Boston Symphony* Is Factually Inapposite.

RISO admits that the Modesto Complaint is factually distinct from the underlying claim at issue in *Boston Symphony*. RISO's Br. at 15. This is an important admission, because it is the factual distinction between the Modesto and *Boston Symphony* claims that proves to be the death knell to RISO's argument.

In *Boston Symphony*, the Boston Symphony Orchestra ("BSO") contracted with Vanessa Redgrave Enterprises, Ltd. ("Enterprises") for the actress, Ms. Redgrave, to appear as a narrator in a series of concert performances. *Boston Symphony*, 406 Mass. at 8. Upon announcement of the engagement, the BSO received protests relating to its engagement of Ms. Redgrave, and the BSO decided to cancel its contract with Enterprises. *Id.* Thereafter, Ms. Redgrave's attorneys "communicated with the BSO, demanding an apology and the restoration of Redgrave's engagement. Barring the BSO's acquiescence to their demands, Redgrave's attorneys threatened a lawsuit to vindicate their client's rights, including among others, her 'right' to speak freely, her 'right' to perform without fear of blacklisting or discrimination, and her 'right' not to be subjected to public ridicule or embarrassment." *Id.* at 8-9. The BSO forwarded the demand letter to its liability insurer, "together with a letter which enunciated the BSO's expectation that Redgrave's suit, when and if it came, would involve claims for damage to her personal and

- 6 -

3979774v1

business reputation." *Id.* at 9. Ultimately, Ms. Redgrave filed suit against BSO for "repudiation and breach of contract," which allegedly "led others to refrain from hiring Ms. Redgrave for professional engagements." *Id.* BSO's insurer, Commercial Union Insurance Company ("Commercial Union"), elected not to defend the BSO, because Ms. Redgrave "did not state a claim for damages arising out of" the personal injury offense of disparagement. *Id.* at 12.

The Massachusetts Supreme Judicial Court ("SJC") disagreed, reasoning that the duty to defend "is based on the facts alleged in the [underlying] complaint and those facts which are known by the insurer." *Id.* at 11. It was those facts, known to Commercial Union and extrinsic to the underlying complaint, that caused the SJC to hold that Commercial Union had a duty to defend. The SJC reasoned:

> Commercial Union knew from Redgrave's complaint that she sought consequential damages for the BSO's alleged breach and repudiation of its contract with her. The factual basis for Redgrave's claim was her allegation that the BSO's breach "led others to refrain from hiring [her] for professional engagements." This language could be, as the insurer argues, simply an allegation that a number of specific engagements that would normally have been offered to Redgrave were not in fact offered to her as a result of the BSO's breach of contract. Alternatively, however, the language is fairly susceptible to another interpretation. Redgrave may have been alleging that the BSO's cancellation of "Oedipus Rex," in the circumstances, was a statement about Redgrave which damaged her reputation and caused others not to hire her.
>
> Prior to receiving Redgrave's complaint, Commercial Union knew that the BSO had made a public cancellation of "Oedipus Rex." Commercial Union also knew that Redgrave thought that the cancellation subjected her to public ridicule and embarrassment. Redgrave's attorney said as much in his demand letter to the BSO. With this background, we think that the complaint is all the more susceptible to the interpretation that Redgrave's reputation was damaged and that because of that, others would not hire her.

*Id.* (citations and footnote omitted).

The lynchpin of the SJC's holding in *Boston Symphony* was the fact that the allegations in the underlying complaint, combined with the extrinsic facts known by the insurer, were "reasonably susceptible" to an interpretation that the plaintiff sought damages from the insured because *she* was disparaged. In each instance cited by the SJC, BSO's acts were "of and concerning" Ms. Redgrave. *See id.* at 9 ("Redgrave's suit ... would involve claims for damage to her personal and business reputation"); *id.* at 11 ("Redgrave may have been alleging that the BSO's cancellation of 'Oedipus Rex' ... was a statement about Redgrave which damaged her reputation and caused others not to hire her"); *id.* ("we think that the complaint is all the more susceptible to the interpretation that Redgrave's reputation was damaged and that because of that, others would not hire her"); *id.* at 12 ("The essence of Redgrave's claim ... was that BSO's breach of contract somehow spoke slightingly about her and damaged her reputation."). In fact, the SJC specifically stated that the "consequential damages sought by Redgrave were analogous to damages for defamation." *Id.* at 1, n.4. Thus, according to the SJC, the possibility existed that Ms. Redgrave could recover damages from the BSO because the BSO disparaged her, thereby potentially triggering a duty to defend.

Conversely, as explained more fully in Great American's opening brief, there is no such possibility here, because the "of and concerning" requirement is wholly missing. Great Am. Br. at 10. It is the complete absence of even the possibility that the Modesto Plaintiffs could recover damages for disparagement that materially distinguishes *Boston Symphony* from Modesto. This distinction renders RISO's reliance on *Boston Symphony* inapt.

