UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| GREAT AMERICAN ALLIANCE INSURANCE COMPANY, GREAT AMERICAN ASSURANCE COMPANY, GREAT AMERICAN INSURANCE COMPANY, AND GREAT AMERICAN INSURANCE COMPANY OF NEW YORK, <br><br> Plaintiffs, <br><br> v. <br><br> RISO, INC., <br><br> Defendant. <br><br> RISO INC., <br><br> Plaintiff, <br><br> v. <br><br> GREAT AMERICAN ALLIANCE INSURANCE COMPANY, GREAT AMERICAN ASSURANCE COMPANY, GREAT AMERICAN INSURANCE COMPANY, AND GREAT AMERICAN INSURANCE COMPANY OF NEW YORK, <br><br> Defendants. | Consolidated Civil Action Nos. 04-12260-GAO <br> 04-12397-GAO |

**MEMORANDUM OF RISO, INC. IN REPLY TO
GAIC'S OPPOSITION TO RISO'S MOTION FOR SUMMARY JUDGMENT**

Riso submits this reply memorandum briefly to address certain arguments raised for the first time in GAIC's memorandum in opposition to Riso's summary judgment motion (Paper No. 26) ("GIAC Opposition").

**ARGUMENT**

I.  **GAIC Had a Duty to Defend Riso in *Modesto*, Without Regard to What Sums Riso May Have Been Legally Obligated to Pay**

The central argument in GAIC's opposition rests on circular reasoning and inapplicable policy language. The policies at issue provide that GAIC had a duty to indemnify Riso for "those sums that the Insured becomes legally obligated to pay as damages because of 'personal injury.'" SMF at ¶ 7(a).[1] The policies further provide that GAIC had a duty to defend Riso against "any 'suit' seeking those damages." SMF at ¶ 7(b). The phrase "those damages" clearly refers to "damages because of 'personal injury.'" *See* SMF at ¶ 7. The policies define "personal injury" to include, among other things, "injury . . . arising out of . . . publication of material that . . . disparages a person's or organization's goods, products or services." SMF at ¶ 8. Hence, GAIC had a duty to defend Riso against "any 'suit' seeking damages because of injury arising out of publication of material that disparages an organization's products." SMF at ¶¶ 7-8 (ellipses omitted). As Riso has previously set forth in detail, *Modesto* was just such a suit. The *Modesto* plaintiffs sought damages because of injury arising out of Riso's alleged publication of material that disparaged competitors' products. Put differently, the *Modesto* complaints alleged: (A) Riso disparaged an organization's (i.e. Riso's competitor's) products; and (B) the *Modesto* plaintiffs' injuries arose as a result. Consequently, the policies obligated GAIC to defend the suit.

GAIC repeatedly argues, however, that "Riso was not, and could not be, 'legally obligated to pay damages' because of disparagement in the Modesto Action," and therefore, GAIC's duty to defend did not attach. GAIC Opposition at 1; *see also id.* at 2-5, 9-10, 12-13. GAIC's argument is flawed for at least three key reasons. First, as is clear from the policy

---

[1] "SMF" refers to Riso's Concise Statement of Material Facts contained in Riso's Motion for Summary Judgment on Insurer's Duty to Defend (Paper No. 18).

language quoted above, the phrase "legally obligated to pay as damages" refers only to the sums for which GAIC has a duty to *indemnify* Riso. GAIC's duty to *defend* does not hinge on whether Riso may ultimately have been legally obligated to pay damages at all. Rather, the duty to defend is triggered by allegations in the complaints, even where those allegations are meritless or insufficient to state any cause of action.[2] *See Garnet Const. Co., Inc. v. Acadia Ins. Co.*, 814 N.E.2d 23, 25 (Mass. App. Ct. 2004); *Winokur, Winokur, Serkey & Rosenberg, PC v. Commerce Ins. Co.*, 2004 WL 1588259, at *3 (Mass. Super. Ct. 2004) (copy attached as Exhibit A). All that the policies require is that the damages sought be "because of 'personal injury,'" as that term is defined in the policies. SMF at ¶ 7. Because the *Modesto* plaintiffs sought damages "because of 'personal injury'" (namely, injury arising out of publication of material that disparaged an organization's products), *Modesto* triggered GAIC's duty to defend.

