Superior Court of Massachusetts.
WINOKUR, WINOKUR, SERKEY & ROSENBERG, PC [FN1]

FN1. As Assignee of Sea Heights Residents Association, Inc.

v.

COMMERCE INSURANCE COMPANY.
**No. 0100300.**

May 21, 2004.

*MEMORANDUM OF DECISION AND ORDER ON DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT AND PLAINTIFF'S CROSS MOTION FOR PARTIAL SUMMARY JUDGMENT*

PAUL E. TROY, Justice.

***1** The plaintiff, Winokur, Winokur, Serkey & Rosenberg, a law firm, ("Winokur"), commenced this action against Commerce Insurance Company ("Commerce"). Winokur was assigned all the rights and claims that Sea Heights Residents Association ("Sea Heights") had against Commerce. Winokur claims that Commerce should have defended Sea Heights in a counterclaim brought against it by Charles Tringale, Trustee of the Plymouth Bay Realty Trust ("Tringale") pursuant to its insurance policy. Both Winokur and Commerce have moved for partial summary judgment on the issue of liability. For the reasons set forth below, Commerce's motion for Summary Judgment, is *DENIED* in part and *ALLOWED* in part and Winokur's Motion for Partial Summary Judgment is *ALLOWED* in part and *DENIED* in part.

*BACKGROUND*

Sea Heights is an incorporated association of property owners in the Sea Heights residential subdivision in Plymouth. Its responsibilities include administering and enforcing the covenants recorded at the Registry of Deeds. If any of the covenants are breached, Sea Heights has three months from the completion of the work to bring a suit. Tringale is a real estate developer and home builder in the Plymouth area. Tringale owned two lots in Sea Heights on which he was building houses to sell to third parties. On February 7, 1997, Sea Heights brought a suit against Tringale for failing to comply with the covenants, and for failing to pay dues to the association. On that same date, the court approved Sea Height's motion for approval of a memorandum of lis pendens which was recorded at the registry. Tringale responded by filing an answer and counterclaim against Sea Heights and its officers and directors.

The allegations in Tringale's counterclaim were essentially as follows: On January 4, 1997, Tringale attended a meeting with several members of Sea Heights. The members informed him that they were unhappy with the size and value of his two most recent homes and that they believed he was in breach of the Sea Height's covenants. Tringale told them that he had already received approval for the work he had done on these homes. They told Tringale to either make the changes they requested or he would not receive his compliance certificates and would not be able to sell the homes. Tringale contended that these changes were not necessary in order to be in compliance with the covenants. Additionally, Tringale stated that the requested changes would wipe out any profit he would have received from the sale of the homes. Sea Heights reiterated its position and told Tringale it would obtain an injunction to stop him from further work in the development if he did not acquiesce.

Tringale's counterclaim charged Sea Heights and its officers and directors with malicious abuse of process, malicious interference with advantageous business relationship, and conspiracy.

After reviewing Tringale's counterclaim, Sea Heights gave timely notice of the counterclaim to Commerce by telephone and by a letter of its attorneys dated July 29, 1997. Commerce acknowledged the notice in a letter dated August 13, 1997. On August 26, Commerce denied coverage. Commerce cited as its reason that the counterclaim brought did not trigger policy coverage.

***2** Winokur represented Sea Heights in the Tringale litigation. Sea Heights incurred substantial attorneys fees and costs defending against the counterclaim. Initially, Sea Heights was successful in a motion to dismiss Tringale's claims and was awarded a portion of the fees that it had incurred. Subsequently, Tringale was allowed to amend his

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

counterclaim. Tringale then notified Sea Heights that he would drop his counterclaims if it returned the attorneys fees and issued compliance certificates for the homes he had built. However, if they did not agree to his demands he would never settle and force them to incur substantial costs. Sea Heights could not afford to pay the potential additional costs. Therefore, Winokur agreed to continue to represent Sea Heights in return for an assignment of all claims and causes of actions that Sea Heights had against Commerce for its refusal to provide representation. Winokur succeeded in having Tringale's counterclaim dismissed.