RISO also argues that the SJC in *Boston Symphony* rejected the insurer's assertion that the policy terms "publication ... of ... disparaging material" should be interpreted as referring exclusively to the tort of product disparagement. RISO Br. at 12. RISO's argument is beside the

point. First, it is immaterial whether this Court gives the term "disparage" the legal definition of product disparagement, the more informal Webster's definition relied upon by the SJC in *Boston Symphony*, or some other definition in between.[2] The fact remains that RISO does not assert, as it cannot, that it could have been "legally obligated to pay damages because of" disparagement, as the Modesto Plaintiffs did not allege that they were disparaged by RISO (or by anyone else).

Second, the definition of "personal injury" at issue in *Boston Symphony* was different from the definition of "personal injury" in the Great American Policies. The Commercial Union policy in *Boston Symphony* provided coverage for "personal injury 'arising out of ... the publication or utterance of a libel or slander or of other defamatory [or] disparaging material.'" *Boston Symphony*, 406 Mass. at 10. The language "other defamatory [or] disparaging material," which formed the basis for the SJC's decision, is not contained in the Great American Policies. The Great American Policies instead define "personal injury" strictly as "oral or written publication of material that ... disparages a person's or organization's goods, products or services." *E.g.* Nicolaides Aff., Tab A, p. 13. The Massachusetts Court of Appeals has determined that this difference in policy language is critical. *See New England Tea & Coffee Co. v. Fireman's Fund Ins. Co.*, 54 Mass. App. Ct. 903, 903-04 (2002) (appellate court reversed trial court for wrongly applying *Boston Symphony*; court held that *Boston Symphony* is not controlling where a policy contains a "more restrictive" definition of "personal injury -- like that in the Great American Policies -- and the insured failed to make a public statement disparaging the

---

[2] RISO relies on authority which stands for the general proposition that an insurer must look beyond the legal theory or causes of action pled in the underlying complaint to the actual facts alleged in order to determine whether it has a duty to defend. RISO Br. at 14-15 (collecting authorities). This authority is inapplicable here. Great American did not rely on the labels given by the Modesto Plaintiffs to the causes of action asserted in the Modesto Complaint in declining to defend RISO in the Modesto Action. Instead, Great American relied on the fact that, regardless of the causes of action asserted, the Modesto Plaintiffs were not seeking to recover damages from RISO for any personal injury offense. *See supra* at 2-5.

underlying plaintiff).[3] Thus, *Boston Symphony* did not eliminate the "of and concerning" requirement.

Finally, recognizing that its holding in *Boston Symphony* could be wrongly interpreted as RISO attempts here, the SJC was careful to warn that its opinion:

> should not be taken to mean that an insured can, in the absence of a complaint that requires coverage, force its insurer to defend the insured by simply telling the insurer facts which would create coverage. We hold only that an insurer must give consideration to facts outside the complaint when it considers the allegations in the complaint to determine if coverage exists.

*Boston Symphony*, 406 Mass. at 15. Courts have taken this warning to heart. The SJC and lower courts do not cite *Boston Symphony* for its discussion of personal injury coverage, but instead for the proposition that under Massachusetts law, an insurer's duty to defend "is based on the facts alleged in the [underlying] complaint and those facts which are known by the insurer." *See Ruggerio Ambulance Serv., Inc. v. National Grange Mut. Ins. Co.*, 430 Mass. 794, 796 (2000) ("[i]t is axiomatic that an insurance company's duty to defend is broader than its duty to indemnify ... [T]he duty to defend 'is based on the facts alleged in the complaint and those facts which are known by the insurer,'" citing *Boston Symphony*).[4] Here, there are no facts to alert Great American to a duty to defend because the Modesto Plaintiffs did not, and could not as a matter of law, seek damages from RISO for disparagement.

---

[3] While RISO admits that, in all other contexts, Massachusetts courts construe personal injury offenses as "legal terms of art," RISO suggests that a single exception exists for the personal injury offense of disparagement. RISO Br. at fn.3. RISO cites no support for this dubious proposition other than *Boston Symphony*. As set forth herein, the SJC in *Boston Symphony* did not make the ruling RISO suggests.

[4] *See also Open Software Foundation, Inc. v. United States Fidelity and Guar. Co.*, 307 F.3d 11, 14 (1st Cir. 2002) (the SJC has "observed that the duty to defend 'is based on the facts alleged in the complaint and those facts which are known by the insurer,'" citing *Boston Symphony*); *Global Naps, Inc. v. Federal Ins. Co.*, 336 F.3d 59, 62 (1st Cir. 2003) ("[i]t is axiomatic that an insurance company's duty to defend is broader than its duty to indemnify," citing *Boston Symphony*); *Farm Family Mut. Ins. Co. v. Whelpley*, 54 Mass. Ct. App. 743, 747 (2002) ("[b]ecause the duty to defend is based on the facts alleged in the complaint and those facts which are known by the insurer, the plaintiff rightfully disclaimed its duty to defend and brought a declaratory action to determine its duties," citing *Boston Symphony*).