Second, even ignoring GAIC's apparent confusion between its duty to defend and its duty to indemnify, Riso could have (and indeed did) become legally obligated to pay the *Modesto* plaintiffs damages because of alleged injury arising out of disparaging competitors' products. SMF at ¶¶ 14-20, 22. That the *Modesto* plaintiffs sought a remedy for Riso's alleged disparagement through antitrust and consumer protection claims, not common law product disparagement claims, does not change this result. *See Bagley v. Monticello Ins. Co.*, 720 N.E.2d 813, 817 (Mass. 1999) (duty to defend depends on source of plaintiff's alleged injury, not specific theories of liability). As Riso has previously demonstrated, Riso's allegedly disparaging communications formed the basis for these claims in whole or in part. *See e.g.*, Memorandum in

---

[2] GAIC's interpretation would eviscerate the duty to defend: insurers would have no duty to defend an insured until *after* the insured became legally obligated to pay damages (i.e. after the conclusion of the case, and after the insured incurred all costs of defense). Moreover, the insured would have no incentive for vigorous advocacy, because prevailing in a suit (and therefore not being legally obligated to pay damages) would erase any possibility of reimbursement for defense costs. Thus, GAIC's contention that "a predicate to coverage [is] that the insured must be 'legally obligated to pay damages because of personal injury'" is absurd.

Support of Riso, Inc.'s Motion for Summary Judgment (Paper No. 19), at 11; Opposition of Riso, Inc. (Paper No. 24), at 3-5.  Consequently, GAIC's assertion that "the Modesto Plaintiffs were not seeking damages from RISO for any ['personal injury'] offense" is untrue.

Finally, the foregoing reveals that GAIC's argument is merely that because Riso could not have been legally obligated to pay damages to the *Modesto* plaintiffs for disparagement of the plaintiffs' own products, *Modesto* did not allege a "personal injury" offense.  Because the policies define "personal injury" to include injuries that the *Modesto* plaintiffs alleged, however, GAIC's attempt to make "personal injury" synonymous with the tort of product disparagement is merely a circular restatement of its argument that "publication of material that disparages an organization's products" refers exclusively and unambiguously to a specific tort.  As Riso has previously demonstrated, the policy language does not support this conclusion.  Moreover, because the Massachusetts Supreme Judicial Court ("SJC") in *Boston Symphony Orchestra, Inc. v. Commercial Union Ins. Co.*, 545 N.E.2d 1156 (Mass. 1989) ("*BSO*") expressly rejected an insurer's contention that "publication of . . . disparaging material" refers exclusively and unambiguously to the tort of product disparagement, and chose instead to give "disparage" its ordinary meaning, the interpretation GAIC offers directly conflicts with settled Massachusetts law.  Differently clothed, GAIC's fundamental argument holds no more allure.

**II.  GAIC's Attempts to Distinguish the Facts in *BSO* From Those in the Present Case Do Not Justify Adoption of a Different Interpretation of "Personal Injury" Coverage in This Case**

Although the SJC's decision in *BSO* requires that "publication of material that disparages" be given its ordinary meaning, rather than a technical legal one, GAIC attempts to escape the SJC's holding by pointing to factual distinctions that have no bearing on the applicability of the *BSO* decision to the present case.  First, GAIC argues that the alleged disparaging statements in *BSO* were "of and concerning" the plaintiff, whereas that element of

the tort of product disparagement was absent in *Modesto*. GAIC Opposition at 6-8. The *BSO* decision did not turn on whether the underlying allegations may have satisfied the elements of any particular tort, however. *BSO*, 545 N.E.2d at 1159. Instead of referencing a particular tort or its elements, the SJC ruled in favor of coverage on the basis of the policy language alone. *Id.* Once the SJC concluded that "publication of disparaging material" did not refer unambiguously and exclusively to any particular tort, the tort of disparagement and its elements had no bearing on its ruling. *Id.* Similarly, giving "publication of material that disparages" its ordinary meaning in the present case requires ruling in favor of coverage, whether or not the *Modesto* allegations satisfied the elements of product disparagement. *See id.*