Thereafter, Winokur sent a demand letter to Commerce pursuant to G.L.c. 93A and G.L. c. 176D. On September 11, 2000, Commerce again denied coverage.

Commerce had issued a commercial general liability policy to Sea Heights which was effective during the pendency of the counterclaim brought by Charles Tringale. Sea Heights and the individual officers and directors of Sea Heights fall within the scope of the policy's definition of an insured. The policy imposed on Commerce the duty to defend any lawsuit seeking payment of money damages of a claimed "personal injury" caused by an offense arising out of Sea Heights' business. "Personal injury" was defined as any injury other than bodily injury arising out of certain offenses including malicious prosecution, and written publication of material that either libels a person or organization, or that disparages a person's or organization's goods, products, or services.

*DISCUSSION*

I. Summary Judgment Standard

The court grants summary judgment when there are no genuine issues of material fact, and the moving party is entitled to judgment as a matter of law. *Ng Brothers Construction, Inc. v. Cranney*, 436 Mass. 638, 643-44 (2002); *Kourouvacilis v. General Motors Corp.*, 410 Mass. 706, 711 (1991). The moving party bears the burden of affirmatively demonstrating that there is no triable issue of material fact. *Pederson v. Time, Inc.*, 404 Mass. 14, 17 (1989). In making the determination as to whether a genuine issue of material fact exists, the court must consider the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits. *McGuinness v. Cotter*, 412 Mass. 617, 620 (1992), citing Mass.R.Civ.P. 56(c). The court must consider the evidence with an indulgence in the opposing party's favor. *Id.* However, to avoid summary judgment, the party opposing the motion is required to advance sufficient and explicit facts detailing the existence of a material issue warranting a trial on the merits. *Commonwealth v. Colonial Motors Sales, Inc.*, 11 Mass.App.Ct. 800, 804-07 (1981). Mere allegations of the existence of material issues of fact are insufficient. See *Godbout v. Cousens*, 396 Mass. 254, 261 (1985).

II. Commerce's Duty to Defend

*3 The duty to defend an insured against third-party actions arises if, in comparing the policy terms with the third-party complaint:

> [t]he allegations of the complaint are "reasonably susceptible" of an interpretation that they state or adumbrate a claim covered by the policy terms ... Otherwise stated, the process is one of envisioning what kinds of losses may be proved as lying within the range of the allegations of the complaint, and then seeing whether any such loss fits the expectation of protective insurance reasonably generated by the terms of the policy.

*Simplex Tech, Inc. v. Liberty Mut. Ins. Co.*, 429 Mass. 196 (1999).

Winokur argues that Commerce had a duty to defend because Tringale's complaint outlined several claims that have the potential to fit squarely within the policy coverage. Commerce argues that the complaint did not trigger coverage.

The policy imposed upon Commerce the duty to defend any lawsuit seeking payment of money damages because of "personal injury" caused by an offense arising out of Sea Heights business. [FN2] In deciding whether to defend the insurer must consider the facts alleged and the facts known to it at the time the claim is made. *Boston Symphony Orchestra*, 406 Mass 7, 10-11 (1989). Commerce had a copy of the lawsuit filed by Sea Heights, as well as the counterclaim filed by Tringale. Tringale alleged three causes of action in his counterclaim, malicious interference with advantageous business relationship, malicious abuse of process, and civil conspiracy. Although these were the titles to the counts, Commerce must look at the complaint to see

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

if any of the damages were *envisioned* by the coverage. *Simplex Tech, Inc.*, 429 Mass. at 198 (emphasis added). Tringale alleged that Sea Heights, "filed an illegal and groundless Memoranda of a Lis Pendens." Additionally, he alleged, "[t]hat the suit was brought falsely and maliciously with the intent and purpose of hindering, delaying and preventing the sale of Tringale's two homes ..." Further, Tringale contended that the "actions were illegally motivated, retaliatory and done with the knowledge that their actions would render the new homes unmarketable and would interfere with Tringale's business and prospective sales of new homes to third parties." Therefore, Commerce should have known Tringale alleged that his services as a builder of homes and a real estate developer were disparaged by the allegations in the Sea Heights lawsuit against him, as well as the recording of the lis pendens.