3979774v1

> 2. **The *Knoll* Court's Ruling Had Nothing To Do With The Scope Of The Duty To Defend And Everything To Do With Peculiarities Of Illinois Law.**

To avoid application of one of several cases on point that squarely rules against RISO, *QSP, Inc. v. Aetna Cas. and Sur. Co.*, 773 A.2d 906 (Conn. 2001), RISO argues that only *Knoll Pharm. Co. v. Automobile Ins. Co. of Hartford*, 152 F. Supp.2d 1026 (N.D. Ill. 2001) is consistent with the SJC's ruling in *Boston Symphony* -- "*QSP* is not." RISO's Br. at 17. But every court confronted with a fact pattern virtually identical to RISO's Modesto claim has soundly rejected coverage for the claim, even while applying a duty to defend standard as broad as *Boston Symphony*.[5] The *Microsoft*, *QSP* and *Purdue* courts each found no duty to defend because, as the *QSP* court explained, the underlying plaintiffs were "not the proper parties to raise the allegations that ... trigger coverage, nor did the plaintiffs suffer any injury that would be causally connected to any offense covered under 'personal injury.'" *QSP*, 773 A.2d at 915. *See also Microsoft*, 2001 WL 765871 at *6; *Purdue*, 2005 WL 1662028 at *7.

Thus, it was not the duty to defend standard that dictated a different result in *Knoll*, but rather it was because:

- in *Knoll*, according to the court, a peculiarity of Illinois law allowed a party to assert a claim for product disparagement or unfair competition on behalf of another party;

- in *Knoll*, according to the court, under Illinois law the policy term "arising out of" is "broad and vague" and "must be liberally construed," which is not true of Massachusetts law (*see Open Software Foundation, Inc. v. United States Fidelity and Guar. Co.*, 307 F.3d 11, 24 (1st Cir. 2002));

- the *Knoll* court did not consider the language in the personal injury insuring agreement that restricts coverage to suits where the insured is "legally obligated to pay damages because of personal injury;" the *Boston*

---

[5] *See Microsoft Corp. v. Zurich Am. Ins. Co.*, No. C00-521P, 2001 WL 765871 at *3 (W.D. Wash. July 2, 2001); *QSP*, 773 A.2d at 915; *Purdue Frederick Co. v. Steadfast Ins. Co.*, No. 601345/04, 2005 WL 1662028 at *3 (N.Y. Super. Ct. July 12, 2005).

>*Symphony* court did not consider this issue either, because the "of and concerning" requirement was met.

Great Am. Br. at 16-18. Great American respectfully suggests that *Knoll* is an aberration, limited to its facts and the court's interpretation of Illinois law. The decisions in *QSP*, *Microsoft* and *Purdue* are more directly on point, and provide significantly more persuasive authority than *Knoll*.

### C. *Western Duplicating* Is Relevant Only As An Example Of A Complaint That, Unlike The Modesto Complaint, Is "Reasonably Susceptible" Of Adumbrating A Claim For Disparagement.

RISO refers this Court to a suit filed by one of its Risograph competitors, *Western Duplicating, Inc. v. RISO, Inc.*, No. CIV S 98 0208 FCD GGH (E.D. Cal.) (the "Western Duplicating Action"), in a thinly veiled attempt to piggyback the Modesto Action on Great American's agreement to defend RISO in the Western Duplicating Action. The material differences between the two actions highlight the logic and correctness of Great American's decision to defend RISO in *Western Duplicating* and to deny a defense in *Modesto*.

Great American agreed to defend RISO in the Western Duplicating Action because the underlying plaintiff, a competitor of RISO, alleged that RISO "made false or misleading factual representations" about the plaintiff's services and products. Nicolaides Aff., Tab P at ¶¶137-38. The plaintiff asserted a claim under the Lanham Act against RISO, which "prohibit[s] false and misleading statements and representations made by a defendant about the plaintiff's product or services." *Id.* at ¶136. In *Boston Symphony* terms, Great American had a duty to defend because "the facts alleged in the [underlying] complaint and those facts known by the insurer" were "reasonably susceptible" of setting out a claim of disparagement against RISO by the plaintiff. *Boston Symphony*, 406 Mass. at 11-12.