Had satisfying the elements of product disparagement been the linchpin of the *BSO* decision, as GAIC asserts, *BSO* would have come out the other way. The SJC would have found no duty to defend because the allegations failed to satisfy the elements of product disparagement. Vanessa Redgrave and her reputation were not "products" and the "publication" element of the tort was absent because there was no written or oral statement that disparaged the underlying plaintiff. As the Massachusetts Appeals Court observed in *New England Tea & Coffee Co. v. Fireman's Fund Ins. Co.*, 763 N.E.2d 103, 104 (2002), the disparaging "statement" in *BSO* "appeared to flow from the implications of *BSO's* act of canceling a particular performance," rather than from any written or oral statement. In addition, *BSO* contained no allegation that the material published was false. Thus, coverage in *BSO* clearly did not depend on whether the underlying allegations satisfied the elements of product disparagement. Likewise, coverage here does not depend on meeting the "of and concerning" element of that tort.

Second, GAIC observes that the policy wording at issue in *BSO* was slightly different from that at issue here, and contends that the SJC would have reached the opposite result had

*BSO* involved this slightly different language. GAIC Opposition at 9. The *BSO* policies provided coverage for "injury arising out of . . . the publication or utterance of . . . disparaging material." *BSO*, 545 N.E.2d at 1157. The GAIC policies provide coverage for "injury arising out of . . . oral or written publication of . . . material that disparages." SMF at ¶ 8. It is true that the phrases "disparaging material" and "material that disparages" are not identical, but they mean the same thing. The SJC's analysis applies equally to either phrasing. The SJC rejected the insurer's argument that "publication of material that disparages" referred unambiguously to the tort of product disparagement because the form of "disparage" used in the policy was generic ("disparaging") rather than legal ("product disparagement"). *See BSO*, 545 N.E.2d at 1159. Likewise, the GAIC policies did not employ a legal form of "disparage," but a generic form ("disparages"). The slight difference in wording is immaterial. The same analysis applies.

The Massachusetts Appeals Court's ruling in *New England Tea* is not to the contrary. The *New England Tea* court denied coverage to the insured because "there was no public statement (oral or written) made by [the insured]." 763 N.E.2d at 104. This absence of oral or written publication was fatal to the insured, but not because publication may also be an element of the tort of product disparagement. *See id.* The court based its ruling solely on the policy language, making no reference to the tort or its elements. *Id.* Because the policy expressly required "oral or written" publication, without such publication the insurer had no duty to defend. *Id.* The *New England Tea* court distinguished *BSO* solely on the basis that in contrast to the *New England Tea* policy, it was possible to construe the *BSO* policy to cover the disparaging implications of non-verbal acts. *Id.* Because the *Modesto* complaints contain multiple allegations of oral or written publication of disparaging material, the distinction recognized in *New England Tea* does not apply. Moreover, *New England Tea* is entirely consistent with *BSO*:

the court looked to the policy, and reached its ruling without reference to common law disparagement or any other tort. *Id.* Contrary to GAIC's contentions, *New England Tea* does not somehow overrule the SJC's refusal in *BSO* to interpret "disparaging material" as synonymous with the tort of product disparagement.

Third, the SJC's "warning" in *BSO* that an insured may not "force its insurer to defend [it] by simply telling the insurer facts which would create coverage" has no application to this case. *Contra* GAIC Opposition at 10. Riso has not claimed that GAIC is liable because Riso told GAIC "facts that would create coverage." The SJC's admonition concerns only the scope of inquiry an insurer must make in determining its duty to defend. *BSO*, 545 N.E.2d at 1160. It is not an instruction for courts to ignore the *BSO*'s determination that generic references to "disparage" do not exclusively and unambiguously refer to any particular tort. *See id.* Moreover, that other courts have cited *BSO* for the frequently-arising scope-of-inquiry issue, does not somehow render the rest of the SJC's opinion a dead letter. GAIC's attempts to distinguish *BSO* are therefore meritless.