FN2. "Personal injury" as defined in the policy, included injury, other than "bodily injury" arising out of certain offenses. This included but was not limited to malicious prosecution, oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services.

Commerce contends that the filing of a lawsuit and a lis pendens is not libel, slander, or disparaging. Alternatively, assuming that Tringale's suit can be defined as any of the aforementioned, that it still would not fit into the confines of the policy because Tringale himself was libeled, not his goods, products or services. When an insurer considers whether it has a duty to defend, it only need consider the *possibility* that the complaint alleges a claim broad enough that would permit a claim under the policy. *Timpson v. Transamerica Ins. Co.*, 41 Mass.App.Ct. 344, 347 (1996) (emphasis added). The actual merits of the claim can never be grounds for refusal. *Id.* This protects the insured from an inartful pleading by a claimant whereby the insured would be denied coverage until the insured forced the claimant to amend its pleading, or was forced to file a motion to dismiss for failure to state a claim or file a motion for a more definite statement.

***4** Based on what Commerce knew at the time it denied the claim, and the above-cited duty to defend analysis, Commerce was required to defend Sea Heights against the counterclaim brought by Tringale.

III. Commerce's Failure to Explain, Investigate or File Declaratory Judgment

Winokur contends that Commerce did not explain the denial of coverage and thus has violated G.L.c. 93A/176D. Additionally, Winokur argues that Commerce violated G.L.c. 93A/176D by not defending Sea Heights.

A violation by an insurer of G.L.c. 176D, § 3(9)n occurs when "failing to provide promptly a reasonable explanation of the basis in the insurance policy in relation to the facts or applicable law for denial of a claim ..." In its original letter denying coverage Commerce stated that the reason for denying coverage was that the complaint did not trigger coverage. This is sufficient, and does not rise to the level of a violation of C. 176D. See *BSO*, 406 Mass. at 7 (1989) (holding that there was no violation of C. 176D where the insured stated in its denial that the policy did not afford coverage for the acts alleged in the complaint). Compare *Whitney v. Continental Ins. Co.*, 595 F.Sup. 939, 947 (1984) (finding a violation of C. 176D where the insurer gave no reason for denial of coverage). [FN3]

FN3. Even assuming that there was a violation of 176D, 93A § 11 does not grant an independent right to recover for violation of that chapter. *Polaroid Corp. v. Travelers Indemnity Co.*, 414 Mass. 747,754 (1993).

Commerce was wrong when it determined that it was not required to defend Sea Heights against Tringale's counterclaim. However, the court does not find competent evidence in the summary judgment record that Commerce's actions were unfair or deceptive. Even if the insurer is wrong, if it makes a justifiable determination as to the duty to defend it has not violated G.L.c. 93A/176D. See *Guity v. Commerce Insurance Co.*, 36 Mass. 339, 343 (1994); *BSO*, 406 Mass. at 14 (finding that summary judgment was appropriate where there exists no dispute as to issues of material fact and only an assertion that further discovery would prove bad faith on the part of the insurer); see also *Timpson*, 41 Mass.App.Ct. at 353 n. 7.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Winokur contends that Commerce should have filed a declaratory judgment action and that because it did not do so Commerce must be held accountable for the consequences. In *BSO,* the Court reminded insurance companies of the availability of declaratory judgments actions, and stated that, "an action for declaratory relief should not be ignored by insurance companies." The Court was attempting to encourage companies to file a declaratory judgment as a quick, easy and efficient tool that could save time and money in the future. The court was not setting a mandate for future actions. *BSO,* 406 Mass. at 15. See also *Dorchester Mut. Fire Ins. Co. v. First Kostas Corp.,* 49 Mass.App.Ct. 651, 656 (2000) (holding that a declaratory judgment action was encouraged, not compelled by law).

ORDER

For the foregoing reasons, it is hereby *ORDERED* that Commerce's Motion for Partial Summary Judgment is *DENIED* as to Counts I and II and *ALLOWED* as to Count III and Winokur's Motion for Partial Summary Judgment is *ALLOWED* as to Counts I and II and *DENIED* as to Count III.

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.