The Modesto Complaint is a whole different story. RISO admits that the Modesto Plaintiffs did not allege that RISO disparaged any plaintiff, individually or collectively; the Modesto Plaintiffs did not seek damages for disparagement; and RISO did not pay any sums to settle a claim of disparagement. Nicolaides Aff., Tab O, Responses 4-11. The fact that RISO's disparagement of its competitors' products, among a myriad of other deeds, purportedly contributed in some minimal and tangential fashion to the plaintiffs' alleged injuries is not enough under Massachusetts law to create a duty to defend. As the First Circuit explained in *Open Software*, 307 F.3d 11, 21 (1st Cir. 2002), the personal injury offense must "materially contribute" to the underlying plaintiff's injuries. "Materially contributes" connotes a "range of causation narrower than 'but for causation,'" which, at best, is the standard RISO urges. *Id.* at 22. It was RISO's unlawful restraints of trade and anti-competitive conduct that "materially contributed" to the Modesto Plaintiffs' injuries, a fact that must be correct in light of RISO's admissions in this case that no damages were sought by or paid to the Modesto Plaintiffs for disparagement. Nicolaides Aff., Tab O.

To embellish upon the sparse references to disparagement in the Modesto Complaint, RISO cites to an order of the Modesto court, entered over 4 years after the Modesto Plaintiffs' original complaint was filed. The order was entered on a joint motion filed by RISO and the Modesto Plaintiffs to dismiss the Modesto Plaintiffs' individual claims and those of the "putative class" pursuant to settlement of the parties. RISO's Br. at 11. RISO argues:

> Although many of these allegations appear in Count 8 of the Complaint and Count 2 of the Amended Complaint, they are expressly incorporated into each subsequent count. Moreover, the allegations concerning Riso's "concerted strategy ... to falsely disparage non-RISO inks and masters ..." were, according to the *Modesto* court, central to the entire complaint. As the court's November 17 Memorandum and Orders states, "Plaintiffs'

> complaint alleged ten claims ... arising out of defendants' alleged disparagement of non-Riso supplies."

RISO's Br. at 5-6 (citation and emphasis omitted).

Of course, RISO fails to tell this Court that these self-serving allegations were not findings of fact by the Modesto court. Instead, they were allegations lifted from a memorandum drafted by RISO and the Modesto Plaintiffs, while RISO was still demanding a defense from Great American. The Modesto court specifically noted in its opinion that it was not making any findings of fact, but instead "derived all facts referenced in this order from the parties' jointly-filed Memorandum." RISO's Statement of Material Facts, Ex. B 3, p. 2. Are we to believe that RISO drafted this memorandum without an eye to insurance, having settled the Modesto Action and having spent over 3 1/2 years arguing that the Modesto Complaint adumbrates a claim of disparagement? Not likely. Thus, this Court should give no import to the "facts" set out in the court's order.[6]

It is obvious, however, why RISO must resort to such artifice. The Modesto Complaint itself -- upon which any duty to defend by Great American must be based (*supra* at 2) -- contains virtually no mention of disparagement. Nicolaides Aff., Tab N. And, more fundamentally, it contains no allegation that RISO disparaged the Modesto Plaintiffs. *Id.* Accordingly, Great American did not have a duty to defend RISO in the Modesto Action.

---

[6] RISO cannot rely upon an order entered by the court over 4 years after the original Modesto Complaint was filed to argue today that Great American had a duty to defend RISO. *See Transamerica Ins. Co. v. KMS Patriots LP,* 52 Mass. App. Ct. 189, 194-195 (2001) (no duty to defend where there is no evidence insurer was aware of answers to interrogatories that allegedly gave rise to a duty to defend until coverage action was filed).

### III. CONCLUSION

For the reasons set forth herein, and in Great American's Memorandum of Law In Support Of Its Motion For Summary Judgment, Great American respectfully requests that this Court: (a) deny RISO's Motion For Summary Judgment; (b) grant Great American's Motion For Summary Judgment; and (c) grant such other and further relief as the Court deems just and proper.

Respectfully submitted,

GREAT AMERICAN INSURANCE COMPANY, GREAT AMERICAN INSURANCE COMPANY OF NEW YORK, GREAT AMERICAN ASSURANCE COMPANY, and GREAT AMERICAN ALLIANCE INSURANCE COMPANY

By their attorneys,

Richard H. Nicolaides, Jr.
Mary F. Licari
Sarah E. Eversman
Bates & Carey LLP
191 N. Wacker Drive, Suite 2400
Chicago, IL 60606
Tel:   (312) 762-3210
Fax:   (312) 762-3200

A. Hugh Scott (BBO#449160)
Robert A. Kole (BBO#633269)
Choate, Hall & Stewart
Two International Place, 100-150 Oliver Street
Boston, MA  02110
Tel:   (617) 248-5000
Fax:   (617) 248-4000

Date:   September 8, 2005

I HEREBY CERTIFY THAT A TRUE COPY OF THE ABOVE DOCUMENT WAS SERVED UPON THE ATTORNEY OF RECORD FOR EACH OTHER PARTY BY MAIL/HAND ON:
9/8/05