### III. GAIC's Suggestion That the Federal Judge in *Modesto* Parroted a Distorted Characterization of the *Modesto* Complaints is Unfounded

The federal district judge in *Modesto* issued an order approving the dismissal of that putative class action in which he summarized the *Modesto* complaint as alleging "ten claims . . . arising out of [Riso's] alleged disparagement of non-Riso supplies." SMF at ¶15. Because claims for injury arising out of Riso's publication of disparaging material are expressly covered by the policies at issue, GAIC attempts to discredit as "artifice" the judge's summary of the complaint. GAIC Opposition at 14. However, GAIC's observation that some statements contained in the order were derived from the parties' joint submission provides no basis for ignoring the court's summary of the *Modesto* complaint.

First, GAIC's criticism that the *Modesto* court's statements "were not findings of fact" makes no sense. *See* GAIC Opposition at 14. Courts do not usually make findings of fact in order to summarize the allegations of a complaint.[3] Second, GAIC's contention is simply not credible. GAIC suggests without basis that a federal district judge, called upon to review the proposed dismissal of a case originally brought as a class action, simply parroted distorted statements about the allegations underlying the case despite his own extensive familiarity with the proceedings. Not only had Judge Damrell presided over *Modesto* for several years, he had also presided over *Western Duplicating*, which rested on the same allegations that Riso had disparaged non-Riso products.[4] Having presided over both cases, Judge Damrell was especially familiar with the underlying allegations. One need only review the *Modesto* complaint to confirm that the claims were based at least in part, on allegations that Riso injured the plaintiffs and caused them to pay more for supplies by disparaging Riso's competitors. GAIC's suggestion that Riso and the *Modesto* plaintiffs duped Judge Damrell into "lifting" a summary of the allegations at odds with his own knowledge of the case is unjustified and unwarranted.

---

[3] Nor is there any merit to GAIC's complaint that Riso is improperly "rely[ing] on an order entered by the court 4 years after the original Modesto Complaint was filed" to provide a basis for GAIC's duty to defend Riso. *Contra* GAIC Opposition at 14, n. 6. Riso is relying on the allegations in the complaints, of which GAIC was aware shortly after they were filed. Riso has cited the *Modesto* court's order solely to counter GAIC's contention that disparagement was merely tangential to the case. Allegations of Riso's disparaging statements are central to the *Modesto* complaint, but even were they less so, GAIC's duty to defend would still attach. So long as some portion of the alleged injury falls within the scope of coverage, the policies require GAIC to defend Riso. *See Sterilite Corp. v. Cont'l Cas. Co.*, 458 N.E.2d 338, 341 (Mass. App. Ct. 1984).

[4] According to the judge's November 20, 2000 memorandum and order denying Riso's motion to dismiss Western Duplicating's complaint (copy attached hereto as <u>Exhibit</u> B), the same allegations of disparagement were also central to that case. In his own words, Judge Damrell stated that the *Western Duplicating* complaint rested on allegations that Riso engaged in a conspiracy "to spread fear, uncertainty and doubt . . . in the minds of consumers in order to discourage them from purchasing competitive ink and masters." Nov. 20 Memo. & Order at 5. According to Judge Damrell, this alleged disparagement included distributing warnings "stat[ing] that the use of non-Riso supplies may, among other things, harm its Risographs, and damage caused by the use of non-Riso supplies is not covered under the warranty." *Id.* These same allegations of disparagement provide the basis for the *Modesto* complaint.

## **CONCLUSION**

For the foregoing reasons, and for the reasons stated in its original summary judgment papers, Riso requests that this court grant Riso's motion for summary judgment on GAIC's duty to defend. Additionally, Riso requests that this court deny GAIC's cross-motion for summary judgment.

      RISO, INC.

      /s/ Martin C. Pentz
      Martin C. Pentz (BBO# 39405)
      Jeremy A. M. Evans (BBO# 661048)
      Foley Hoag, LLP
      155 Seaport Boulevard
      Boston, MA 02210-2600
      (617) 832-1000

Dated: October 13, 2005